

1  Mark T. Flewelling (#96465)  ORIGINAL
   mflewelling@afrct.com
2  Christopher A. Carr (#44444)
   ccarr@afrct.com
3  ANGLIN, FLEWELLING, RASMUSSEN
     CAMPBELL & TRYTTEN, LLP
4  199 South Los Robles Avenue, Suite 600
   Pasadena, CA  91101-2459
5  (626) 535-1900
   (626) 577-7764 (Facsimile)
6
   Attorneys for Defendants WORLD SAVINGS
7  BANK, FSB, renamed and now known as
   WACHOVIA MORTGAGE, FSB, sued as
8  WORLD SAVINGS, INC. and GOLDEN WEST
   SAVINGS ASSOCIATION SERVICE CO.
9

FILED
APR 24 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                        DEPUTY

10              UNITED STATES DISTRICT COURT

11          SOUTHERN DISTRICT OF CALIFORNIA

12                                    '08 CV 0754 LAB JMA

13  ALEJANDRO CAPDEVIELLE, an           )  Case No.
    individual; ALEJANDRO              )
14  CAPDEVIELLE, an alleged entity;    )
    DAMARIS CAPDEVIELLE, an            )  NOTICE OF REMOVAL BY
15  individual; DAMARIS CAPDEVIELLE,   )  DEFENDANTS WORLD SAVINGS
    an alleged entity,                 )  BANK, FSB and GOLDEN WEST
16                                     )  SAVINGS ASSOCIATION
                  Plaintiffs,          )  SERVICE CO. UNDER 28 U.S.C.
17                                     )  §1441(b)
            vs.                        )
18                                     )  [FEDERAL QUESTION]
    GOLDEN WEST SAVINGS                )
19  ASSOCIATION SERVICE CO., a         )
    California corporation; WORLD      )
20  SAVINGS, INC., a California        )
    corporation; ROBERT D. NOWLEN and  )
21  TERRI L. NOWLEN, alleged entities; )
    ALL INDIVIDUALS OR ENTITIES        )
22  CLAIMING ANY LEGAL RIGHT,          )
    TITLE, ESTATE, LIEN OR INTEREST    )
23  IN THE PROPERTY DESCRIBED IN       )
    THE COMPLAINT ADVERSE TO           )
24  PLAINTIFF'S INTEREST, and all      )
    others claiming an interest in the real )
25  property known or unknown; DOES and )
    Does 1-50, inclusive,              )
26                                     )
                  Defendants.          )
27  _____)

28

1   TO THE CLERK OF THE ABOVE-ENTITLED COURT AND THE

2   HONORABLE UNITED STATES DISTRICT JUDGE:

3       PLEASE TAKE NOTICE that defendants Golden West Savings

4   Association Service Co. ("Golden West") and World Savings Bank, FSB,

5   renamed and now known as Wachovia Mortgage, FSB (erroneously named

6   "World Savings, aka Wachovia")(hereinafter "World"), file this Notice of

7   Removal pursuant to 28 U.S.C. § 1441 *et seq.*, and hereby remove to this court the

8   state court action described below.

9       1.    JURISDICTION.  As more particularly set forth below, this court has

10  jurisdiction of this case under 28 U.S.C. §1331 because claims arising under the

11  laws of the United States (15 U.S.C. §1692) are being made.

12      2.    On March 13, 2008, Case No. 37-2008-00079883-CU-OR-CTL (the

13  "Action") was commenced in the Superior Court of the State of California, in and

14  for the County of San Diego, entitled *Alejandro Capdevielle, etc., et al., vs.*

15  *Golden West Savings Association Service Co., etc., et al.*  A copy of the

16  complaint in the Action is attached as Exhibit A; it names World and Golden

17  West as defendants.

18      3.    The complaint was served on World and Golden West on April 1,

19  2008; neither World nor Golden West have appeared in the Action.

20      4.    There are two other defendants, Robert Nowlen and Terri Nowlen,

21  named in the complaint.  However, neither of these persons ever appeared in the

22  Action, and per the document attached as Exhibit B, both these persons were

23  dismissed from the Action prior to this Notice of Removal.

24      5.    The First Cause of Action of the complaint (comprising ¶¶42-72 and

25  incorporating ¶¶1-41) contains a claim in ¶43 for "Declaratory Relief" against

26  World and Golden West based upon alleged violations of 15 U.S.C. §1692; that

27  statute is a portion of what is commonly called the Fair Debt Collection Practices

28  Act, or "FDCPA".  That paragraph is incorporated by ¶73 into the Second Cause

1   of Action for "Injunctive Relief", by ¶77 into the Third Cause of Action for

2   "Accounting", by ¶81 into the Fourth Cause of Action for "Cancellation of

3   Instruments", by ¶99 into the Fifth Cause of Action for "Recoupment", and by

4   ¶111 into the Sixth Cause of Action for "Quiet Title". Thus, claims arising under

5   the laws of the United States, or "Federal questions", are presented, which gives

6   this court jurisdiction over the claims under 28 U.S.C. §1331 and makes the

7   Action removable to this court under 28 U.S.C. §§1441(a) and (b).

8         6.     This Notice is timely because it is being filed within 30 days of

9   service of the complaint on both World and Golden West on April 1, 2008, as

10   required by 28 U.S.C. §1446(b).

11         7.     No joinder of any other defendant is required because World and

12   Golden West are the only defendants remaining in the Action.

13         8.     Pursuant to 28 U.S.C. §1446(a), World and Golden West file this

14   Notice in the District Court of the United States for the district and branch within

15   which the Action is pending.

16         9.     Pursuant to 28 U.S.C. §1446(a), this Notice is accompanied by

17   Exhibit C, which is an Appendix of Exhibits containing a copy of all papers filed

18   in the Action in the Superior Court for San Diego County which are not otherwise

19   attached as Exhibits A or B.

20        10.     Pursuant to 28 U.S.C. §1446(d), a copy of this Notice with its

21   attachments will promptly be served on the plaintiffs (who are *pro se*) in the

22   Action and notice thereof will be filed with the clerk of the San Diego County

23   Superior Court.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1     WHEREFORE, World and Golden West hereby remove San Diego County
2   Superior Court Case No. 37-2008-00079883-CU-OR-CTL to the United States
3   District Court for the Southern District of California.
4
5   Dated:  April 21, 2008                          ANGLIN, FLEWELLING, RASMUSSEN,
                                                     CAMPBELL & TRYTTEN LLP
6
7
                                                     By:_____
8                                                        Christopher A. Carr
                                                         ccarr@afrct.com
9                                                        Attorneys for Defendant WORLD
                                                         SAVINGS BANK, FSB and
10                                                       GOLDEN WEST SAVINGS
                                                         ASSOCIATION SERVICE CO.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF REMOVAL

# TABLE OF CONTENTS

## OF

### EXHIBITS TO NOTICE OF REMOVAL

*Alejandro Capdevielle v. Golden West Savings Assoc.*,
SDSC Case No. 37-2008-00079883-CU-OR-CTL

**Exhibit A – Verified Complaint** .................................................1 - 148

**Exhibit B – Notice of Voluntary Dismissal** ..............................149 – 152

**Exhibit C – Initial Filing Supplementary Documents** ............ 153 - 160

**EXHIBIT A**

1  Alejandro and Damaris Capdevielle
   3234 Stockman Street
2  National City, California 91950
   (619) 274-2376
3

4  ALEJANDRO CAPDEVIELLE, and
   DAMARIS CAPDEVIELLE
5  Pro Per CCC 1308

6

7

8                    SUPERIOR COURT OF CALIFORNIA
9                         SAN DIEGO COUNTY
                          HALL OF JUSTICE
10

11
   Alejandro Capdevielle, an individual,     )  Case No. _____  37-2008-00079883-CU-OR-CTL
12 ALEJANDRO CAPDEVIELLE, an alleged         )
   entity,                                   )  Verified Complaint for:
13 Damaris Capdevielle, an individual,       )
14 DAMARIS CAPDEVIELLE, an alleged           )  1. Declaratory Judgment.
   entity,                                   )
15                                           )  2. Injunctive Relief.
                  Plaintiff,                 )
16        vs.                                )  3. Accounting.
17                                           )
   GOLDEN WEST SAVINGS ASSOCIATION )          4. Cancellation of Instruments.
18 SERVICE CO., a California corporation, and )
                                             )  5. Claim in Recoupment.
19 WORLD SAVINGS, INC., a California          )
20 corporation, and                          )  6. Quiet Title.
                                             )
21 ROBERT D. NOWLEN and TERRI L.             )  Deed of Trust: 2006-0349244 and
22 NOWLEN, alleged entities, and             )  related Promissory Note.
                                             )
23 ALL INDIVIDUALS OR ENTITIES              )  Deed of Trust: 2006-0719281 and
24 CLAIMING ANY LEGAL OR EQUITABLE )          related Promissory Note.
   RIGHT, TITLE, ESTATE, LIEN OR            )
25 INTEREST IN THE PROPERTY                  )  Violation of Title Fair Debt Collection
   DESCRIBED IN THE COMPLAINT               )  Practices Act Civil Code 1788, Title
26 ADVERSE TO PLAINTIFF'S INTEREST,         )  15 U.S.C. §1692.
27 and all others claiming an interest in the real )
   property known or unknown, DOES and Does )  Violation of Truth in Lending
28 1 – 50 inclusive,                         )  Violation of Usury Laws
                                             )  All rights, benefits and privileges now
                  Defendants.                )  invoked.

   Complaint for Declaratory Judgment, Injunctive Relief, Accounting,      Exhibit A
   Cancellation of Instruments, Claim in Recoupment, Quiet Title.           Page 1
                                    1.

Plaintiff complains against defendants seeking **Declaratory Judgment, Injunctive Relief, Cancellation of Instruments, Accounting, Claim in Recoupment, Cancelation of Instruments, Quieting Title of the property.**

# I
## PARTIES

1. Plaintiffs are Alejandro Capdevielle and Damaris Capdevielle in possession of the property described below and is currently under threat and financial duress by the defendants operation of usurious mortgage lending and foreclosure business.

2. Defendant number one (1) is GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., a California corporation, number C0639642 filed 11/22/1971 is listed in the California Secretary of State's Records as having a jurisdiction located in CALIFORNIA with an active status, address of C/o CSC 2711 CENTERVILLE RD., WILMINGTON, DE 19808. **Agent for Service of Process CSC 2730 GATEWAY OAKS DR STE 100, SACRAMENTO, CA. 95833.**

3. Defendant number two (2) is WORLD SAVINGS, INC., a California corporation, number C1180211 filed 3/29/1984 is listed in the California Secretary of State's Records as having a jurisdiction located in CALIFORNIA with an active status, address 1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612. **Agent for Service of Process** CSC 2730 GATEWAY OAKS DR STE 100, SACRAMENTO, CA. 95833.

4. Defendant number three (3) Robert D. Nowlen and Terri L. Nowlen sold the property to Plaintiffs on or about December 18, 2002 and took back a NOTE secured by *absent* deed of trust which is being sought for review at the time of filing suit which indicates INSTALLMENT NOTE INTEREST ONLY which is also subject to cancelation in full or part under rules of

---

Complaint for Declaratory Judgment, Injunctive Relief, Accounting,     **Exhibit A**
Cancellation of Instruments, Claim in Recoupment, Quiet Title.          **Page 2**

2.

equity also. This note was a CARRYBACK item, and therefore was not a hard-money, i.e.

purchase money cash consideration **Exhibit B4**. Investigation is continuing.

5.  Plaintiff alleges all defendants are, and at all times herein mentioned was, a Corporation,

institution, broker, lender, trustee, dealer or seller of securities, organized and existing under the

corporate laws of California, and operates within California, or other States within the United

States, and will amend the complaint as discovery continues in this case.

6.  Plaintiff alleges defendant individuals operate as agents, managers, officers or as trustee

for "mortgage lender", or investor(s), or other parties to be discovered and amended as needed.

7.   Plaintiff is ignorant of the true names and capacities of the persons engaged in commercial

activities of the other defendants in this case, and will amend the complaint when discovery

confirms the identity, capacity and interests of the defendants when determined. However,

plaintiff has seen no legal evidence for the record that would support assertions or conclusion

that defendants have or acquired legal standing for this defendant as a holder in due course for

adequate value.

8.   Plaintiff alleges that defendants are committing **fraud in the factum** in that defendants are

not persons entitled to enforce the alleged DEBT because they lack standing and legal capacity

to enforce the instrument(s).

9.  Plaintiff objects to non-judicial foreclosure or judicial foreclosure without sufficient

evidence for the Court to review proving the identity of the real party in interest, which is in fact

the person legally vested with the power to enforce the note as a holder in due course for

adequate and sufficient value paid for the note, i.e. the real property.  Defendant(s) may not

foreclose on the property without demonstrating lawful status and standing.

10. This defendant is sued in such other capacity as may be discoverable. The basis for suit

is failure to comply with plaintiff's lawful demand to validate the alleged debt under the rules of

---

Complaint for Declaratory Judgment, Injunctive Relief, Accounting,
Cancellation of Instruments, Claim in Recoupment, Quiet Title.

3.

**Exhibit A
Page 3**

1   good faith and fair dealing and also the Fair Debt Collection Practices Act California  CIVIL

2   CODE SECTION §1788-§1788.3,cited as the Rosenthal Fair Debt Collection Practices Act,

3   and related code sections of 15 U.S.C. §1692.

4   11. Plaintiff is ignorant of the names of defendants sued as DOES 1 through 50, respectively,

5   who are so designated as fictitious defendants. Plaintiff is informed and believes and thereon

6   alleges that each of the fictitiously named defendants is responsible in some manner for the

7   occurrences alleged in this complaint, and that plaintiff's damages as alleged herein were

8   proximately caused by such defendants.

9

10                                              II
11                              **Jurisdiction and Venue**

12  12. Plaintiff alleges Jurisdiction is proper before this Court of competent jurisdiction as the

13  real property in question is located within <u>San Diego</u> County, California.

14

15  13. Plaintiff alleges that jurisdiction is proper as the Superior Court of California is the correct

16  Court of competent jurisdiction to bring this action because the Court is located at Superior

17  Court of California 330 West Broadway, San Diego, CA 92101.

18  14. Plaintiff alleges this controversy exceeds the limited jurisdiction amount, which in this

19  case is $75,000.00 and is therefore filed as an unlimited case.

20

21  Plaintiff sees jurisdiction of the Court in Declaratory Judgment CCP §1060, Injunctive Relief

22  civil code 3422, ccp356, Cancellation of Instruments, Accounting, Claim in Recoupment,

23  Cancelation of Instruments, Quieting Title of the property.

24

25      C.C.P. §760.040.  (a) <u>The superior court has jurisdiction of actions under this chapter.</u>
26      <u>(b) The court has complete jurisdiction over the parties to the action and the property</u>
        <u>described in the complaint and is deemed to have obtained possession and control of</u>
27      <u>the property for the purposes of the action with complete jurisdiction to render the</u>
        <u>judgment provided for in this chapter.</u>
28
        Nothing in this chapter limits any authority the court may have to grant such
        equitable relief as may be proper under the circumstances of the case.

---

Complaint for Declaratory Judgment, Injunctive Relief, Accounting,     **Exhibit A**
Cancellation of Instruments, Claim in Recoupment, Quiet Title.          **Page 4**
                                4.

```
Civ. Code of Procedure 410.10.
A court of this state may exercise jurisdiction on any basis
not inconsistent with the Constitution of this state or of the
United States.
```

15. Plaintiff alleges Venue is proper before this Court as the Superior Court of California San Diego County as the real property described herein is located within the County of San Diego and therefore is subject to the jurisdiction of this Court.

16. Plaintiff alleges jurisdiction based upon an unlawfully usurious written contract in violation of California Constitutional limitation on usury **Exhibit K** CALIFORNIA CONSTITUTION ARTICLE 15 USURY to wit: (2) for any loan or forbearance of any money, goods, or things inaction for any use other than specified in paragraph (1), at a rate not exceeding the higher of (a) 10 percent per annum. Defendants demand interest only payments in violation of usury limitations beyond twice the lawful limits over twenty (20) percent.

### III
### Standing to Sue

17. Plaintiff alleges standing to sue under all rights reserved now invoked in relation to California Constitution Article 1 Section 1 and request this Court accept judicial notice evidence code §451, §452 to wit;

```
CALIFORNIA CONSTITUTION
ARTICLE 1. DECLARATION OF RIGHTS

SECTION 1.  All people are by nature free and independent and have
inalienable rights.  Among these are enjoying and defending life and
liberty, acquiring, possessing, and protecting property, and pursuing
and obtaining safety, happiness, and privacy.
```

18. **Exhibit A** demonstrating title in the Plaintiff by Grant Deed Document number 2001-0167582 filed 3/22/2001 in San Diego County Recorder's Office for which judicial notice is requested evidence code 451, 452 or other relevant section of the evidence code.

Complaint for Declaratory Judgment, Injunctive Relief, Accounting, Cancellation of Instruments, Claim in Recoupment, Quiet Title.    **Exhibit A Page 5**

5.

19. Plaintiff alleges the amount in controversy exceeds unlimited jurisdiction amount with

the subject matter jurisdiction involving a written contract formed in or around the City of

National City, San Diego County, California. Therefore this Court has subject matter jurisdiction

as seen as plaintiff has demonstrated standing and controversy in this case.

20. In order to invoke the court's jurisdiction, the plaintiff must demonstrate, at an

"irreducible minimum," that: (1) he/she has suffered a distinct and palpable injury as a result of

the putatively illegal conduct of the defendant; (2) the injury is fairly traceable to the challenged

conduct; and (3) it is likely to be redressed if the requested relief is granted. See Valley

Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S.

464, 472 (1982); Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99 (1979); Simon v.

Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 37 (1976).

21. A recent line of decisions, however, has resolved that ambiguity, at least to the following

extent: at an irreducible minimum, Art. III requires the party who invokes the court's

authority to "show that he personally has suffered some actual or threatened injury, i.e.

foreclosure becoming homeless as a result of the putatively illegal conduct of the defendants

illegal RICO operations attempting to collect an unlawful debt in excess of 20 percent usury

Exhibit J, and Exhibit K, and that the *injury* "fairly can be traced to the challenged action" and

"is likely to be redressed by a favorable decision.... see Exhibit N Judge Christopher A. Boyko

ruling, and also Exhibit O Judge Thomas M. Rose ruling.

22. Element #1. Plaintiff has suffered a distinct and palpable injury as a result of the

putatively illegal conduct of the defendant. Plaintiff states the fact that financial injury takes

place upon foreclosure, resulting in the real loss of living space followed by unlawful detainer,

eviction, followed by a homeless condition.

   **President Thomas Jefferson:**

---

Complaint for Declaratory Judgment, Injunctive Relief, Accounting,    **Exhibit A**
Cancellation of Instruments, Claim in Recoupment, Quiet Title.    **Page 6**

"If the America people ever allow private banks to control the issuance of their currencies, first by inflation and then by deflation, the banks and corporations that will grow up around them will deprive the people of all their prosperity until their children will wake up homeless on the continent their fathers conquered."

"I believe that banking institutions are more dangerous to our liberties than standing armies."

Plaintiff states that the American people *didn't allow the formation of the private money trust* located in the city of *** *** which operates the scheme from the address of ** ***** street. Plaintiff can prove without any doubt what so ever, that Congress (Congressional Records) did not authorize its creation voluntarily December 23, 1913.

23. Defendants operate a for profit foreclosure business with a common term given the operation we are familiar with which is called the **"Boom and Bust cycle"**. The operation is in fact and without question repugnant to the usury laws of the 1849 organic California Constitution, and the 1879 corporate State of California, and Federal RICO criminal usury laws.

24. Plaintiff states the event of foreclosure creates a negative financial remark to be placed in plaintiff's CREDIT file resulting in damage to plaintiff because a lower FICO score results in higher costs of credit which is kept by Experian, Transunion and Equifax which are operational components of the Money Trust.

25. There is a large significant emotional damage component to the aftermath of the foreclosure process giving rise to sufficient cause under the element of damage requirements to satisfy the prerequisite for standing to sue in this case.

Element #2: <u>The injury is fairly traceable to the challenged conduct</u>

26. Plaintiff states the actions of conducting the trustee's sale plaintiff's property moving to

---

Complaint for Declaratory Judgment, Injunctive Relief, Accounting,     **Exhibit A**
Cancellation of Instruments, Claim in Recoupment, Quiet Title.     **Page 7**

7.

Trustee's sale without answering the challenge for the validation of debt demonstrates the right in the plaintiff to file suit to determine the facts and law of the matter.

27. Paperwork provided to plaintiff seen as **Exhibit B** states GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO. may be a debt collector attempting to collect a debt. Notice of Default and Election to Sell under Deed of Trust recorded November 8th, 2007 signed by Seth White is defective in that the request to validate the alleged debt has gone unanswered.

28. Defendant is in default in violation of the Fair Debt Collection Practices Act for State and Federal law.

Defendant is therefore subject to equitable estoppel under laches and is barred from further proceeding on the matter until the default is addressed. This element provides legal support for the application of temporary injunction enjoining any future **Trustee's Sale.**

29. If action is not taken, plaintiff "could lose legal rights" if action is not taken giving rise to standing under emergency duress conditions created by fractional reserve lending practices by the Defendant(s).

30. The injury of foreclosure brought on by the defendants are directly traceable to the challenged conduct of the defendants satisfying the second element of the injury in fact for standing to sue for the plaintiff.

31. **Element #3.** It is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

32. Plaintiff states that a favorable decision is likely in favor of Plaintiff because the promissory note(s) associated with the two (2) Deeds of Trust upon which defendant(s) base their respective claims upon are subject to cancellation because these promissory note(s) are not eligible as securities for discounting in violation of Regulation A as seen by **Exhibit F**.

---

Complaint for Declaratory Judgment, Injunctive Relief, Accounting,          **Exhibit A**
Cancellation of Instruments, Claim in Recoupment, Quiet Title.               **Page 8**

8.

TITLE 12—BANKS AND BANKING CHAPTER II--FEDERAL RESERVE SYSTEM PART 201-EXTENSIONS OF CREDIT BY FEDERAL RESERVE BANKS (REGULATION A) Sec. 201.109 **Eligibility for discount of mortgage company notes**.

33. The controversy becomes clearer when **Exhibit E-2-2** California Financial Code is compared to **Exhibit F-2-2** demonstrating the conflict the defendants face for the fraudulent transaction and large conspiracy scheme designed to mask the theft by property values under false pretenses of **lending funds** to the Plaintiff against public policy as seen and demonstrated by Exhibit I-5-14, i.e. **§62 Enforcement against Public Policy**.

34. Plaintiff alleges the three elements for standing and controversy as seen above are present in this action against defendants in this instant matter as seen by the attached exhibits and is therefore not subject to demurrer or dismissal for failure to state a claim upon which relief can be granted. In 1984, the Supreme Court reviewed and further outlined the standing requirements in *Allen v. Wright*, a major ruling concerning the meaning of the three constitutional standing requirements of injury, causation, and redressability.

## IV
## REAL PROPERTY DESCRIPTION

The real property involved in this action is;

Lot 144, SWEETWATER HEIGHTS, IN THE CITY OF NATIONAL CITY, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 4805, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JUNE 30, 1961.

APN:564-392-10-00

The common mailing address is known as 3432 Stockman Street, National City, California 91950.

## V
## FALSE AND FRAUDULENT CLAIMS MADE BY DEFENDANTS

35. Defendants claim to be a debt collector on the promissory notes per notice of default and

---

Complaint for Declaratory Judgment, Injunctive Relief, Accounting, Cancellation of Instruments, Claim in Recoupment, Quiet Title.    **Exhibit A Page 9**

9.

election to sell under deed of trust. However the private Federal Reserve System only provides *temporary credit* support for about 90 days or less in regard to the real property transaction involving the instruments in question, deeds of trust and related notes. The promissory notes are a fraud as they are only "transferred by assignment" and not actually sold to anyone. The endorsement stamp pay to the order of without recourse is stamped as an endorsement by the bank creating a material alteration in the so-called negotiable instrument. Selling the servicing rights are not the same thing.

From the U.S. Government Printing Office via GPO Access
[CITE: 12CFR201.109]

TITLE 12--BANKS AND BANKING

CHAPTER II--FEDERAL RESERVE SYSTEM

PART 201-EXTENSIONS OF CREDIT BY FEDERAL RESERVE BANKS (REGULATION A)--Table

**Sec. 201.109  Eligibility for discount of mortgage company notes.**

(e) Section 201.3(a) provides that a negotiable note maturing in 90 days or less is not eligible for discount if the proceeds are used "for permanent or fixed investments of any kind, such as land, buildings or machinery, or for any other fixed capital purpose".

**However, the proceeds of a mortgage company's commercial paper are not used by it for any permanent or fixed capital purpose, but only to carry temporarily an inventory of mortgage loans pending their "packaging" for sale to permanent investors that are usually recurrent customers.**

(f) In view of the foregoing considerations the Board concluded that notes issued to finance such temporary "warehousing" of real estate mortgage loans are notes issued for an industrial or *commercial purpose*, that such mortgage loans *do not constitute*

---

Complaint for Declaratory Judgment, Injunctive Relief, Accounting,
Cancellation of Instruments, Claim in Recoupment, Quiet Title.
10.

Exhibit A
Page 10

1   *"investment securities"*, *as that term is used in section 13, and that the temporary*

2   *holding of such mortgages in these circumstances is not a permanent investment by the*

3   *mortgage banking company.*

4   **Accordingly, the Board held that** *notes* having **not more** *than* **90 days to run which**

5   **are issued to finance the** *temporary holding of mortgage loans* **are eligible for**

6   **discount by Reserve Banks.**

7   36. POINT: Any note that runs over 90 days, are not eligible for discounting, means the

8   notes in question in this case, *are not real securities eligible to be sold*. Plaintiff alleges this is

9
10  the reason the notes are not actually recorded as securities,... solving one of the many mysteries

11  regarding the reason why the notes are not recorded.

12  37. The fraud comes to light **Exhibit E** showing eligible securities California Financial Code

13  section §33560 Definitions and section 22340.1 regarding selling eligible notes when in fact they

14
15  are not selling them at all, just the collection rights under the servicing agreement **Exhibit D**.

16      CC §1596.  The object of a contract must be lawful when the
17      contract is made, and possible and ascertainable by the time
        the contract is to be performed.

18
19  38. Plaintiff states as fact that the Deeds of Trust and related Notes are subject to cancellation for

20  Fraud in the Factum as seen above. Marked as attached **Exhibit B** indicates the threat to me and

21  my family now placed under financial duress by the threat of fraud. The game of "interest only"

22  is legal reason alone and sufficient cause to sustain the fraud allegation as the contract is an

23  impossibility to perform which defendants knew and planned from the beginning which is

24
25  admitted by senior banking officials.

26      CC §1598. Where a contract has but a single object, and such object is unlawful,
27          whether in whole or in part, or wholly impossible of performance,
            or so vaguely expressed as to be wholly unascertainable, **the entire**
28          **contract is void.**

---

39. Plaintiff asks for judicial notice be taken of the above case in relation to rules of evidence

451, 452 or other appropriate section of code.

### California Rules of Evidence

§550. (a) The burden of producing evidence as to a particular fact is on the party against whom a finding on that fact would be required in the absence of further evidence.

(b) The burden of producing evidence as to a particular fact is initially on the party with the burden of proof as to that fact.

40. Plaintiff states absent evidence to the contrary, defendants have not produced their burden

of proof and should not be allowed to go forward with the trustee's sale in this specific case.

41. **Exhibit C** demonstrates plaintiff exercised rights of the Fair Debt Collection Practices Act

in support of this complaint with proof of service of FIRST REQUEST FOR VALIDATION to

GOLDEN WEST SAVINGS ASSOCIATION SERVICE, dated February 5th, 2008 for certified

mail number 7007 0710 0004 0412 1105 received in the City of San Antonio, Texas 78265 on

February 11th, 2008, and with proof of service of SECOND REQUEST FOR VALIDATION to

GOLDEN WEST SAVINGS ASSOCIATION SERVICE., dated February 21st, 2008 for certified

mail number 7007 0710 0004 0413 0978 accepted on February 21st, 2008 in the City of

Huntington Beach, California 92615 for which plaintiff's protected legal rights were denied and

ignored.

### FIRST CAUSE OF ACTION
#### Count 1
(Declaratory judgment against all defendants)

42. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs

1 through 41.

43. Plaintiff asks the Court to declare if Plaintiff is entitled to exercise the protections found in

the Fair Debt Collections Practices Act with its companion of Title 15 U.S.C. §1692 in relation

to invocation of reserved rights, benefits, privileges and enhancements.

---

Complaint for Declaratory Judgment, Injunctive Relief, Accounting, Cancellation of Instruments, Claim in Recoupment, Quiet Title.

**Exhibit A Page 12**

12.

44. Plaintiff asks the Court to declare if the alleged DEBT COLLECTOR or some other company has possession of the original Note(s) and the Deed(s) of Trust # 2006-0349244 and original Note(s) and the Deed(s) of Trust # 2006-0719281 **Exhibit B2** and **Exhibit B3** to identify the holder of the original instruments for the record.

45. Plaintiff asks the Court to declare whether or not the defendants can demonstrate legal and lawful standing, status, true legal capacity as holder in due course of the promissory note(s) for adequate value (valuable consideration) evidencing for the record the legal right to enforce the notes and both deeds of trust.

Plaintiff states defendants do not have legal standing under valuable consideration rules as a **"protected purchaser for adequate value"** of the note in this case.

```
8303.  (a) "Protected purchaser" means a purchaser of a certificated
or uncertificated security, or of an interest therein, who does all
of the following:
(1) Gives value.
(2) Does not have notice of any adverse claim to the security.
(3) Obtains control of the certificated or uncertificated security.
(b) In addition to acquiring the rights of a purchaser, a
protected purchaser also acquires its interest in the security free
of any adverse claim.

8304.  (a) An endorsement may be in blank or special. An
endorsement in blank includes an endorsement to bearer. A special
endorsement specifies to whom a security is to be transferred or who
has power to transfer it. A holder may convert a blank endorsement
to a special endorsement.
```

46. Plaintiff asks the Court to declare whether or not the Defendants have violated State securities laws in that the 1934 Securities and Exchange laws **Exhibit M** by not complying with securities law the promissory note at the County Recorder's office in violation of registered securities laws.

47. Plaintiff asks the Court to declare whether or not Manipulative and Deceptive tactics used by the defendants include illegal criminal usury schemes used over the centuries by the agents of the bankers, i.e. lawyers Plaintiff states this Court has concurrent jurisdiction over

---

the question as seen by **Exhibit E** Eligible Securities, i.e. *Any bond, note, or other*

*obligation* per Financial Code §33560 (C), and 22340.1 *Promissory notes for repayment of*

*federally related mortgage loans; sales by finance lenders*.

48. Plaintiff asks the Court to declare the Plaintiff's and Defendant's respective rights and

duties; specifically that Plaintiff did not breach the terms of the promissory note and deed of

trust in that the trustee failed to comply with state non-judicial foreclosure procedures which

include exhaustion of administrative remedies.

49. Such a judicial determination is appropriate at this time so that Plaintiff may determine his

rights and duties before the Property is sold at a trustee's sale.

50. That the servicer of the alleged loan is only entitled to a fraction of an interest point for the

convenience of simply depositing the loan payments **Exhibit D**.

51. The Defendants notes are a fraud as an eligible security for sale because credit provided by

the Federal Reserve system is good for only 90 days, see **Exhibit F**.

52. That plaintiff has alleged grounds for cancellation of the mortgage notes and deeds of trust

for cause as stated explicitly and specifically as the character and relationship of the parties, the

making of a contract, the existence of a ground for recovery, such as fraud, mutual mistake,

false representations, or impossibility of performance, offer to restore any of the benefits

received from the contract, and the inadequacy of a remedy at law.

53. **Civil Code of Procedures:** §1060. Any person interested under a written instrument,

excluding a will or a trust, or under a contract, or who desires a declaration of his or her rights or

duties with respect to another, or in respect to, in, over or upon property, or with respect to the

location of the natural channel of a watercourse, may, in cases of actual controversy relating to

the legal rights and duties of the respective parties, bring an original action or cross-complaint in

the superior court for a declaration of his or her rights and duties in the premises, including a

---

Complaint for Declaratory Judgment, Injunctive Relief, Accounting,
Cancellation of Instruments, Claim in Recoupment, Quiet Title.
14.

**Exhibit A
Page 14**

1  determination of any question of construction or validity arising under the instrument or contract.

2  54. He or she may ask for a declaration of rights or duties, either alone or with other relief; and

3  the court may make a binding declaration of these rights or duties, whether or not further relief is

4  or could be claimed at the time. The declaration may be either affirmative or negative in form

5  and effect, and the declaration shall have the force of a final judgment. The declaration may be

6

7  had before there has been any breach of the obligation in respect to which said declaration is

8  sought.

9  Commercial Code §3301. "**Person entitled to enforce**" an instrument means (a) the
holder of the instrument, (b) a nonholder in possession of the instrument who has the

10  rights of a holder, or (c) a person not in possession of the instrument who is entitled to

11  enforce the instrument pursuant to Section 3309 or subdivision (d) of Section

12  Commercial Code §3418. A person may be a person entitled to enforce the instrument

13  even though the person is not the owner of the instrument or is in wrongful possession of
the instrument.

14

15  Commercial Code §3302. (a) Subject to subdivision (c) and subdivision (d) of Section
3106, "**holder in due course**" means the holder of an instrument if both of the following

16  apply:

17  (1) The instrument when issued or negotiated to the holder does not bear such apparent
evidence of forgery **or alteration** or is not otherwise so irregular or incomplete as to

18  call into question its authenticity.

19  (2) The holder took the instrument (A) for value, (B) in good faith, (C) without notice

20  that the instrument is overdue or has been dishonored or that there is an uncured
default with respect to payment of another instrument issued as part of the same series,

21  (D) without notice that the instrument contains an unauthorized signature or has been

22  altered, (E) without notice of any claim to the instrument described in Section
3306, and (F) without notice that any party has a defense or claim in recoupment

23  described in subdivision(a) of Section 3305.

24  55. Plaintiff states the defendants have no right in the property without demonstrating the

25  prerequisites as required by law for status, standing, capacity and holder in due course for value

26  that can be measured as adequate consideration for a contract or trust (deed of trust) to be valid.

27  56. It is essential to the creation of a contract that there be a mutual or reciprocal assent.

28

1   Sanford v. Abrams (1888) 24 Fla 181, 2 So 373; Ross v. Savage (1913) 66 Fla 106, 63 So 148;

2   McCay v. Sever (1929) 98 Fla 710, 124 So 44; United State Rubber Products, Inc. v. Clark

3   (1941) 145 Fla 631, 200 So 385; Mann v. Thompson (1958, Fla App D1) 100 So 2d 634.

4   57. That the assent be to a certain and definite proposition. Fincher v. Belk-Sawyer Co. (1961,

5   Fla App D3) 127 So 2d 130; Goff v. Indian Lake Estates. Inv. (1965, Fla App D2) 178 So 2d

6   910; Hewitt v. Price (1969, Fla App D3) 222 So 2d 247.

7   58. **Without a meeting of the minds of the parties on an essential element, there can be no**

8   **enforceable contract.** Hettenbaugh v. Keves-Ozon-Fincher Ins.. Inc. (1962, Fla App D3) 147 So

9   2d 328; Goff v. Indian Lake Estates. Inc. (1965, Fla App D2) 178 So 2d 910.

10  59. **In order to form a contract, the parties must have a distinct understanding, common**

11  **to both, and without doubt or difference.** Unless all understand alike, there can be no

12  assent, and therefore no contract. Webster Lumber Co. v. Lincoln (1927) 94 Fla 1097, 115 So

13  498; Minskv's Follies of Florida, Inc v. Sennes (1953 206 F2d 1; O'neill v. Corporate Trustees,

14  Inc. (1967) 376 F2d 818.

15  60. **Until the terms of the agreement have received the assent of both parties, the**

16  **negotiation is open and imposes no obligation on either.** Goff v. Indian Lake Estates, Inc.

17  (1965 Fla App D2) 178 So 2d 910: Carr v. Duval (1840) 39 US 77, 10 L Ed 361.

18  61. The assent of each party must be freely given; a contract entered into as a result of the

19  exercise of duress or undue influence by the other party, or procured by the fraud of one of the

20  parties. lacks the essential element of real assent and may be avoided by the injured party. Wall

21  v. Bureau of Lathing and Plastering (1960, Fla App D3) 117 So 2d 767.

22  62. An actual assent by the parties upon exactly the same matters is indispensable to the

23  formation of a contract. Bullock v. Hardwick (1947) 158 Fla 834, 30 So 2d 539: Hettenbaugh v.

24  Keyes- Ozon – Fincher Ins. . Inc (1962, Fla App D3) 147 So 2d 328: General Finance Corp. V.

25  Stratton (1963 Fla App D1) 156 So 2d 664.

26  63. Plaintiff states the true intensions and real outcome of the fractional reserve lending scheme

27  **was not fully disclosed** to plaintiff at the time of contract formation rendering the alleged note

28  and deed of trust subject to cancelation by Court order as void or voidable.

---

64. **Estoppel** is a legal doctrine recognised both at common law and in equity in various forms. It is meant to complement the requirement of consideration in contract law. In general it protects a party who would suffer detriment if:

65. Unconscionability by the Plaintiff has been accepted as another element by courts, in an attempt to unify the many individual rules of estoppel.

66. Estoppel is generally only a defense that prevents a representor from enforcing legal rights, or from relying on a set of facts that would give rise to enforceable rights (e.g. words said or actions performed) if that enforcement or reliance would be unfair to the representee. Because its effect is to defeat generally enforceable legal rights, the scope of the remedy is often limited. Note, however, that proprietary estoppel (applicable in English land law) can be both a sword and a shield and the scope of its remedy is wide.

## VI
## LACHES

67. "Conduct of party which has placed other party in a situation where his rights will be imperiled and his defenses embarrassed is a basis of laches. State v. Abernathy, 159 Tenn. 175, 17 S.W.2d 17, 19." Black's Law Dictionary, revised 4th Edition.

68. "Laches requires an element of estoppel or neglect which has operated to prejudice of defendant. Scarborough v. Pickens, 26 Tenn.App. 213, 170 S.W.2d 585, 588; Mattison-Greenlee Service Corporation v. Culhane, D.C.Ill., 20 F. Supp. 882, 884." Black's Law Dictionary, revised 4th Edition.

69. "LACHES, ESTOPPEL BY. A failure to do something which should be done or to claim or enforce a right at a proper time. Hutchinson v. Kennedy, C.C.A.N.C., 27 F.2d 254, 256. A neglect to do something which one should do, or to seek to enforce a right at a proper time. Jett v. Jett, 171 Ky. 548, 188 S.W. 669, 672. A species of "equitable estoppel" or "estoppel by matter in pais." Black's Law Dictionary, revised 4th Edition.

---

Complaint for Declaratory Judgment, Injunctive Relief, Accounting, Cancellation of Instruments, Claim in Recoupment, Quiet Title.
17.

**Exhibit A**
**Page 17**

70. "An estoppel arises when one is concluded and forbidden by law to speak against his own act or deed. Gural v. Engle, 128 H.J.L. 252, 25 A.2d 257, 261; . . ." Black's Law Dictionary, revised 4th Edition "Estoppel is a bar or impediment which precludes allegation or denial of a certain fact or state of facts, in consequence of previous allegation or denial or conduct or admission, or in consequence of a final adjudication of the matter in a court of law, Lewis v. King, 157 La. 718, 103 So. 19, 22." Black's Law Dictionary, revised 4th Edition. Defendants are estopped by their own inaction for failure to state a claim upon which relief can be granted by default and violation of Fair Debt Collection Practices Act.

71. Declare that laches applies in the instant action barring the so-called DEBT COLLECTOR, or Trustee has not complied with prerequisites under the Fair Debt Collection Practices Act in order to proceed to trustee sale of the property and is equitably stopped from taking any further action against the property as described in Paragraphs 42 and 43 above.

72. Civil Code 689. A present interest entitles the owner to the immediate possession of the property.

SECOND CAUSE OF ACTION
Count 2
(Injunctive relief against all defendants)

73. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 72.

74. Defendant intends to sell, and unless restrained, will unlawfully sell the Property on an unknown future date causing great and irreparable injury to the Plaintiff in that if the trustee's sale takes place, Plaintiff, having no right to redeem the Property after the sale in violation Plaintiff's protect procedural due process rights.

75. The trustee's sale is wrongful and should be enjoined because Constitutional rights to due process to obtain the remainder of the transactional facts under protected rights now invoked.

CALIFORNIA CONSTITUTION

---

Complaint for Declaratory Judgment, Injunctive Relief, Accounting, Cancellation of Instruments, Claim in Recoupment, Quiet Title.    **Exhibit A**

18.    **Page 18**

ARTICLE 1 DECLARATION OF RIGHTS

SECTION 1.  All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing

CALIFORNIA CONSTITUTION
ARTICLE 1 DECLARATION OF RIGHTS

SEC. 13.  The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated;

76. Plaintiff has no other plain, speedy, or adequate remedy, and the injunctive relief requested for in this Complaint is necessary and appropriate at this time to prevent irreparable injury and loss of Plaintiff's Property.

## THIRD CAUSE OF ACTION
### Count 3
(Accounting against all defendants)

77. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 76 above.

78. A controversy exists between Plaintiff and Defendants with respect to the correct amount of money that is actually owed by Plaintiff to Defendant. However, Defendant refuses to provide an accurate accounting or allow Plaintiff's representatives to audit defendant books and records as they relate to accounting.

79. As a result, the correct amount of money due and owing from Plaintiff to Defendant remains in dispute and cannot be determined without an accounting.

80. Therefore Plaintiff requires that Defendant make available its books and records (only as they relate to the Plaintiff's alleged loan) in order that Plaintiff may have a certified public accountant, or similarly qualified representative, audit the books, records, federal reserve collateral and BIC (borrower in custody) agreements to determine the accounting of the financial transaction(s).

---

Complaint for Declaratory Judgment, Injunctive Relief, Accounting,
Cancellation of Instruments, Claim in Recoupment, Quiet Title.

**Exhibit A**
**Page 19**

19.

### FOURTH CAUSE OF ACTION
#### Count 4
(Cancellation of Instruments against all defendants known and unknown)

81. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs

1 through 80 above.

82. Plaintiff hereby invokes rules and remedies of equity pleading and commercial law for

the cancelation of instruments described as the promissory note and related deed of trust as being

void or voidable and as it may also relate to trust law.

## CIVIL CODE SECTION 3412-3415

3412. A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, uponhis application, be so adjudged, and ordered to be delivered up or canceled.

3413. An instrument, the invalidity of which is apparent upon its face, or upon the face of another instrument which is necessary to the use of the former in evidence, is not to be deemed capable of causing injury, within the provisions of the last section.

3414. Where an instrument is evidence of different rights or obligations, it may be canceled in part, and allowed to stand for the residue.

3415. (a) An action may be maintained by any person interested in any private document or instrument in writing, which has been lost or destroyed, to prove or establish the document or instrument or to compel the issuance, execution, and acknowledgment of a duplicate of the document or instrument.

(b) If the document or instrument is a negotiable instrument, the court shall compel the owner of the negotiable instrument to give an indemnity bond to the person reissuing, reexecuting, or reacknowledging the same, against loss, damage, expense, or other liability that may be suffered by the person by reason of the issuance of the duplicate instrument or by the original instrument still remaining outstanding.

83. Plaintiff herby invokes the equitable powers of this Court for the purpose of a fair outcome

for both plaintiff and Defendants.

Complaint for Declaratory Judgment, Injunctive Relief, Accounting,
Cancellation of Instruments, Claim in Recoupment, Quiet Title.
20.

**Exhibit A
Page 20**

**Maxims of equity:**

The maxims of equity as the principles applied by courts of equity in deciding cases before them. Among the traditional maxims are:

* Equity looks upon that as done which ought to have been done.

* Equity suffers not a right without a remedy.

* Equality is equity.

* Equity regards substance rather than form.

* Where the equities are equal, the first in time will prevail.

* Where equities are equal, the law will prevail.

* Equity follows the law.

* He who seeks equity must do equity.

* He who seeks equity must have clean hands.

* Equity aids the vigilant, not those who sleep on their rights.

* Delay defeats equity.

* Equity will not concern itself with abstract wrongs.

* Equity abhors a forfeiture.

* Equity does not require an idle gesture.

* Equity will not permit a party to profit by his own wrong.

* Equity delights to do justice, and not by halves.

* Equity will take jurisdiction to avoid a multiplicity of suits.

84. Plaintiff is ready willing and able to do equity in this case on the basis of defendants generally accepted accounting principles, the contracts between the defendant(s) and plaintiff, and agreements in relation to F.R.B. Circulars 1, 8, and 10.

85. Plaintiff invites the courts attention to the servicer agreement in which demonstrates the fact that the **loan servicer is entitle to only a fraction of an interest point** in regard to the check, cash or money order used as a deposit each month seen by **Exhibit D**.

86. The beneficiary in this instant matter appears to be World Savings Bank as named in **Exhibit**

---

Complaint for Declaratory Judgment, Injunctive Relief, Accounting, Cancellation of Instruments, Claim in Recoupment, Quiet Title.

21.

**Exhibit A Page 21**

B2 and **Exhibit B3,** which under badges of fraud would indicate more detailed discovery will be

required to ascertain the truth of the roll played by this defendant.

87. While the trustee holds FULL CREDIT BID stealing properties and equity from the

plaintiff, **defendants also take from the community as a whole** and under public policy is

addressable by this Court and its powers to cancel the instruments for good cause showing

because the defendants take the properties for no cash, check or money order payments for the

note or the property upon the steps just outside the walls of this Court or one close by. This Court

has jurisdiction to rule in favor of Plaintiff.

VII

**FEDERAL RESERVE BANKS
OPERATING CIRCULAR NO. 8**
(Effective October 23, 2000)

**Operating Circular No. 10 Effective October 15, 2006.**

**7.0 COLLATERAL**

7.1 The Borrower shall ensure that the Collateral meets the requirements as the Bank may from

time to time prescribe and **shall deliver, hold, store** or otherwise maintain Collateral on such terms and

conditions as the Bank may from time to time prescribe. Borrower must keep all Collateral Schedules

current and updated in accordance with the Bank's instructions.

7.2 The Bank may at any time request the Borrower to replace any item of Collateral or to grant a

lien and security interest in additional assets of a type and in an amount acceptable to the Bank, and the

Borrower shall promptly do so.

7.3 Unless otherwise specified by the Bank in writing, the Borrower shall promptly withdraw

from the Collateral Schedule:

(a) **any Collateral that has a payment of principal or interest past due, in whole or in part, for

more than 30 days (or 60 days past due for mortgage notes, and other types of consumer debt,

including student loans);**

---

88. Defendants are not the person entitled to enforce the instrument and therefore the Court may demand the instruments be brought to court for inspection for authenticity under rules of commercial practices and standard rules of evidence.

## VIII

## UCC § 3-301. PERSON ENTITLED TO ENFORCE INSTRUMENT.

"Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3-309 or 3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

89. Plaintiff's **Exhibit G** demonstrates by written reference the Law of Fraudulent Transactions by Peter A. Alces. Plaintiff incorporates the entire book by this reference as if stated at length. Plaintiff states that the alleged loan, note, deed of trust and other related notice of default and election to sell, substitution of trustee, notice of foreclosure sale are fraudulent in fact and that the law of fraudulent transaction and dispositions applies in this case and is a real defense against even a holder in due course now asserted against all the defendants under all rights reserved now invoked, all benefits, privileges and lawful enhancement not limited to public policy and the emergency forced upon plaintiff by defendants design of fractional reserve lending under the rules of conquest (as if invaded by a foreign foe March 6th through 9th, 1933 Banking emergency (switch over from gold to securities via the "Money Trust"

90. Plaintiff's **Exhibit H** demonstrates case law in support of plaintiff's position alleging **fraud in the factum** and other points of material deception in light of the predatory lending practices (*forced loans* under *the law and rules of conquest*) regarding the effects of the fractional reserve lending scheme (see *elastic currency* Federal Reserve Act 1913) which will be more fully explored as seen in **Exhibit L**.

91. Plaintiff request the production for authentication of the original promissory notes and deeds

Complaint for Declaratory Judgment, Injunctive Relief, Accounting, Cancellation of Instruments, Claim in Recoupment, Quiet Title.

23.

**Exhibit A Page 23**

of trust for this matter as described for the purposes of inspection of alternations and other legal concerns.

92. Plaintiff requests cancellation of instruments pursuant to case law as demonstrated by **Exhibit H** made part hereof by reference and incorporates these cases for the record and requests judicial notice of each case as if stated at length.

93. Plaintiff's **Exhibit I** demonstrates that creation of a trust including the deed of trust in this case is unlawful and **against Public Policy** in this case and as such, the deed of trust as seen by the first sheet of each document **Exhibit B** are subject to plaintiff's request for cancellation due to fraud in the factum and material misrepresentation while plaintiff is held under financial duress.

94. The money trust was identified by the Pujo Committee Report (1912) incorporated by reference as if stated at length.

95. Plaintiff invites the Courts attention to the fact that the deed of trust document is typically the same Form, a #3005 (see lower right corner) which is used for hundreds of thousands (millions) of these type of mortgage note financial transactions.

## FINANCIAL TICKING TIME BOMB AGAINST PUBLIC POLICY

96. These financial ticking time bomb transactions are against public policy and are illegal because **Exhibit I** demonstrates a trust, including the Deed of Trust just as the one sought to be canceled by this Court in this complaint.

97. Restatement of the Law Second Trusts2d Volume 1 section 60 states an intended trust or a provision in the form of the trust is invalid if the performance of the trust or the provisions involves the commission of a criminal or tortious act by the trustee.

98. **Exhibit I-5-14** demonstrates the law as it applies to the deed of trust instrument sought to

be canceled is seen as a trust or a provision in the terms of a trust is invalid if the enforcement of

the trust or provision would be against public policy, even though its performance does not

involve the commission of a criminal.

### FIFTH CAUSE OF ACTION
#### Count 5

(Claim in Recoupment against all Defendants known and unknown)
U.C.C. - ARTICLE 3 - NEGOTIABLE INSTRUMENTS
PART 3. ENFORCEMENT OF INSTRUMENTS

3-305. DEFENSES AND CLAIMS IN RECOUPMENT
California Commercial Code §3305

99. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs

1 through 98 above.

100.    Except as stated in subsection (b), the right to enforce the obligation of a party to pay an

instrument is subject to the following:

101.    (1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense

to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which,

under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign

the instrument with neither knowledge nor reasonable opportunity to learn of its character or its

essential terms, or (iv) discharge of the obligor in insolvency proceedings;

102.    (2) a defense of the obligor stated in another section of this Article or a defense of the

obligor that would be available if the person entitled to enforce the instrument were enforcing a

right to payment under a simple contract; and

103.    (3) a claim in recoupment of the obligor against the original payee of the instrument if the

Complaint for Declaratory Judgment, Injunctive Relief, Accounting,
Cancellation of Instruments, Claim in Recoupment, Quiet Title.
25.

**Exhibit A
Page 25**

claim arose from the transaction that gave rise to the instrument; but the claim of the obligor may be asserted against a transferee of the instrument only to reduce the amount owing on the instrument at the time the action is brought.

104.    (b) The right of a holder in due course to enforce the obligation of a party to pay the instrument is subject to defenses of the obligor stated in subsection (a)(1), but is not subject to defenses of the obligor stated in subsection (a)(2) or claims in recoupment stated in subsection (a)(3) against a person other than the holder.

105.    (c) Except as stated in subsection (d), in an action to enforce the obligation of a party to pay the instrument, the obligor may not assert against the person entitled to enforce the instrument a defense, claim in recoupment, or claim to the instrument (Section 3-306) of another person, but the other person's claim to the instrument may be asserted by the obligor if the other person is joined in the action and personally asserts the claim against the person entitled to enforce the instrument.

106.    An obligor is not obliged to pay the instrument if the person seeking enforcement of the instrument does not have rights of a holder in due course and the obligor proves that the instrument is a lost or stolen instrument.

107.    (d) In an action to enforce the obligation of an accommodation party to pay an instrument, the accommodation party may assert against the person entitled to enforce the instrument any defense or claim in recoupment under subsection (a) that the accommodated party could assert against the person entitled to enforce the instrument, except the defenses of discharge in insolvency proceedings, infancy, and lack of legal capacity.

108.    Plaintiff states promissory note is fraudulent and subject to defenses including UCC §3-305., DEFENSES AND CLAIMS IN RECOUPMENT.

109.    Plaintiff asserts that Defendants are willfully hiding the original promissory note so as to

---

conceal their RICO operation of fractional reserve lending in violation of law, good faith and fair

business dealings.

110.    Inadequate consideration to establish status and standing to foreclose is evident in this

case.

C.C §3206.    (a) An indorsement limiting payment to a particular person or
otherwise prohibiting further transfer or negotiation of the
instrument is not effective to prevent further transfer or
negotiation of the instrument.

(b) An indorsement stating a condition to the right of the
indorsee to receive payment does not affect the right of the indorsee
to enforce the instrument.  A person paying the instrument or taking
it for value or collection may disregard the condition, and the
rights and liabilities of that person are not affected by whether the
condition has been fulfilled.

(c) If an instrument bears an indorsement (i) described in
subdivision (b) of Section 4201, or (ii) in blank or to a particular
bank using the words "for deposit," "for collection," or other words
indicating a purpose of having the instrument collected by a bank for
the indorser or for a particular account, the following rules apply:

(1) A person, other than a bank, who purchases the instrument when
so indorsed converts the instrument unless the amount paid for the
instrument is received by the indorser or applied consistently with
the indorsement.

C.C. §3207.    Reacquisition of an instrument occurs if it is transferred
to a former holder, by negotiation or otherwise.  A former holder who
reacquires the instrument may cancel indorsements made after the reacquirer
first became a holder of the instrument.  If the cancellation causes the
instrument to be payable to the reacquirer or to bearer, the reacquirer may
negotiate the instrument.  An indorser whose indorsement is canceled is
discharged, and the discharge is effective against any subsequent holder.

SIXTH CAUSE OF ACTION
Count 6
(Quiet Title of Property to Plaintiff against all Defendants known and unknown)

111.    Plaintiff refers to and incorporates herein by this reference each and every allegation

contained in paragraphs 1 through 110 above.

112.    Plaintiff being in quiet possession of the property, asks the court to Quiet the Title of the

real property to Plaintiff by cancellation of instruments. In 1889, the California Supreme Court

stated that an action for quiet title "is for the purpose of stopping the mouth of a person who has

asserted or is asserting a claim to the plaintiff's property." Castro v. Barry, 79 Cal. 443. The

present statute for quiet title may be found in California Code of Civil Procedure Section

760.010, et seq.

113.    Plaintiff is and at all times herein mentioned the owner and/or entitled to possession of

the property located at the real property as described above in the property description.

114.    Plaintiff is informed and believe and thereupon allege that the defendants, and each of

them, claim some form of an interest in the property adverse to plaintiff herein. However, the

claim of said Defendant is without any right whatsoever, and said Defendants do not have legal

or equitable right, claim, or interest in said property.

115.    Plaintiff therefore seeks a declaration that the title to the subject property is vested in

plaintiffs Alejandro and Damaris Capdevielle, and that the defendants herein, and each of them,

be declared to have no estate, right, title or interest in the subject property and that said

defendant, and each of them, be forever enjoined from asserting any estate, right, title or interest

in the subject property adverse to plaintiff herein.

116.    The purpose of the action is to eliminate the adverse claims and to establish, perfect, or

"quiet" the title of the property in the claimants." 9 California Real Estate 2d 436, et seq. (Miller

& Starr, 1990). An action for quiet title may be brought when one wants to establish title by

adverse possession or acquire an easement by prescription.

### Finding of Facts and Conclusions of Law

1.  Roosevelt inaugural address March 6-9 1933 "as if invaded by a foreign foe".

2.  The money trust operators use a computer created credit banking system for mortgage
    loan business using fractional reserve lending.

3.  Plaintiff has obtain information sufficient to state criminal usury charges against
    defendants under Federal RICO laws as the written contract promissory note and deed
    of trust where known by defendants in advance that these contracts were set for future

---

Complaint for Declaratory Judgment, Injunctive Relief, Accounting,
Cancellation of Instruments, Claim in Recoupment, Quiet Title.
28.

**Exhibit A**
**Page 28**

foreclosure just like giving someone a 15 mile contract with only a mile of gas in the tank, money being the fuel of the fraudulent promissory note and deed of trust sham.

4.  CCP §747. An action for the recovery of real property against a person in possession cannot be prejudiced by any alienation made by such person, either before or after the commencement of the action. Therefore the Court is allowed to permit the injunctive request as it is already acknowledged as a fact of and acknowledged by operation of law of which plaintiff invites the Courts attention pursuant to rules of evidence

5.  That the Court accept Judicial Notice of the attached exhibits per applicable rules of evidence of all exhibits, affidavits, declarations and attachments by California rules of evidence 451, 452 or other designations.

    Plaintiff requests the following case be noticed for reference.

JOHN L. LEWIS, Plaintiff/Appellant, vs. UNITED STATES OF AMERICA, Defendant/Appellee. No. 80-5905 UNITED STATES COURT OF APPEALS, NINTH CIRCUIT 680 F.2d 1239; 1982 U.S. App. LEXIS 20002 Submitted March 2, 1982, Decided April 19, 1982. **Examining the organization and function of the Federal Reserve Banks, and applying the relevant factors, we conclude that the Reserve Banks are not federal instrumentalities for purposes of the FTCA, but are independent, privately owned and locally controlled corporations.**

    Plaintiff believes the federal reserve system provides vital services every day and has found the system to serve for the greater good. However there also very good fundamental and technical reasons for cancelling the note and merging the legal and equitable title of the deed of trust back to the plaint in the form of a writ of possession by a non-monetary judgment.

IX

**RELIEF REQUESTED**

    WHEREFORE, Plaintiffs Alejandro and Damaris Capdevielle pray for judgment against defendants and each of them, as follows:

    **Declaratory judgment, relief:**

117.    Declare the rights and duties of the parties; specifically that defendants have no right, title

---

Complaint for Declaratory Judgment, Injunctive Relief, Accounting, Cancellation of Instruments, Claim in Recoupment, Quiet Title.
29.

**Exhibit A
Page 29**

or interest in the real property as described above, nor have any real right to conduct the trustee's

sale.

118.    That defendants are estopped from further proceedings in regard to the real property as

described above, and are legally barred by the doctrine of equitable estoppel for failure to

establish status and standing while in violation of the fair debt collection practices act.

119.    To declare and provide other relief that may be appropriate.

**Injunctive Relief:**

120.    For a judgment forever enjoining said defendants, and each of them, from claiming any

estate, right, title or interest in the subject property that would create a fraudulent disposition in

this case;

121.    That the Court issue a temporary restraining order, preliminary injunction, and

permanent injunction restraining the Defendants, their agents, attorneys and representatives,

and all persons acting in concert or participation with them, from selling, attempting to sell, or

causing to be sold the Property either under the power of sale clause contained in the deed of

trust or by a judicial foreclosure or other action.

**Accounting:**

122.    Issue an order directing defendant(s) to account for the location of instruments sought to

be canceled so an accounting may be performed to discover the truth and identity of the holder in

due course for value, so as to arrive at a just and equitable disposition for the matter in this case.

To declare and provide other relief for accounting that may be appropriate.

**Cancellation of Instruments:**

123.    Issue an order to defendants to produce and provide the original instruments to the Clerk

of the Court for cancellation of the promissory note(s) and related deed of trust(s) for the real

property described in this complaint.

---

Complaint for Declaratory Judgment, Injunctive Relief, Accounting,
Cancellation of Instruments, Claim in Recoupment, Quiet Title.
30.

**Exhibit A**
**Page 30**

To declare and provide other relief for the accounting that may be appropriate.

**Claim in Recoupment:**

124. The Court is asked to issue an order and such other appropriate relief in accordance and associated with reasonable commercial claim in recoupment.

To declare and provide other relief for the that may be appropriate.

**Quiet Title:**

125. For an order compelling said Defendants, and each of them, to delivery to the Court all outstanding instruments not limited to promissory note(s) and deed of trust(s) in order to quiet title to plaintiff.

126. Order defendants to release, transfer, convey legal title as they claim to be holder of such title, cancelling the note(s) and deed(s) of trust in plaintiff, ruling quiet and peaceful possession of the subject property to Plaintiff herein;

127. To declare and provide other relief for the accounting that may be appropriate.

128. For a declaration and determination that Plaintiff is the rightful holder of title to the property and that Defendant herein, and each of them, be declared to have no estate, right, title or interest in said property;

129. That judicial notice be taken of Exhibits attached or referenced by incorporation.

130. That attorney fees not be awarded to defendant(s) attorneys from plaintiff, as plaintiff will pay our own attorney fees if any, and will pay for costs incurred in this action.

131. For such other and further relief as the Court may deem just and proper.

132. Provided for enforcement of nonmonetary judgments issue writ of possession C.C.P. §715.010 in favor of plaintiff.

Complaint for Declaratory Judgment, Injunctive Relief, Accounting, Cancellation of Instruments, Claim in Recoupment, Quiet Title.
31.

**Exhibit A
Page 31**

Dated: 03/06/2008.

ALEJANDRO CAPDEVIELLE, CCC 1308

By: _Alejandro Capdevielle_
Alejandro Capdevielle
All rights invoked

Dated: 03/06 2008.

DAMARIS CAPDEVIELLE, CCC 1308

By: _Damaris Capdevielle_
Damaris Capdevielle
All rights invoked

## VERIFICATION

We, Alejandro and Damaris Capdevielle are the plaintiffs in this action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe the allegations to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 03/06/2008.

ALEJANDRO CAPDEVIELLE, CCC 1308

By: _Alejandro Capdevielle_
Alejandro Capdevielle
All rights invoked

Dated: 03/06 2008.

DAMARIS CAPDEVIELLE, CCC 1308

By: _Damaris Capdevielle_
Damaris Capdevielle
All rights invoked

Complaint for Declaratory Judgment, Injunctive Relief, Accounting,
Cancellation of Instruments, Claim in Recoupment, Quiet Title.
32.

**Exhibit A
Page 32**

POS

PROOF OF SERVICE AND ACKNOWLEDGMENT OF RECEIPT BY MAIL

State: California        )
County: San Diego  )  Affirmed and Attested

I, _____ am over the age of 18 and not a party to the

within action and live in San Diego County California. My mailing address is

_____,

California. On, _____ 2008 A.D., I did send by;

Registered mail: _____ return receipt requested  (yes __) (no __)

Certified mail: _____ return receipt requested  (yes __) (no __)

First Class mail: _____ delivery confirmation  (yes __) (no __)

Next Day mail: _____ delivery confirmation  (yes __) (no __)

Express mail: _____ Priority mail: _____

The document(s) described as;

  Verified Complaint for:

1. Declaratory Judgment

2. Injunctive Relief

3. Accounting

4. Cancellation of Instruments

5. Claim in Recoupment

6. Quiet Title

     And by placing a true copy thereof enclosed in a sealed envelope, fully prepaid,

addressed as follows:

  1. GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., C/o CSC 2711

     CENTERVILLE RD., WILMINGTON, DE 19808. Agent for Service of Process CSC

     2730 GATEWAY OAKS DR STE 100, SACRAMENTO, CA. 95833.

Complaint for Declaratory Judgment, Injunctive Relief, Accounting,
Cancellation of Instruments, Claim in Recoupment, Quiet Title.
33.

**Exhibit A
Page 33**

2. WORLD SAVINGS, INC., 1901 HARRISON STREET, OAKLAND, CALIFORNIA

94612. **Agent for Service of Process** CSC 2730 GATEWAY OAKS DR STE 100,

SACRAMENTO, CA. 95833.

3. ROBERT D. NOWLEN and TERRI L. NOWLEN, alleged entities

13651 Summer Glen Vis, El Cajon , CA 92021


    And by placing in the mail at the location of United States Post Office Post Office

_____ , California,

_____

I attest and affirm that I did mail the above on the date of _____ , 2008 A.D.

_____

Signature

EXHIBIT A

EXHIBIT – A
(Deed)

Exhibit A
Page 36

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:
ALEJANDRO CAPDEVIELLE
DAMARIS CAPDEVIELLE
3432 STOCKMAN ST.
NATIONAL CITY, CA 91950

5000

**DOC # 2001-0167582**

Mar 22, 2001 11:58 AM

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:    150.00
DC:         0C

2001-0167582

Space Above This Line for Recorder's Use Only

Escrow No.: 008678KW

A.P.N.: 564-392-10-00                    Order No.: 12558969

# GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s) THAT DOCUMENTARY TRANSFER TAX IS: COUNTY $143.00
[✓]    computed on full value of property conveyed, or
[ ]    computed on full value less value of liens or encumbrances remaining at time of sale,
[ ]    unincorporated area; [ ] City of NATIONAL CITY, and

FOR A VALUABLE CONSIDERATION, Receipt of which is hereby acknowledged,
**ROBERT D. NOWLEN and TERRI L. NOWLEN, Husband and Wife as Joint Tenants**

hereby GRANT(S) to **ALEJANDRO CAPDEVIELLE and DAMARIS CAPDEVIELLE,**      HUSBAND AND WIFE AS
JOINT TENANTS
the following described property in the City of NATIONAL CITY, County of San Diego State of California;

Lot 144, SWEETWATER HEIGHTS, IN THE CITY OF NATIONAL CITY, COUNTY OF SAN DIEGO, STATE
OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 4805, FILED IN THE OFFICE OF THE COUNTY
RECORDER OF SAN DIEGO COUNTY, JUNE 30, 1961.

*Robert D. Nowlen*
ROBERT D. NOWLEN

*Terri L Nowlen*
TERRI L. NOWLEN

Document Date: December 18, 2000

STATE OF CALIFORNIA                    )SS
COUNTY OF San Diego                    )
On 1-8-01            before me, Roberto Potter
personally appeared Terri L Nowlen
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument
the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature *Roberta Potter*



ROBERTA POTTER
COMM. # 1174501
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Comm. Exp. Mar. 22, 2002

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| A | 1 | 1 |

Mail Tax Statements to:    SAME AS ABOVE or Address Noted Below

**Exhibit A**

**Page 37**

EXHIBIT – B
(Notice of Default)

RECORDING REQUESTED BY:

RECORDING REQUESTED BY
STEWART TITLE

WHEN RECORDED MAIL TO:
Golden West Savings Association Service Co.
Post Office Box 34957
San Antonio, Texas 78265-4957

(210) 543-4998        1248

F11
ZP

DOC # 2007-0709904

NOV 08, 2007     8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:        12.00
                                DA:        1
PAGES:        2

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: 2007-44187573
Loan No.: 0044187573                          Order No. 800880

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $1,698.41 as of 11/1/2007, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**WORLD SAVINGS**
**4101 WISEMAN BOULEVARD, T6F2**
**SAN ANTONIO, TEXAS 78251-4201**
**Phone: 1-(800) 282-3458**

EXHIBIT | PAGE | OF
Exhibit A
Page 46          B          2

TS No.: 2007-44187573
Loan No.: 0044187573

1249

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 10/2/2006, executed by ALEJANDRO CAPDEVIELLE AND DAMARIS CAPDEVIELLE, HUSBAND AND WIFE, as Trustor, to secure certain obligations in favor of WORLD SAVINGS BANK, FSB, A FEDERAL SAVINGS BANK, as beneficiary, recorded 10/10/2006, as Instrument No. 2006-0719281, in Book , Page ,   of Official Records in the Office of the Recorder of SAN DIEGO County, California describing land therein as: As more fully described on said Deed of Trust.

including ONE (1) NOTE(S) FOR THE ORIGINAL sum of $23,500.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:
INSTALLMENT OF PRINCIPAL AND INTEREST PLUS IMPOUNDS OR ADVANCES WHICH BECAME DUE ON 8/1/2007 PLUS LATE CHARGES, AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL, INTEREST, BALLOON PAYMENTS, PLUS IMPOUNDS OR ADVANCES AND LATE CHARGES THAT BECOME PAYABLE.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: November 01, 2007

GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION

BY: _____
SETH WHITE, ASSISTANT SECRETARY

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| Exhibit B Page 41 | 2 | 2 |

EXHIBIT – B2
(Deed of Trust and Note)

**Exhibit A**
**Page 42**

Recording requested by
*First American Title*

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER:0042918847

NOTE AMOUNT: $350,000.00   **11587**

2372710-1

DOC #   2006-0349244

MAY 17, 2006    3:12 PM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:          57.00
PAGES:         17        DA:    1

2006-0349244

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS
PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND
AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES
AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE
RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY
PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS
$437,500.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.    DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
(A)   Security Instrument. This Deed of Trust, which is dated May 12, 2006, will be called the
"Security Instrument."

(B)   Borrower. ALEJANDRO CAPDEVIELLE AND DAMARIS CAPDEVIELLE, HUSBAND AND
WIFE sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C)   Lender. WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be
called "Lender." Lender is a FEDERAL SAVINGS BANK, which is organized and exists under the laws of
the United States. Lender's address is 1901 Harrison Street, Oakland, CA 94612

LENDER'S USE ONLY

SD001A (2004-03-2)                    DEED OF TRUST-ADJUSTABLE              CA
DEFERRED INTEREST                              Page 1

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B Exhibit A Page 48 | 2 | |

11588

0042918847

(D) Note. The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. $350,000.00, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by June 15, 2036 ("Maturity Date").

(E) Property. The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F) Sums Secured. The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G) Person. Any person, organization, governmental authority or other party will be called "Person."

(H) Trustor, Beneficiary, Trustee. Borrower is the "Trustor," Lender is the "Beneficiary" and Golden West Savings Association Service Co., A California Corporation is the "Trustee."

II.     BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY
        I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

        (i)    pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

        (ii)   pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

        (iii)  keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

III.    DESCRIPTION OF THE PROPERTY
        I give Trustee rights in the Property described below:

        (i)    The Property which is located at 3432 STOCKMAN ST, NATIONAL CITY, CA 91950-8139. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

        (ii)   All buildings and other improvements that are located on the Described Property;

SD0001B (2004-03-2)
DEFERRED INTEREST

DEED OF TRUST-ADJUSTABLE
Page 2

CA

Page 2 of 17

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| Exhibit 2 | 2 | 2 |
| Page 44 | | |

**EXHIBIT – B3**
(Deed of Trust and Note)

Exhibit A
Page 45

2909

RECORDING . .QUESTED BY:
FIDELITY NATIONAL TITLE

DOC # 2006-0719281

OCT 10, 2006   10:21 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:       54.00
PAGES:      16        DA:      1

2006-0719281

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

*Fll 16P*

When recorded return to:
Custom Title Solutions (H)
2550 N. Redhill Ave.
Santa Ana, CA 92705
(800)756-3524 ext. 5996 or 5660

LOAN NUMBER: 0044187573

FOR RECORDER'S USE ONLY

OPEN END DEED OF TRUST
(SECURING FUTURE ADVANCES)
THIS DEED OF TRUST IS SECURITY FOR AN EQUITY LINE OF CREDIT AGREEMENT AND
DISCLOSURE STATEMENT MATURING NO LATER THAN November 1, 2036.

THIS DEED OF TRUST (herein called the "Security Instrument") is made this 2nd day of
October, 2006 , among the Trustor, ALEJANDRO CAPDEVIELLE AND DAMARIS CAPDEVIELLE,
HUSBAND AND WIFE

(herein "Borrower"), Golden West Savings Association Service Co., A California Corporation
(herein "Trustee"), and the Beneficiary, WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS
BANK,, ITS SUCCESSORS AND/OR ASSIGNEES, whose address is   1901 Harrison Street,
Oakland, CA 94612  (herein "Lender").

PURSUANT TO an Equity Line of Credit Agreement and Disclosure Statement dated October 2,
2006 (herein "Note"), Borrower may incur maximum unpaid loan indebtedness (exclusive of interest
thereon) in amounts fluctuating from time to time up to the maximum principal
sum outstanding at any time of TWENTY-THREE THOUSAND FIVE
HUNDRED AND 00/100 Dollars (U.S. $23,500.00), which is due and
payable, if not sooner paid, no later than the 30th anniversary of the
opening of the Equity Line of Credit.

0 0 3

LENDER'S USE ONLY

SD823A2 (2004-03-2)
ELOC

Page 1

CA

SAN DIEGO.CA    DOCUMENT: TD 2006.719281

Printed on 2/4/2008 7:22:30 PM    Provided by DataTrace System

EXHIBIT | PAGE | OF
Exhibit A
B 3 Page 46 | 1

EXHIBIT – B4
(Deed of Trust and Note)

Exhibit A
Page 47

COPY FOR YOUR RECORDS

ESCROW NO.: 008678KW

# NOTE SECURED BY DEED OF TRUST

### INSTALLMENT NOTE - INTEREST ONLY

**EL CAJON, CALIFORNIA**

DECEMBER 18, 2000

$130,000.00

In installments and at the time hereinafter stated, for value received, I/We, promise to pay to

**ROBERT D. NOWLEN AND TERRI L. NOWLEN, HUSBAND AND WIFE AS JOINT TENANTS** or order, at El Cajon, California, or at place designated by the holder(s) hereof, the principal sum of One Hundred Thirty Thousand And 00/100 Dollars ($130,000.00) with interest from __MARCH 22, 2001__ on the amounts of principal remaining from time to time unpaid, until said principal sum is paid, at the rate of 9.00% per cent per annum. INTEREST ONLY due in monthly installments of Nine Hundred Seventy Five And 00/100 Dollars ($975.00) or more on the __15th__ day of each and every month, commencing on the __15th of APRIL 2001__, and continuing hereafter until __APRIL 15, 2010__, at which time the entire unpaid principal balance, together with interest due thereon, shall become all due and payable.

This note is subject to Section 2966 of the Civil Code, which provides that the holder of this note shall give written notice to the trustor, or his successor in interest, of prescribed information at least 90 and not more than 150 days before any balloon payment is due.

The Deed of Trust securing this note contains the following: "This Deed of Trust is given and accepted upon the express provision that should the property hereinbefore described, or any part thereof, be conveyed or alienated by Trustor, either voluntarily or by operation of law, without Beneficiary's written consent, then all sums secured hereby shall, at Beneficiary's option, become immediately due and payable."

Anything to the contrary notwithstanding, in the event this Note is paid in full prior to __DECEMBER 18, 2002__, an amount of $4,000.00 shall be paid as a prepayment charge in addition to the balance due hereunder.

In the event any payment is not paid within 5 days of the due date, Trustor shall pay to Beneficiary a LATE CHARGE of 10% plus and additional fee of $5.00 per day late after the 5th of each month, in addition to each payment due and unpaid.

This Note is given and accepted as a portion of the purchase price.

Each payment shall be credited first on interest then due and the remainder on principal sum; and interest shall thereupon cease upon the amount so credited on the said principal. Should default be made in payment of any installment when due the whole sum of principal and interest shall become immediately due at the option of the holder of this note. Principal and interest payable in lawful money of the United States of America. Should suit be commenced to collect this note or any portion thereof, such sum as the Court may deem reasonable shall be added hereto as attorney's fees. This note is secured by a Deed of Trust to PCG&S GROUP, INC., a California Corporation, a California Corporation as Trustee, affecting the property located at: 3432 STOCKMAN STREET, NATIONAL CITY, CA 91950

_____
ALEJANDRO CAPDEVIELLE

_____
DAMARIS CAPDEVIELLE

**DO NOT DESTROY THIS NOTE:** When paid, said original Note, together with the Deed of Trust securing same, must be surrendered to Trustee for cancellation and retention before reconveyance will be made.

**Exhibit A**
**Page 48**

Exhibit A
Page 49

EXHIBIT – C
(Fair Debt Collection Practices)

Certified Mail No.: 7007 0710 0004 0412 1105

REQUEST FOR VALIDATION AND INFORMATION TO VALIDATE ALLEGED
DEBT

NOTICE OF FAIR DEBT COLLECTION PRACTICES ACT
CALIFORNIA CIVIL CODE SECTION 1788-1788.3

February 5th, 2008

Alejandro and Damaris Capdevielle
3432 Stockman St.
National City, California 91950

**Golden West Savings Association Service**
**Post Office Box 34957**
**San Antonio, Texas 78265-4957**

REQUEST FOR VALIDATION AND VERIFICATION OF ALLEGED DEBT

Dear Golden West Savings Association Service,
Greetings,

We hereby assert the right to obtain verification of the alleged DEBT pursuant to Fair Debt
Collection Practices and 15 U.S.C. 1692 as in which to make this request as received on
11/8/2007.

1. Please obtain and provide the name and address of the original creditor under
   affidavit.

2. Please obtain and provide the name and address of the current creditor under
   affidavit.

3. Please obtain and provide the name and address of the actual note holder of the
   original promissory note and deed of trust to confirm the legal status of the holder
   of the note.

If you do not or are not able to provide the above information by the date of February
19th, 2008 (14 days), you and I agree there is no valid debt owed to you or anyone else.

Thank you,
Sincerely

ALEJANDRO CAPDEVIELLE

By: _Clay Con Utterback_
Clayton Utterback, attorney in fact
All rights reserved

DAMARIS CAPDEVIELLE

By: _Clay Con Utterback_
Clayton Utterback, attorney in fact
All rights reserved

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| C Exhibit A Page 51 | | 25 |

Certified Mail No.: 7007 0710 0004 0412 1105

## DEBT VALIDATION CERTIFICATE
### (Exhibit A)

I, _____, am the authorized agent for
　　　　　(Please print your name here)

_____ (company name).

the address is _____,

City of _____ State _____ Postal Code: _____
Phone Number: _____

THE NAME OF THE NOTE HOLDER IS:

The name of the current holder of the original note entitled to enforce the instrument is:

_____.

The address of the current holder of the original note entitled to enforce the instrument is:

_____

The Amount of the validated debt is: $ _____ and is owed

to the name or order of: _____

　　　I hereby declare under penalties of perjury that upon careful review of the matter, and after reading the Fair Debt Collection Practices Act, and after being fully informed in regard to the attempt to collect a debt in regard to the attached Exhibit B "Notice of Default and Election to Sell Under Deed of Trust". I now certify the debt as true, correct and complete under the laws of the State of California.

Dated this _____ day of _____ 2008.     _____
　　　　　　　　　　　　　　　　　　　　　　　　　　Authorized Agent for

　　　　　　　　　　　　　　　　　　　　　　　　　_____

　　　　　　　　　　　　　　　　　　　　　　　　　_____

　　　　　　　　　　　　　　　　　　　　　　　　　_____

Certified Mail No.: 7007 0710 0004 0412 1105

**OFFICIAL CALIFORNIA NOTARIAL
CERTIFICATE** <u>JURAT</u>

State of California
County of _____

Subscribed and sworn to (or affirmed) before me on this ____ day of _____, 2008, by
_____, proved to me on the basis of satisfactory evidence to be

the person(s) who appeared before me.

(seal)

_____
NOTARY PUBLIC SIGNATURE

ADDITIONAL INFORMATION

<u>DOCUMENT INFORMATION</u>
Document Date _____
Number of Pages _____
[ ] Placed under Oath [ ] Placed under Affirmation [ ] Document Signed before the Notary

<u>TYPE OF IDENTIFICATION</u>

[ ] Satisfactory Evidence — identification card
[ ] One Credible Witness acknowledging identity of principal
[ ] Two Credible Witnesses acknowledging identity of principal

EMBOSSMENT

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| C | Exhibit A Page 53 | 25 |

Certified Mail No.: 7007 0710 0004 0412 1105

## PROOF OF SERVICE AND ACKNOWLEDGMENT OF RECEIPT BY MAIL

State:     California          )
County:  Orange              ) Affirmed and Attested

      I, Owen Golden am over the age of 18 and not a party to the within action and live in Orange County California. My address is C/o 9366 Grackle Ave. Fountain Valley, California 92708. On, February 5th 2008 A.D., I did send by Certified Mail No.: 7007 0710 0004 0412 1105 return receipt requested.

      And did mail the document(s) described as:

1. Copy of REQUEST FOR VALIDATION AND INFORMATION TO VALIDATE ALLEGED DEBT Certified Mail No.: 7007 0710 0004 0412 1105.
2. Exhibit A DEBT VALIDATION CERTIFICATE
3. Exhibit B Copy of Notice of Default TS# **2007-44187573**

And by placing a true copy thereof enclosed in a sealed envelope, fully prepaid, addressed as follows:

**Golden West Savings Association Service**
**Post Office Box 34957**
**San Antonio, Texas 78265-4957**

      And by placing in the mail at the location of United States Post Office IDA JEAN HAXTON STATION, HUNTINGTON BEACH, CALIFORNIA 92615. I attest and affirm that I did mail the above on the date of February 5th, 2008 A.D.

_____
Signature

EXHIBIT | PAGE | OF
Exhibit 4
Page 54



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Golden West Savings Assoc. Service
P.O. Box 34957
San Antonio, TX. 78265-4957

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery
J McSon                            3/1/08

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7007 0710 0004 0412 1105

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

EXHIBIT | PAGE | OF
Exhibit 5 | Page 55

USPS - Track & Confirm



**UNITED STATES POSTAL SERVICE***

Track & Confirm          FAQs

## Track & Confirm

### Search Results

Label/Receipt Number: 7007 0710 0004 0412 1105
Status: Delivered

Your item was delivered at 5:41 AM on February 11, 2008 in SAN
ANTONIO, TX 78265.

Additional Details >    Return to USPS.com Home >

**Track & Confirm**

Enter Label/Receipt Number.

Go >

### Notification Options

Track & Confirm by email

Get current event information or updates for your item sent to you or others by email.    Go >

Site Map    Contact Us    Forms    Gov't Services    Jobs    Privacy Policy    Terms of Use    National & Premier Accounts

Copyright© 1999-2007 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA

EXHIBIT | PAGE | OF
C | 6 | 25

**Exhibit A**
**Page 56**
2/18/2008

Certified Mail No.: 7⬤⬤710 0004 0413 0978

NOTICE OF SECOND REQUEST FOR VALIDATION AND INFORMATION TO VALIDATE ALLEGED DEBT AND NOTICE OF FAULT TEN (10) DAY RIGHT TO CURE ON REQUEST TO VALIDATE ALLEGED DEBT

February 21st, 2008

Alejandro and Damaris Capdevielle
3432 Stockman St.
National City, California 91950

**Golden West Savings Association Service**
**Post Office Box 34957**
**San Antonio, Texas 78265-4957**

NOTICE OF SECOND REQUEST FOR VALIDATION
AND VERIFICATION OF ALLEGED DEBT

NOTICE OF FAULT:   February 19th, 2008
NOTICE OF TEN (10) DAY RIGHT TO CURE FAULT ON REQUEST TO VALIDATE ALLEGED DEBT

Dear Golden West Savings Association Service,
Greetings,

I have not received your reply in regard to my request for validation of the alleged debt. Can you please send me a copy of the front and back of the original promissory note.

I can see we may have a communication gap between what I am asking for and what you sent me, so I will clarify the request for validation of the alleged debt.

Enclosed is a Certificate of Validation for the alleged debt to forward to the actual note holder to be signed under any notary public for witnessing.

1. Please obtain and provide the name and address of the original creditor. The original creditor will be the source from which the funding originated for the transaction.

2. Please obtain and provide the name and address of the current creditor which might be known as the "investor", the person who paid adequate value for the note you claim to be collecting a debt for.

3. Please obtain and provide the name and address of the actual "*note holder*" of the original promissory note and the deed of trust to confirm the "*legal status*" of the note, whether is has been altered by endorsement and that the note holder is the true party in interest.

| EXHIBIT | PAGE | OF |
|---------|------|----|
| C | 7 | 25 |

Exhibit A
Page 57

Certified Mail No.: 7L___10 0004 0413 0978

"Negotiation" means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder.

Holder in due course means the holder of an instrument if both of the following apply:

(1) The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity.

(2) The holder took the instrument (A) **for value**, (B) in good faith, (C) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (D) without notice that the instrument contains an unauthorized signature or has been altered, (E) without notice of any claim to the instrument described in Section 3306, and (F) without notice that any party has a defense or claim in recoupment described in subdivision (a) of Section 3305 of the commercial code.

Is it true that some debt collection companies use tricks such as "*affidavit of lost note*" rather than admit they are not the true legal note holder while they attempt to collect an unlawful debt? Some debt collection companies aren't honest about the practices of collection of debts which is why Congress provided remedies in the form of validation laws.

Therefore sending me a copy of the deed of trust doesn't verify who the holder in due course of the promissory note is, nor does it validate the alleged debt in violation of the Fair Debt Collection Practices Act and other laws.

The law requires you to be honest with me about the validity and to whom you claim I owe a debt you are attempting to collect. I have provided a copy of 15 U.S.C. 1692f Unfair Practices which regulates your debt collection activities and communications with me in consideration of your attempt to collect a debt.

The law requires you not to use false or misleading representations about the character, amount, or legal status of any debt which includes the one you sent to me by United States Mail.

NOTICE OF YOUR LEGAL REQUIREMENTS UNDER 15 U.S.C. 1692e.

15 U.S.C. §1692e. False or Misleading Representations:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.
(2) The false representation of—
(A) the character, amount, or legal status of any debt;

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| C | 8 | 25 |

2
Exhibit A
Page 58

Certified Mail No.: 70__/10 0004 0413 0978

15 U.S.C. §1692f. Unfair Practices

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

After looking through the commercial code, a person entitled to enforce" an instrument may mean (a) the holder of the instrument, (b) a non-holder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3309 or subdivision (d) of Section 3418.

Are you claiming to be a person entitled to enforce an instrument on behalf of another party? What is the name of the true party in interest for the note you claim to be attempting to collect a debt for?

Upon further research I have discovered you may be attempting to collect an unlawful debt without validation in violation of usury laws. Please restate your request in the form of verified claim under notary seal postmarked within 10 days of receipt of this request or an extension not to exceed 14 days, or not later than the date of *March 17th 2008*.

If I do not receive the Certificate of Validation under notary public seal by the date of *Mar 1a 17th 2008* as requested, the alleged debt you claim to be attempting to collect will be deemed to be an "unverified debt". It is possible that the alleged debt may not be true "in part" or "at all" in relation to the exercise of my rights afforded me by the Fair Debt Collection Practices Act and other laws and protections under all rights reserved now invoked.

Thank you,
Sincerely

Dated: *Feb 21* , 2008.

By: _____

All rights invoked

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| C | 9 | 25 |

Exhibit A
Page 59

Certified Mail No.: 70__ 710 0004 0413 0978

## DEBT VALIDATION CERTIFICATE
### (Exhibit A)

I, _____, am the authorized agent for
          (Please print your name here)

_____ (company name),

the address is _____,

City of _____ State _____ Postal Code: _____
Phone Number: _____

THE NAME OF THE NOTE HOLDER IS:

The name of the current holder of the original note entitled to enforce the
instrument is:

_____

The address of the current holder of the original note entitled to enforce the
instrument is:

_____

The Amount of the validated debt is: $ _____ and is owed

to the name or order of: _____

    I hereby declare under penalties of perjury that upon careful review of the matter,
and after reading the Fair Debt Collection Practices Act, and after being fully informed in
regard to the attempt to collect a debt in regard to the attached Exhibit D "Notice of
Default and Election to Sell Under Deed of Trust", I now certify the debt as true, correct
and complete under the laws of the State of California.

Dated this _____ day of _____ 2008.    _____
                                      Authorized Agent for

                                      _____
                                      _____
                                      _____

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| C | 10 | 25 |

**Exhibit A**
**Page 60**

Certified Mail No.: 7007 0710 0004 0413 0978

**OFFICIAL CALIFORNIA NOTARIAL
CERTIFICATE** <u>JURAT</u>

State of California
County of _____

Subscribed and sworn to (or affirmed) before me on this _____ day of _____,2008, by
_____,proved to me on the basis of satisfactory evidence to be
the person(s) who appeared before me.

(seal)

_____
**NOTARY PUBLIC SIGNATURE**

ADDITIONAL INFORMATION

<u>DOCUMENT INFORMATION</u>
Document Date _____
Number of Pages _____
[ ] Placed under Oath [ ] Placed under Affirmation [ ] Document Signed before the Notary

<u>TYPE OF IDENTIFICATION</u>

[ ] Satisfactory Evidence — identification card
[ ] One Credible Witness acknowledging identity of principal
[ ] Two Credible Witnesses acknowledging identity of principal

EMBOSSMENT

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| C | 11 | 25 |

Exhibit A
Page 61

Certified Mail No.: 7000 0710 0004 0413 0978

## CALIFORNIA CONSTITUTION ARTICLE 15 USURY
### (Exhibit B)

SECTION 1. The rate of interest upon the loan or forbearance of any money, goods, or things in action, or on accounts after demand, shall be 7 percent per annum but it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract in writing for a rate of interest:

(1) **For any loan** or forbearance **of any money**, goods, or things in action, if the money, goods, or things in action are for use primarily for personal, family, or household purposes, **at a rate not exceeding 10 percent per annum**; provided, however, that any loan or forbearance of any money, goods or things in action the proceeds of which are used primarily for the purchase, construction or improvement of real property shall not be deemed to be a use primarily for personal, **family or household purposes**; or

(2) For any loan or forbearance of any money, goods, or things in action for any use other than specified in paragraph (1), at a rate not exceeding the higher of (a) **10 percent per annum** or (b) 5 percent per annum plus the rate prevailing on the 25th day of the month preceding the earlier of (i) the date of execution of the contract to make the loan or forbearance, or (ii) the date of making the loan or forbearance established by the Federal Reserve Bank of San Francisco on advances to member banks under Sections 13 and 13a of the Federal Reserve Act as now in effect or hereafter from time to time amended (or if there is no such single determinable rate of advances, the closest counterpart of such rate as shall be designated by the Superintendent of Banks of the State of California unless some other person or agency is delegated such authority by the Legislature).

No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action.

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| C | 12 | 25 |

Certified Mail No.: 70⬤⬤10 0004 0413 0978

## Fair Debt Collection Practices Act
(Exhibit C)

## CIVIL CODE
## SECTION 1788-1788.3

1788.  This title may be cited as the Rosenthal Fair Debt
Collection Practices Act.

1788.1.  (a) The Legislature makes the following findings:
    (1) The banking and credit system and grantors of credit to
consumers are dependent upon the collection of just and owing debts.
Unfair or deceptive collection practices undermine the public
confidence which is essential to the continued functioning of the
banking and credit system and sound extensions of credit to
consumers.
    (2) There is need to ensure that debt collectors and debtors
exercise their responsibilities to one another with fairness, honesty
and due regard for the rights of the other.
    (b) It is the purpose of this title to prohibit debt collectors
from engaging in unfair or deceptive acts or practices in the
collection of consumer debts and to require debtors to act fairly in
entering into and honoring such debts, as specified in this title.

1788.2.  (a) Definitions and rules of construction set forth in this
section are applicable for the purpose of this title.
    (b) The term "debt collection" means any act or practice in
connection with the collection of consumer debts.
    (c) The term "debt collector" means any person who, in the
ordinary course of business, regularly, on behalf of himself or
herself or others, engages in debt collection. The term includes any
person who composes and sells, or offers to compose and sell, forms,
letters, and other collection media used or intended to be used for
debt collection, but does not include an attorney or counselor at
law.
    (d) The term "debt" means money, property or their equivalent
which is due or owing or alleged to be due or owing from a natural
person to another person.
    (e) The term "consumer credit transaction" means a transaction
between a natural person and another person in which property,
services or money is acquired on credit by that natural person from
such other person primarily for personal, family, or household
purposes.
    (f) The terms "consumer debt" and "consumer credit" mean money,
property or their equivalent, due or owing or alleged to be due or
owing from a natural person by reason of a consumer credit
transaction.
    (g) The term "person" means a natural person, partnership,
corporation, limited liability company, trust, estate, cooperative,
association or other similar entity.
    (h) The term "debtor" means a natural person from whom a debt
collector seeks to collect a consumer debt which is due and owing or
alleged to be due and owing from such person.
    (i) The term "creditor" means a person who extends consumer credit
to a debtor.
    (j) The term "consumer credit report" means any written, oral or
other communication of any information by a consumer reporting agency

EXHIBIT | PAGE | OF
Exhibit A
Page 69 13 | 25

Certified Mail No.: 700⬤710 0004 0413 0978

bearing on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for person, family, or household purposes, or (2) employment purposes, or (3) other purposes authorized under any applicable federal or state law or regulation. The term does not include (a) any report containing information solely as to transactions or experiences between the consumer and the person making the report; (b) any authorization or approval of a specific extension of credit directly or indirectly by the issuer of a credit card or similar device; or (c) any report in which a person who has been requested by a third party to make a specific extension of credit directly or indirectly to a consumer conveys his or her decision with respect to that request, if the third party advises the consumer of the name and address of the person to whom the request was made and such person makes the disclosures to the consumer required under any applicable federal or state law or regulation.

(k) The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages, in whole or in part, in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer credit reports to third parties, and which uses any means or facility for the purpose of preparing or furnishing consumer credit reports.

1788.3. Nothing contained in this title shall be construed to prohibit a credit union chartered under Division 5 (commencing with Section 14000) of the Financial Code or under the Federal Credit Union Act (Chapter 14 (commencing with Section 1751) of Title 12 of the United States Code) from providing information to an employer when the employer is ordinarily and necessarily entitled to receive such information because he is an employee, officer, committee member, or agent of such credit union.

## CIVIL CODE
## SECTION 1788.10-1788.18

1788.10. No debt collector shall collect or attempt to collect a consumer debt by means of the following conduct:

(a) The use, or threat of use, of physical force or violence or any criminal means to cause harm to the person, or the reputation, or the property of any person;

(b) The threat that the failure to pay a consumer debt will result in an accusation that the debtor has committed a crime where such accusation, if made, would be false;

(c) The communication of, or threat to communicate to any person the fact that a debtor has engaged in conduct, other than the failure to pay a consumer debt, which the debt collector knows or has reason to believe will defame the debtor;

(d) The threat to the debtor to sell or assign to another person the obligation of the debtor to pay a consumer debt, with an accompanying false representation that the result of such sale or assignment would be that the debtor would lose any defense to the consumer debt;

(e) The threat to any person that nonpayment of the consumer debt may result in the arrest of the debtor or the seizure, garnishment,



Certified Mail No.: 700_ 710 0004 0413 0978

attachment or sale of any property or the garnishment or attachment of wages of the debtor, unless such action is in fact contemplated by the debt collector and permitted by the law; or

(f) The threat to take any action against the debtor which is prohibited by this title.

1788.11.  No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:

(a) Using obscene or profane language;

(b) Placing telephone calls without disclosure of the caller's identity, provided that an employee of a licensed collection agency may identify himself by using his registered alias name as long as he correctly identifies the agency he represents;

(c) Causing expense to any person for long distance telephone calls, telegram fees or charges for other similar communications, by misrepresenting to such person the purpose of such telephone call, telegram or similar communication;

(d) Causing a telephone to ring repeatedly or continuously to annoy the person called; or

(e) Communicating, by telephone or in person, with the debtor with such frequency as to be unreasonable and to constitute an harassment to the debtor under the circumstances.

1788.12.  No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:

(a) Communicating with the debtor's employer regarding the debtor's consumer debt unless such a communication is necessary to the collection of the debt, or unless the debtor or his attorney has consented in writing to such communication. A communication is necessary to the collection of the debt only if it is made for the purposes of verifying the debtor's employment, locating the debtor, or effecting garnishment, after judgment, of the debtor's wages, or in the case of a medical debt for the purpose of discovering the existence of medical insurance. Any such communication, other than a communication in the case of a medical debt by a health care provider or its agent for the purpose of discovering the existence of medical insurance, shall be in writing unless such written communication receives no response within 15 days and shall be made only as many times as is necessary to the collection of the debt. Communications to a debtor's employer regarding a debt shall not contain language that would be improper if the communication were made to the debtor. One communication solely for the purpose of verifying the debtor's employment may be oral without prior written contact.

(b) Communicating information regarding a consumer debt to any member of the debtor's family, other than the debtor's spouse or the parents or guardians of the debtor who is either a minor or who resides in the same household with such parent or guardian, prior to obtaining a judgment against the debtor, except where the purpose of the communication is to locate the debtor, or where the debtor or his attorney has consented in writing to such communication;

(c) Communicating to any person any list of debtors which discloses the nature or existence of a consumer debt, commonly known as "deadbeat lists", or advertising any consumer debt for sale, by naming the debtor; or

(d) Communicating with the debtor by means of a written communication that displays or conveys any information about the consumer debt or the debtor other than the name, address and telephone number of the debtor and the debt collector and which is intended both to be seen by any other person and also to embarrass



EXHIBIT __ PAGE __ OF __
Exhibit A
Page 15   25

Certified Mail No.: 700▮▮10 0004 0413 0978

the debtor.

(e) Notwithstanding the foregoing provisions of this section, the disclosure, publication or communication by a debt collector of information relating to a consumer debt or the debtor to a consumer reporting agency or to any other person reasonably believed to have a legitimate business need for such information shall not be deemed to violate this title.

1788.13. No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:

(a) Any communication with the debtor other than in the name either of the debt collector or the person on whose behalf the debt collector is acting;

(b) Any false representation that any person is an attorney or counselor at law;

(c) Any communication with a debtor in the name of an attorney or counselor at law or upon stationery or like written instruments bearing the name of the attorney or counselor at law, unless such communication is by an attorney or counselor at law or shall have been approved or authorized by such attorney or counselor at law;

(d) The representation that any debt collector is vouched for, bonded by, affiliated with, or is an instrumentality, agent or official of any federal, state or local government or any agency of federal, state or local government, unless the collector is actually employed by the particular governmental agency in question and is acting on behalf of such agency in the debt collection matter;

(e) The false representation that the consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, finance charges, or other charges if, in fact, such fees or charges may not legally be added to the existing obligation;

(f) The false representation that information concerning a debtor's failure or alleged failure to pay a consumer debt has been or is about to be referred to a consumer reporting agency;

(g) The false representation that a debt collector is a consumer reporting agency;

(h) The false representation that collection letters, notices or other printed forms are being sent by or on behalf of a claim, credit, audit or legal department;

(i) The false representation of the true nature of the business or services being rendered by the debt collector;

(j) The false representation that a legal proceeding has been, is about to be, or will be instituted unless payment of a consumer debt is made;

(k) The false representation that a consumer debt has been, is about to be, or will be sold, assigned, or referred to a debt collector for collection; or

(l) Any communication by a licensed collection agency to a debtor demanding money unless the claim is actually assigned to the collection agency.

1788.14. No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:

(a) Obtaining an affirmation from a debtor who has been adjudicated a bankrupt, of a consumer debt which has been discharged in such bankruptcy, without clearly and conspicuously disclosing to the debtor, in writing, at the time such affirmation is sought, the fact that the debtor is not legally obligated to make such affirmation;

| EXHIBIT | PAGE | OF |
|---------|------|----|
| C Exhibit 16 | | 25 |

Page 66

Certified Mail No.: 700  710 0004 0413 0978

(b) Collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law; or

(c) Initiating communications, other than statements of account, with the debtor with regard to the consumer debt, when the debt collector has been previously notified in writing by the debtor's attorney that the debtor is represented by such attorney with respect to the consumer debt and such notice includes the attorney's name and address and a request by such attorney that all communications regarding the consumer debt be addressed to such attorney, unless the attorney fails to answer correspondence, return telephone calls, or discuss the obligation in question. This subdivision shall not apply where prior approval has been obtained from the debtor's attorney, or where the communication is a response in the ordinary course of business to a debtor's inquiry.

1788.15.   (a) No debt collector shall collect or attempt to collect a consumer debt by means of judicial proceedings when the debt collector knows that service of process, where essential to jurisdiction over the debtor or his property, has not been legally effected.

(b) No debt collector shall collect or attempt to collect a consumer debt, other than one reduced to judgment, by means of judicial proceedings in a county other than the county in which the debtor has incurred the consumer debt or the county in which the debtor resides at the time such proceedings are instituted, or resided at the time the debt was incurred.

1788.16.   It is unlawful, with respect to attempted collection of a consumer debt, for a debt collector, creditor, or an attorney, to send a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued, or approved by a governmental agency or attorney when it is not.  Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500) or by both.

1788.17.   Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code.  However, subsection (11) of Section 1692e and Section 1692g shall not apply to any person specified in paragraphs (A) and (B) of subsection (6) of Section 1692a of Title 15 of the United States Code or that person's principal.  The references to federal codes in this section refer to those codes as they read January 1, 2001.

1788.18.   (a) Upon receipt from a debtor of all of the following, a debt collector shall cease collection activities until completion of the review provided in subdivision (d):

(1) A copy of a police report filed by the debtor alleging that the debtor is the victim of an identity theft crime, including, but not limited to, a violation of Section 530.5 of the Penal Code, for the specific debt being collected by the debt collector.

(2) The debtor's written statement that the debtor claims to be



EXHIBIT PAGE OF
Exhibit A
Page 67 25

Certified Mail No.: 7007 0710 0004 0413 0978

the victim of identity theft with respect to the specific debt being collected by the debt collector.

(b) The written statement described in paragraph (2) of subdivision (a) shall consist of any of the following:

(1) A Federal Trade Commission's Affidavit of Identity Theft.

(2) A written statement containing the content of the Identity Theft Victim's Fraudulent Account Information Request offered to the public by the California Office of Privacy Protection.

(3) A written statement that certifies that the representations are true, correct, and contain no material omissions of fact to the best knowledge and belief of the person submitting the certification.

A person submitting the certification who declares as true any material matter pursuant to this subdivision that he or she knows to be false is guilty of a misdemeanor. The statement shall contain or be accompanied by, the following, to the extent that an item listed below is relevant to the debtor's allegation of identity theft with respect to the debt in question:

(A) A statement that the debtor is a victim of identity theft.

(B) A copy of the debtor's driver's license or identification card, as issued by the state.

(C) Any other identification document that supports the statement of identity theft.

(D) Specific facts supporting the claim of identity theft, if available.

(E) Any explanation showing that the debtor did not incur the debt.

(F) Any available correspondence disputing the debt after transaction information has been provided to the debtor.

(G) Documentation of the residence of the debtor at the time of the alleged debt. This may include copies of bills and statements, such as utility bills, tax statements, or other statements from businesses sent to the debtor, showing that the debtor lived at another residence at the time the debt was incurred.

(H) A telephone number for contacting the debtor concerning any additional information or questions, or direction that further communications to the debtor be in writing only, with the mailing address specified in the statement.

(I) To the extent the debtor has information concerning who may have incurred the debt, the identification of any person whom the debtor believes is responsible.

(J) An express statement that the debtor did not authorize the use of the debtor's name or personal information for incurring the debt.

(K) The certification required pursuant to this paragraph shall be sufficient if it is in substantially the following form:

"I certify the representations made are true, correct, and contain no

material omissions of fact.                                        "

_____         _____
     (Date and Place)                            (Signature)

(c) If a debtor notifies a debt collector orally that he or she is a victim of identity theft, the debt collector shall notify the consumer, orally or in writing, that the debtor's claim must be in writing. If a debtor notifies a debt collector in writing that he or she is a victim of identity theft, but omits information required pursuant to subdivision (a) or, if applicable, the certification required pursuant to paragraph (3) of subdivision (b), if the debt


EXHIBIT PAGE OF
C  Page 68  18  25

Certified Mail No.: 7000 0710 0004 0413 0978

collector does not cease collection activities, the debt collector
shall provide written notice to the debtor as to the additional
information that is required, or the certification required pursuant
to paragraph (3) of subdivision (b), as applicable or send the debtor
a copy of the Federal Trade Commission's Affidavit of Identity Theft
form.

(d) Upon receipt of the complete statement and information
described in subdivision (a), the debt collector shall review and
consider all of the information provided by the debtor and other
information available to the debt collector in its file or from the
creditor. The debt collector may recommence debt collection
activities only upon making a good faith determination that the
information does not establish that the debtor is not responsible for
the specific debt in question. The debt collector's determination
shall be made in a manner consistent with the provisions of 15 U.S.C.
Sec. 1692f(1), as incorporated by Section 1788.17. The debt
collector shall notify the consumer in writing of that determination
and the basis for that determination before proceeding with any
further collection activities. The debt collector's determination
shall be based on all of the information provided by the debtor and
other information available to the debt collector in its file or from
the creditor.

(e) No inference or presumption that the debt is valid or invalid,
or that the debtor is liable or not liable for the debt, shall arise
if the debt collector decides after the review described in
subdivision (d) to cease or recommence the debt collection
activities. The exercise or nonexercise of rights under this section
is not a waiver of any other right or defense of the debtor or debt
collector.

(f) The statement and supporting documents that comply with
subdivision (a) may also satisfy, to the extent those documents meet
the requirements of, the notice requirement of paragraph (5) of
subdivision (c) of Section 1798.93.

(g) A debt collector who ceases collection activities under this
section and does not recommence those collection activities, shall do
all of the following:

(1) If the debt collector has furnished adverse information to a
consumer credit reporting agency, notify the agency to delete that
information.

(2) Notify the creditor that debt collection activities have been
terminated based upon the debtor's claim of identity theft.

(h) A debt collector who has possession of documents that the
debtor is entitled to request from a creditor pursuant to Section
530.8 of the Penal Code is authorized to provide those documents to
the debtor.

## CIVIL CODE
## SECTION 1788.20-1788.22

1788.20. In connection with any request or application for consumer
credit, no person shall:

(a) Request or apply for such credit at a time when such person
knows there is no reasonable probability of such person's being able,
or such person then lacks the intention, to pay the obligation
created thereby in accordance with the terms and conditions of the
credit extension; or

(b) Knowingly submit false or inaccurate information or willfully
conceal adverse information bearing upon such person's credit
worthiness, credit standing, or credit capacity.



EXHIBIT    EXHIBIT    OF
C    Page    19    25

Certified Mail No.: 700⬤710 0004 0413 0978

1788.21. (a) In connection with any consumer credit existing or requested to be extended to a person, such person shall within a reasonable time notify the creditor or prospective creditor of any change in such person's name, address, or employment.

(b) Each responsibility set forth in subdivision (a) shall apply only if and after the creditor clearly and conspicuously in writing discloses such responsibility to such person.

1788.22. (a) In connection with any consumer credit extended to a person under an account:

(1) No such person shall attempt to consummate any consumer credit transaction thereunder knowing that credit privileges under the account have been terminated or suspended.

(2) Each such person shall notify the creditor by telephone, telegraph, letter, or any other reasonable means that an unauthorized use of the account has occurred or may occur as the result of loss or theft of a credit card, or other instrument identifying the account, within a reasonable time after such person's discovery thereof, and shall reasonably assist the creditor in determining the facts and circumstances relating to any unauthorized use of the account.

(b) Each responsibility set forth in subdivision (a) shall apply only if and after the creditor clearly and conspicuously in writing discloses such responsibility to such person.

## CIVIL CODE
## SECTION 1788.30-1788.33

1788.30. (a) Any debt collector who violates this title with respect to any debtor shall be liable to that debtor only in an individual action, and his liability therein to that debtor shall be in an amount equal to the sum of any actual damages sustained by the debtor as a result of the violation.

(b) Any debt collector who willfully and knowingly violates this title with respect to any debtor shall, in addition to actual damages sustained by the debtor as a result of the violation, also be liable to the debtor only in an individual action, and his additional liability therein to that debtor shall be for a penalty in such amount as the court may allow, which shall not be less than one hundred dollars ($100) nor greater than one thousand dollars ($1,000).

(c) In the case of any action to enforce any liability under this title, the prevailing party shall be entitled to costs of the action. Reasonable attorney's fees, which shall be based on time necessarily expended to enforce the liability, shall be awarded to a prevailing debtor; reasonable attorney's fees may be awarded to a prevailing creditor upon a finding by the court that the debtor's prosecution or defense of the action was not in good faith.

(d) A debt collector shall have no civil liability under this title if, within 15 days either after discovering a violation which is able to be cured, or after the receipt of a written notice of such violation, the debt collector notifies the debtor of the violation, and makes whatever adjustments or corrections are necessary to cure the violation with respect to the debtor.

(e) A debt collector shall have no civil liability to which such debt collector might otherwise be subject for a violation of this title, if the debt collector shows by a preponderance of evidence



EXHIBIT | PAGE | OF
Exhibit A
C | 0025
Page 0025

Certified Mail No.: 70  0710 0004 0413 0978

that the violation was not intentional and resulted notwithstanding
the maintenance of procedures reasonably adapted to avoid any such
violation.

(f) Any action under this section may be brought in any
appropriate court of competent jurisdiction in an individual capacity
only, within one year from the date of the occurrence of the
violation.

(g) Any intentional violation of the provisions of this title by
the debtor may be raised as a defense by the debt collector, if such
violation is pertinent or relevant to any claim or action brought
against the debt collector by or on behalf of the debtor.

1788.31.  If any provision of this title, or the application thereof
to any person or circumstances, is held invalid, the remaining
provisions of this title, or the application of such provisions to
other persons or circumstances, shall not be affected thereby.

1788.32.  The remedies provided herein are intended to be cumulative
and are in addition to any other procedures, rights, or remedies
under any other provision of law. The enactment of this title shall
not supersede existing administrative regulations of the Director of
Consumer Affairs except to the extent that those regulations are
inconsistent with the provisions of this title.

1788.33.  Any waiver of the provisions of this title is contrary to
public policy, and is void and unenforceable.

P.C. 118. (a) Every person who, having taken an oath that he or she will testify,
declare, depose, or certify truly before any competent
tribunal, officer, or person, in any of the cases in which the oath
may by law of the State of California be administered, willfully and
contrary to the oath, states as true any material matter which he or
she knows to be false, and every person who testifies, declares,
deposes, or certifies under penalty of perjury in any of the cases in
which the testimony, declarations, depositions, or certification is
permitted by law of the State of California under penalty of perjury
and willfully states as true any material matter which he or she
knows to be false, is guilty of perjury.

This subdivision is applicable whether the statement, or the
testimony, declaration, deposition, or certification is made or
subscribed within or without the State of California.

(b) No person shall be convicted of perjury where proof of falsity
rests solely upon contradiction by testimony of a single person
other than the defendant. Proof of falsity may be established by
direct or indirect evidence.

18 U.S.C. Sec. 1621. Perjury generally
    Whoever -

(1) having taken an oath before a competent tribunal, officer,
or person, in any case in which a law of the United States
authorizes an oath to be administered, that he will testify,
declare, depose, or certify truly, or that any written testimony,



| EXHIBIT | PAGE | OF |
|---------|------|-----|
| C | 21 | 25 |

Exhibit A
Page 71

Certified Mail No.: 70  0710 0004 0413 0978

declaration, deposition, or certificate by him subscribed, is
true, willfully and contrary to such oath states or subscribes
any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement
under penalty of perjury as permitted under section 1746 of title
28, United States Code, willfully subscribes as true any material
matter which he does not believe to be true;
is guilty of perjury and shall, except as otherwise expressly
provided by law, be fined under this title or imprisoned not more
than five years, or both. This section is applicable whether the
statement or subscription is made within or without the United
States.

### AMENDMENTS

1994 - Pub. L. 103-322 substituted "fined under this title" for
"fined not more than $2,000" in concluding provisions.

1976 - Pub. L. 94-550 divided existing provisions into a single
introductory word "Whoever", par. (1), and closing provisions
following par. (2), and added par. (2).

1964 - Pub. L. 88-619 inserted at end "This section is applicable
whether the statement or subscription is made within or without the
United States."

*Last modified: April 12, 2006*

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| C | 22 | 25 |

**Exhibit A**
**Page 72**

Certified Mail No.: 7007 0710 0004 0413 0978

## PROOF OF SERVICE AND ACKNOWLEDGMENT OF RECEIPT BY MAIL

State:   California         )
County:  Orange         ) Affirmed and Attested

I, James Owen Golden  am over the age of 18 and not a party to the within action and live in Orange County California. My address is C/o 9049 Garfield Ave. #137, Fountain Valley, California 92708. On, February 21st, 2008 A.D.. I did send by Certified Mail No.: 7007 0710 0004 0413 0978  return receipt requested.

And did mail the document(s) described as;

1.  NOTICE OF SECOND REQUEST FOR VALIDATION AND INFORMATION TO VALIDATE ALLEGED DEBT AND NOTICE OF FAULT TEN (10) DAY RIGHT TO CURE ON REQUEST TO VALIDATE ALLEGED DEBT.
    Certified Mail No.: 7007 0710 0004 0413 0978

2.  Exhibit A, DEBT VALIDATION CERTIFICATE.
3.  Exhibit B, CALIFORNIA CONSTITUTION ARTICLE 15 USURY
4.  Exhibit C, FAIR DEBT COLLECTION PRACTICES ACT
5.  Exhibit D, Copy of Notice of Default

And by placing a true copy thereof enclosed in a sealed envelope, fully prepaid, addressed as follows:

**Golden West Savings Association Service**
**Post Office Box 34957**
**San Antonio, Texas 78265-4957**

And by placing in the mail at the location of United States Post Office And by placing in the mail at the location of United States Post Office

IDA JEAN HAXTON STATION. HUNTINGTON BEACH. CALIFORNIA 92615.

I attest and affirm that I did mail the above on the date of February 21st, 2008 A.D.

_____
Signature

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| C | 23 | 25 |

Exhibit A
Page 73



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

| | | |
|---|---|---|
| Postage | $ | |
| Certified Fee | | |
| Return Receipt Fee (Endorsement Required) | | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

Sent To: Golden West Savings Association Service
Street, Apt. No.; or PO Box No. P.O. Box 34957
City, State, ZIP+4 San Antonio, Texas 78265-4957

PS Form 3800, August 2006     See Reverse for Instructions

7007 0710 0004 0413 0978



| EXHIBIT | PAGE | OF |
|---|---|---|
| C | 24 | 25 |

**Exhibit A**
**Page 74**



**UNITED STATES POSTAL SERVICE®**

Home | Help | Sign In

Track & Confirm        FAQs

## Track & Confirm

### Search Results

Label/Receipt Number: 7007 0710 0004 0413 0978
Status: Acceptance

Your item was accepted at 3:02 PM on February 21, 2008 in HUNTINGTON BEACH, CA 92615. Information, if available, is updated every evening. Please check again later.

Track & Confirm

Enter Label/Receipt Number.

`Go >`

Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.   `Go >`

---

Site Map    Contact Us    Forms    Gov't Services    Jobs    Privacy Policy    Terms of Use    National & Premier Accounts

Copyright© 1999-2007 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA

| EXHIBIT | PAGE | OF |
|---------|------|----|
| C | 25 | 25 |

2 22 2008

Exhibit A
Page 75

EXHIBIT – D
(Loan Servicer Agreement)

### §1.43    R. Loan Servicing

"Loan servicing" is the administration of a loan after it has been funded. Loan servicing functions include keeping track of loan payments, assuring that real property taxes and hazard insurance premiums are paid, confirming compliance with operating covenants, and handling loan default situations. In the recent past, commercial loans were typically kept in the portfolio of the originating lender, who customarily serviced its own loan. Today, the loan servicing function is often divorced from the loan holder and is performed by a separate or related entity known as a "loan servicer." The loan holder sacrifices a fraction of an interest point for the convenience of simply depositing the loan payments collected by the loan servicer. In conduit financing (see §1.33), loan servicing is never handled by the holders of interests in the mortgage pool, and the originating lender frequently retains the right to service the loan.

### §1.43A    S. Loan-to-Cost Ratio

"Loan-to-cost" is the ratio of the maximum amount the lender is willing to loan to the total construction costs, stated as a percentage. See §9.4.

EXHIBIT – E
(Eligible Securities)

§ 33560

LICENSEES
Tit. 5

Library References

Banks and Banking ☞503.
WESTLAW Topic No. 52.
C.J.S. Banks and Banking §§ 674–676, 679.

## Article 3

## ELIGIBLE SECURITIES

Section
33560.  Definitions.
33561.  Ownership.
33562.  Declaration of ineligibility; insufficient liquidity or quality.
33563.  Declaration of eligibility; sufficient liquidity and quality.
33564.  Securities rating service; declaration of eligibility.
33565.  Ratings of classes of securities; declaration of eligibility.
33566.  Repealed.
33567.  Minimum amounts owned.
33568.  Aggregate value of eligible securities owned; computation; exclusion.
33569.  Aggregate value of foreign currency eligible securities owned; computation; exclusion.
33570.  Travelers checks; licensees; aggregate value of eligible securities owned.

*Article 3 was added by Stats.1978, c. 1347, p. 4436, § 7.*

### § 33560.  Definitions

In this article:

(a) "Eligible security" means any United States currency eligible security or foreign currency eligible security.

(b) "Eligible securities rating service" means any securities rating service which the commissioner has by regulation or order declared to be an eligible securities rating service pursuant to Section 33564.

(c) "Eligible rating," when used with respect to any security or class of securities and any eligible securities rating service, means any rating assigned to such security or class of securities by such eligible securities rating service which the commissioner has by regulation or order declared to be an eligible rating pursuant to Section 33565.

(d) "Foreign currency eligible security" means any of the following which is, or is denominated in, a foreign currency and which the commissioner has not by regulation or order declared to be ineligible pursuant to Section 33562:

(1) Any of the following which is of comparable quality to the United States currency eligible securities specified in paragraphs (1) to (7), inclusive, of subdivision (f):

(A) Cash.

(B) Any deposit in an office of a bank located in a foreign country.

(C) Any bond, note, or other obligation.

(2) Any other security or class of securities which the commissioner has by regulation or order declared to be eligible securities pursuant to Section 33563.

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| **E** | Exhibit A | **2** |
| | Page 81 | |

CONSUMER LOANS                                          § 22341
Ch. 2

(D) The offer and sale of the securities is qualified under the Corporate Securities Law of 1968 (Division 1 (commencing with Section 25000) of Title 4 of the Corporations Code) or is registered under federal securities laws, or is exempt from qualification or registration.

(c) In the absence of agreement to the contrary by the licensee and the institutional investor, all payments received from the collection of payments shall be deposited and maintained in a trust account, and shall be disbursed from the trust account only in accordance with the instructions of the owner of the promissory note.

(Added by Stats.1994, c. 1115 (A.B.2885), § 2, operative July 1, 1995. Amended by Stats.1995, c. 271 (A.B.1293), § 1; Stats.1996, c. 672 (A.B.3115), § 1.)

Historical and Statutory Notes

Derivation: Former § 22476, added by Stats. 1985, c. 187, § 1, amended by Stats.1987, c. 37, § 3.

Former § 24476, added by Stats.1985, c. 187, § 2, amended by Stats.1986, c. 1229, § 7; Stats. 1987, c. 37, § 5.

§ 22340.1.  Promissory notes for repayment of federally related mortgage loans; sales by finance lenders

(a) A licensee that is a finance lender may sell to (1) an institutional lender, or (2) an institutional investor described in paragraph (6) of subdivision (b) of Section 22340, promissory notes evidencing the obligation to repay federally related mortgage loans, as defined in Section 3500.2 of Title 24 of the Code of Federal Regulations, purchased from and made by an institutional lender, and may make agreements for the collection of payments and performance of services with respect to those notes.  For purposes of this section, "institutional lender" means any bank, trust company, savings bank or savings and loan association, credit union, industrial loan company or residential mortgage lender doing business under the authority of and in accordance with a license, certificate or charter issued by the United States or this state.

(b) In the absence of agreement to the contrary by the licensee and the institutional investor or institutional lender, all payments received from the collection of payments shall be deposited and maintained in a trust account, and shall be disbursed from the trust account only in accordance with the instructions of the owner of the promissory note.

(Added by Stats.1996, c. 672 (A.B.3115), § 2. Amended by Stats.1998, c. 428 (A.B. 2428), § 2.)

§ 22341.  Retail installment contracts held by licensee; refinancing loans; required conditions; venue for actions on loans

(a) No licensee may make a loan to refinance a retail installment contract subject to Chapter 1 (commencing with Section 1801) of Title 2 of Part 4 of Division 3 of the Civil Code, that is held by the licensee, its subsidiaries, or affiliates, unless all of the following conditions are met:

(1) The buyer has been making installment payments required by the retail installment contract for a period of not less than 90 days.  The retail install-

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| E | Exhibit A Page 82 | 2 |

EXHIBIT F

**EXHIBIT – F**
(Eligibility for Discount of Mortgage Company Notes)

[Code of Federal Regulations]
[Title 12, Volume 2]
[Revised as of January 1, 2007]
From the U.S. Government Printing Office via GPO Access
[CITE: 12CFR201.109]

TITLE 12--BANKS AND BANKING

CHAPTER II--FEDERAL RESERVE SYSTEM

PART 201-EXTENSIONS OF CREDIT BY FEDERAL RESERVE BANKS
(REGULATION A)--Table

Sec. 201.109 Eligibility for discount of mortgage company notes.

(a) The question has arisen whether notes issued by mortgage banking companies to finance their acquisition and temporary holding of real estate mortgages are eligible for discount by Reserve Banks.

(b) Under section 13 of the Federal Reserve Act the Board has authority to define what are "agricultural, industrial, or commercial purposes", which is the statutory criterion for determining the eligibility of notes and drafts for discount. However, such definition may not include paper "covering merely investments or issued or drawn for the purpose of carrying or trading in stocks, bonds, or other investment securities".

(c) The legislative history of section 13 suggests that Congress intended to make eligible for discount "any paper drawn for a legitimate business purpose of any kind" \4\ and that the Board, in determining what paper is eligible, should place a "broad and adaptable construction" \5\ upon the terms in section 13. It may also be noted that Congress apparently considered paper issued to carry investment securities as paper issued for a "commercial purpose", since it specifically prohibited the Board from making such paper eligible for discount. If "commercial" is broad enough to encompass investment banking, it would also seem to include mortgage banking.

------------------------------------------------

\4\ House Report No. 69, 63d Cong., p. 48.
\5\ 50 Cong. Rec. 4675 (1913) (remarks of Rep. Phelan).

------------------------------------------------

(d) In providing for the discount of commercial paper by Reserve Banks, Congress obviously intended to facilitate the current financing

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| F | Exhibit A Page 85 | |

1.

of agriculture, industry, and commerce, as opposed to long-term investment. In the main, trading in stocks and bonds is investment-oriented; most securities transactions do not directly affect the production or distribution of goods and services.

Mortgage banking, on the other hand, is essential to the construction industry and thus more closely related to industry and commerce.

Although investment bankers also perform similar functions with respect to newly issued securities, Congress saw fit to deny eligibility to all paper issued to finance the carrying of securities. Congress did not distinguish between newly issued and outstanding securities, perhaps covering the larger area in order to make certain that the area of principal concern (i.e., trading in outstanding stocks and bonds) was fully included. Speculation was also a major Congressional concern, but speculation is not a material element in mortgage banking operations.

<u>Mortgage loans would not therefore seem to be within the purpose underlying the exclusions from eligibility in section 13.</u>

(e) Section 201.3(a) provides that a negotiable note maturing in 90 days or less is not eligible for discount if the proceeds are used "for permanent or fixed investments of any kind, such as land, buildings or machinery, or for any other fixed capital purpose".

However, the proceeds of a mortgage company's commercial paper are not used by it for any permanent or fixed capital purpose, but only to carry temporarily an inventory of mortgage loans pending their "packaging" for sale to permanent investors that are usually recurrent customers.

(f) *In view of the foregoing considerations the Board concluded that notes issued to finance such temporary "warehousing" of real estate mortgage loans are notes issued for an industrial or commercial purpose, that such mortgage loans <u>do not</u> constitute "<u>investment securities</u>"*, as that term is used in section 13, and that the <u>temporary holding of such mortgages</u> in these circumstances <u>is not</u> a permanent investment by the mortgage banking company.

Accordingly, the Board held that notes having not more than 90 days to run which are issued to finance the temporary holding of mortgage loans are eligible for discount by Reserve Banks.

[35 FR 527, Jan. 15, 1970, as amended at 58 FR 68515, Dec. 28, 1993]

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| F | 2 | 2 |

Exhibit A
Page 86

2.

G

EXHIBIT – G
(Law of Fraudulent Transactions)

Exhibit A
Page 88

# THE LAW OF
# FRAUDULENT
# TRANSACTIONS

### PETER A. ALCES

*Professor of Law and John S. Stone Faculty Fellow*
*University of Alabama School of Law*



WARREN, GORHAM & LAMONT
Boston • New York

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| G | 1 | 3 |

Exhibit A
Page 89

CHAPTER 5

# Fraudulent Dispositions

¶ 5.01  Sources of Fraudulent Disposition Law ........................ 5-2
    [1] Transactional Contexts .................................... 5-4
        [a] Sales .......................................... 5-5
        [b] Gifts and Intrafamilial Transfers ..................... 5-6
        [c] Assumption of Obligations ........................ 5-7
        [d] Grants of Collateral Interests ....................... 5-11
        [e] Foreclosure of Collateral Interests ................... 5-11
    [2] Sources of Law in Historical Context ...................... 5-11
        [a] Statute of 13 Elizabeth ........................... 5-12
        [b] Uniform Fraudulent Conveyance Act ................ 5-13
        [c] Bankruptcy Code Section 548 ...................... 5-14
        [d] Uniform Fraudulent Transfer Act ................... 5-16
    [3] Validity of Disposition Between Immediate Parties .......... 5-17
    [4] Relationship With Other Bodies of Law .................... 5-18
        [a] Remedies ...................................... 5-19
        [b] UCC and "Supplementary" Law .................... 5-20
        [c] Generic Fraud and Misrepresentation ................ 5-20
        [d] Preferences .................................... 5-28
        [e] Parallel Corporate Law ........................... 5-32
¶ 5.02  Constructively Fraudulent Dispositions ...................... 5-32
    [1] Statute of 13 Elizabeth ................................ 5-33
        [a] *Twyne's Case* and the Badges of Fraud .............. 5-34
        [b] Relationship to Intentional Fraud ................... 5-37
        [c] General Gift .................................... 5-40
        [d] "Cover of Fraud" ................................ 5-43
        [e] Disposition "Pending the Writ" ..................... 5-44
        [f] Protestations of Good Faith ........................ 5-45
    [2] Uniform Fraudulent Conveyance Act ..................... 5-47
        [a] Financial Condition of Grantor ..................... 5-58
        [b] Fair Consideration .............................. 5-68
        [c] Partnership Transactions .......................... 5-69
    [3] Bankruptcy Code Section 548 and the UFTA ............... 5-74
        [a] Financial Condition of Transferor ................... 5-77
        [b] Value Received by Transferor ....................... 5-80
        [c] Partnership Transactions .......................... 5-81
    [4] Application to Particular Transactional Contexts ............ 5-81
        [a] Leveraged Buyouts .............................. 5-88
        [b] Intercorporate Guaranties ......................... 5-99
        [c] Foreclosure of Collateral Interests

| EXHIBIT | PAGE | OF |
|---|---|---|
| G | 2 | 3 |

Exhibit A
Page 90

§ 5.03  Intentionally Fraudulent Dispositions .......................... 5-106
        [1] Intent and the Badges of Fraud ........................... 5-107
        [2] The Actual Intent Cause of Action ........................ 5-107
        [3] Objectification of Fraudulent Disposition Law ............. 5-111
                                                                        5-112
§ 5.04  Creditors' Standing .......................................... 5-112
        [1] Uniform Fraudulent Conveyance Act ........................ 5-112
            [a] UFCA § 4: "Conveyances by Insolvent" ................. 5-114
            [b] UFCA § 5: "Conveyances by Person in Business" ........
            [c] UFCA § 6: "Conveyance by a Person About to Incur
                Debts" .............................................. 5-114
            [d] UFCA § 7: "Conveyance Made With Intent to Defraud" ... 5-115
        [2] Uniform Fraudulent Transfer Act .......................... 5-115
        [3] Available Remedies and the Maturity of Claims ............ 5-116
                                                                        5-118
§ 5.05  Savings Provisions ........................................... 5-119
        [1] Nonuniform Savings Provision ............................. 5-121
        [2] Savings Clause in the UFCA ............................... 5-121
            [a] Fair Consideration .................................. 5-123
            [b] Without Knowledge ................................... 5-124
            [c] Extent of Recovery .................................. 5-127
        [3] Bankruptcy Code and the UFTA ............................. 5-127
            [a] Comparison of Section 548(c) and UFTA Section 8(d) ... 5-127
            [b] Comparison of Sections 550(a) and 550(b) With UFTA
                Section 8(b) ......................................... 5-128
            [c] Comparison of Section 550(d) and UFTA Section 8(c) ... 5-130

## § 5.01  SOURCES OF FRAUDULENT DISPOSITION LAW

The law of fraudulent conveyances, or fraudulent transfers, has become a preoccupation of the commercial community in recent years. Conceptions of the province of fraudulent disposition law have been adjusted as practitioners and academicians have brought attention to the potential applications of the Uniform Fraudulent Conveyance Act (UFCA),[1] Uniform Fraudulent Transfer Act (UFTA),[2] Bankruptcy Code,[3] and apposite nonuniform state laws. Debate continues over whether courts have applied fraudulent disposition law beyond the bounds originally intended.[4] It is appropriate to question whether the intent of those who first conceived these laws matters at all. The fundamental principles of fraudulent disposition

[1] Unif. Fraudulent Conveyance Act. 7A ULA 427 (1985) (hereinafter UFCA).

[2] Unif. Fraudulent Transfer Act. 7A ULA 639 (1985) (hereinafter UFTA).

[3] Bankruptcy Code. 11 USC §§ 1-151326 (1982 & Supp. V 1987) (hereinafter Bankruptcy Code).

[4] See infra § 5.02[4], concerning the contours of the debate on the proper scope of fraudulent disposition law in three particularly important contexts: LBOs (§ 5.02[4][a]), intercorporate guaranties (§ 5.02[4][b]), and foreclosures of collateral interests (§ 5.02[4][c]).

EXHIBIT PAGE OF
G   Page 2   3

EXHIBIT – H
(Case Law)

**886** Ohio    240 NORTH EASTERN REPORTER, 2d SERIES

[5] In Kutsche v. Ford, 222 Mich. 442, at page 450, 192 N.W. 714, at page 717, the court, said:

"* * * To place *in statu quo* does not mean that one shall profit out of the mistake of another. * * *"

To this statement may be added the observation made by the court in Rushlight Automatic Sprinkler Co. v. City of Portland, 189 Or. 194, at 245, 219 P.2d 732, at 753:

"* * * To be denied the privilege of taking advantage of another's mistake is not to suffer damage. * * *"

[6, 7] Of the multitude of cases involving this proposition of law, we wish to cite the following:

Union Free School Dist. No. 1 v. Gumbs, 20 Misc.2d 315, 191 N.Y.S.2d 183; Kemp v. United States, 38 F.Supp. 568; 70 A.L.R. 2d 1375; Bd. of Edn. of Floyd County v. Hooper (Ky. Court of Appeals), 350 S.W.2d 629.

The action taken by the trial court was not erroneous. Therefore, the judgment of that court is affirmed.

Judgment affirmed.

CARLISLE, P. J., and ABELE, J., concur.



16 Ohio App.2d 1

AMERICAN PLAN CORP., Appellee,

v.

WOODS, Appellant.

Court of Appeals of Ohio,
Franklin County.

Oct. 1, 1968.

Action by transferee to recover from maker of note. The Common Pleas Court

reversed the Municipal Court's finding in favor of maker and maker appealed. The Court of Appeals for Franklin County, Duffey, P. J., held that where maker of note was told that she was not obligated to buy water softener, that machine was being given to her for "advertising" and would be paid for by credits based on sales to others, there was fraud in factum and defense of fraud was assertable against holder in due course.

Reversed.

**1. Bills and Notes ⟨⇐⟩370**

Fraud affecting value of consideration paid is fraud in inducement and is personal defense which may not be asserted against holder in due course. R.C. §§ 1303.31, 1303.34.

**2. Bills and Notes ⟨⇐⟩373**

Material misrepresentation affecting nature of instrument signed is fraud in factum and is real defense which may be asserted against holder in due course. R.C. §§ 1303.31, 1303.34.

**3. Bills and Notes ⟨⇐⟩373**

Where maker of note was told that she was not obligated to buy water softener, that machine was being given to her for "advertising" and would be paid for by credits based on sales to others, there was fraud in factum and defense of fraud was assertable against holder in due course. R.C. §§ 1303.31, 1303.34.

**4. Bills and Notes ⟨⇐⟩343**

Transferee of negotiable note did not take in good faith and was not "holder in due course" of note given in sale of consumer goods where transferee was finance company involved with seller of goods and had pervasive knowledge of factors relating to terms of sale. R.C. §§ 1303.31, 1303.34.

See publication Words and Phrases for other judicial constructions and definitions.



| EXHIBIT | PAGE | OF |
|---|---|---|
| H  Exhibit A | | 4 |

Page 94

AMERICAN PLAN CORP. v. WOODS    Ohio **887**

Cite as 240 N.E.2d 886

*Syllabus by the Court*

1. Material misrepresentation affecting the nature of an instrument is a real defense which may be asserted against a holder in due course. Where the maker of a note was told that she was not obligated to buy a water softener, and that the machine was being given to her for "advertising" and would be paid for by credits based on sales to others, the fraud was fraud in the factum and a defense assertable against a holder in due course.

2. A transferee of a negotiable note does not take in "good faith" and is not a holder in due course of a note given in the sale of consumer goods where the transferee is a finance company involved with the seller of the goods, and which has a pervasive knowledge of factors relating to the terms of the sale.

———

Robins & Preston and Thomas J. Moyer, Columbus, for appellee.

L. P. Henderson, Columbus, for appellant.

DUFFEY, Presiding Judge.

This is an appeal on questions of law from a decision of the Common Pleas Court of Franklin County reversing a decision of the Franklin County Municipal Court. Plaintiff, appellee herein, American Plan Corporation, is the transferee of a cognovit note and security agreement originally payable to Crystal Clear, Inc. The defendant, appellant herein, Georgia Woods, is the maker of the note. Crystal Clear, Inc., is a vendor of water softener equipment. The Municipal Court found that appellee was not a holder in due course and that appellant had a complete defense. The Common Pleas Court reversed, determining that appellee was a holder in due course and appellant had no applicable defense.

In 1962, Crystal Clear, Inc., approached American Plan Corporation and offered to sell it notes which Crystal Clear, Inc., ex-

pected to receive from purchasers of water softeners. American Plan Corporation investigated Crystal Clear, Inc., and approved the arrangment. It supplied Crystal Clear, Inc., with notes and other forms. It established a "carrying" charge of $215 for each note—the amount to be charged to a purchaser as the cost of financing payments by installments. American Plan Corporation reserved the right to refuse any note it felt was risky, and it investigated the credit of each purchaser whose note was offered to it. American Plan Corporation bought the notes for the principal amount stated, i. e., the amount of the purchase price for the water softener.

With respect to the appellant's case, the trial judge found:

"On February 21, 1963, defendant Woods, a respectable-appearing negro woman but clearly one with little if any business experience or knowledge, was approached at her home during the hours of 8:00 and 10:00 p. m. by a representative of Crystal Clear. The next day was a holiday. In those two hours there apparently followed what is commonly called the 'hard sell.' * * *

"Woods * * * signed Exhibits 1, 2 and 3 * * * all so signed because, as she testified without contradiction, Crystal's representative was in a hurry. With equal lack of contradiction, not even a copy of any of these papers was left with Woods that night. With further equal lack of contradiction, Woods did not know she was signing or intended to sign what is claimed to be a note, cognovit or otherwise; nor to the best of her uncontradicted recollection was the Exhibit 1 'note' paper completely filled in as to the details of amount and method of payment on the right side of the face. * * *

"Five days later, February 22 to February 27, 1963, the Exhibit 1 paper was assigned without recourse to plaintiff by Crystal * * *."

The evidence is that Crystal Clear, Inc., told appellant that she was not obligated in

| EXHIBIT | PAGE | OF |
|---|---|---|
| H | Exhibit A Page 95 | 4 |

852   Wis.        87 NORTH WESTERN REPORTER, 2d SERIES

ment of the policy taken out by Sanvold which covered Sanvold's liability but not that of anybody else. We are cited no authority to the effect that when Zemel purchased the business he automatically acquired any protection from the compensation policy of his predecessor in interest and there is no possibility of creating insurance by estoppel; certainly, the insurance company was not guilty of any act which could be the basis of an estoppel. On the latter point see Maryland Casualty Co. v. Industrial Comm., 230 Wis. 363, 284 N.W. 36.

We conclude that Zemel is liable in compensation for the injuries and death of Reinsel; that Sanvold is not so liable; and that there is no coverage by Sanvold's insurer. It follows that the judgment must be affirmed.

Judgment affirmed.

BROADFOOT, J., took no part.



255 Wis. 81

ENGEL v. VAN DEN BOOGART.

Supreme Court of Wisconsin.
June 7, 1949.

**1. Evidence ⟐434(8)**

Fraud, claimed to have induced execution of contract, may be shown by parol evidence.

**2. Evidence ⟐434(9)**

In broker's action for commission under real estate listing contract which defendant claimed that he was fraudulently induced to sign by plaintiff's false representation that contract would run for only 90 days, parol evidence of such fraud was admissible.

**3. Fraud ⟐20**

To constitute fraud by false representation, party to whom such representation is made must believe it to be true, rely thereon, and be deceived thereby.

**4. Contracts ⟐94(1)**

To constitute fraud by false representation, invalidating contract induced thereby, representation must be of some matter or thing relating to contract, so that it is to advantage of party to whom made, if true, and causes him damage and injury, if false.

**5. Contracts ⟐94(1)**

To constitute fraud by false representation, invalidating contract, circumstances must go beyond merely warranting assumption of fraud from mere obscurity or apparent error.

**6. Fraud ⟐58(1)**

Fraud or false representation may be established by satisfactory proof arising from circumstances, partly from circumstances and partly by direct testimony, or entirely by direct testimony.

**7. Brokers ⟐9**

A statement, directly above tavern owner's signature to contract listing tavern with broker for sale, that contract should remain in force until date, written in longhand, three months after date of contract, and broker's assurance of owner that contract provided for termination thereof at expiration of 90 days, excused owner from complying with terms of contract after such time.

**8. Brokers ⟐88(2)**

An attorney's tender of check to broker for half of first month's rent of tavern, leased by client to another after expiration of period for which client claimed that broker falsely represented that contract listing tavern with him for sale was to run, was not such an unequivocal act as to raise implication of client's ratification of contract, as matter of law, but such question was for jury.

Appeal from a judgment of the Circuit Court for Outagamie County; M. G. Eberlein, Judge.

Affirmed.

Action begun November 29, 1945, by Joseph J. Engel, sole trader doing business as Joseph J. Engel Real Estate Agency, against John Van Den Boogart to recover

fraud. As the New Jersey court said in *Amsterdam:*

"[W]e find no validity in such a distinction. A negotiable instrument which is the product of fraud in the *factum*, unaccompanied by negligence, as distinguished from an instrument which is the product of fraud in the treaty, is void, and not merely voidable. As stated in 17 C.J.S. Contracts § 140, p. 495:

'Where some trick is used to substitute another instrument for the one which it is intended to sign, as where a note is substituted for a receipt, and in like cases, the signature has no legal effect, * * *. Hence there is no agreement' which can give rights to anyone, except where the signer is estopped by negligence or otherwise to set up the truth as against bona fide third persons

* * *.'

"In *McDonald v. Central R. R. Co.*, 89 N.J.L. 251, 254, 98 A. 391, 392 (E. & A. 1916) the court said:

'A misrepresentation of the contents of a document by which one is induced to sign a paper thinking it is other than it really is is the typical case of fraud in the execution; it is a case where the defrauded party may properly say, "I never agreed to that, and hence the document is not my deed." '" 173 A.2d at 221.

[3, 4] Because there was evidence in this case from which a jury could have found appellant not liable on the note, it was error for the court to grant a directed verdict for the bank. In so holding, we are mindful that counsel for the appellant did not argue here—nor in the court below —the issue of fraud on the part of Mr. Estepp. This is not a situation governed by Maryland Rule 1085, under which the scope of our review is limited to questions which "have been tried and decided by the lower court." The motion by the bank for

3. If appellant was a maker, he was necessarily an accommodation maker, since he "sign[ed]" the instrument . . . for the

a directed verdict was made on the ground that Mr. Schaeffer had failed to prove any fraud or misrepresentation on the part of the bank. As we have seen, however, the absence of fraudulent conduct on the part of the payee was not dispositive of the case. It was incumbent on the trial court, in its consideration of the motion for a directed verdict, to consider the sufficiency of all the evidence on the issue of Schaeffer's liability on the note in the light of the pleadings. The defense of fraud in the *factum* was within the ambit of the general issue plea, since that plea properly encompasses any defense other than those which must be specially pleaded under the provisions of a statute or rule. Md. Rule 342; *Herrick v. Swomley*, 56 Md. 439, 456 (1881); 2 Poe: *Pleading and Practice*, §§ 606–608 (6th ed. 1970).

III

Appellant makes several arguments that require consideration, although only minimal, because a new trial must be ordered.

[5] Much is made of the fact that two witnesses, Mr. Buckingham and his predecessor at the bank, Betty R. Coleman, characterized appellant as being an "endorser" of the note. Since the note provided that

"It is agreed by any person, firm or corporation who writes his, her or its name or signature on the face or back of this instrument, that they and each of them shall be regarded as makers as between them and each of them and any holder hereof."

and because § 3-402 of the Commercial Law Article, Annot. Code of Md. (1975) provides that "Unless the instrument clearly indicates that a signature is made in some other capacity it is an indorsement," it is clear that appellant was, if anything, a maker of the note.[3] It seems to us, how-

purpose of lending his name to another party to it." § 3-415(1), Commercial Law Art.

EXHIBIT | PAGE | OF
H | H | H
Exhibit A
Page 97

EXHIBIT – 1
(RESTATEMENT OF THE LAW Second, TRUSTS 2d)

**Exhibit A**
**Page 99**

# RESTATEMENT OF THE LAW

## Second

# TRUSTS 2d

Volume 1

§§ 1-260

As *Adopted* and *Promulgated*

BY THE

AMERICAN LAW INSTITUTE

AT WASHINGTON, D. C.

May 23, 1957

ST. PAUL, MINN.

AMERICAN LAW INSTITUTE PUBLISHERS

1959

| EXHIBIT | PAGE. | OF |
|---------|-------|-----|
| I | 1 | 14 |

Exhibit A

Page 100

§ 59                TRUSTS, SECOND                Ch. 2

As to the validity of a provision in the terms of the trust imposing a restraint on the transfer, voluntary or involuntary, of the interest of a beneficiary, see §§ 152, 153.

d. *Statutory provisions.* In some States it is provided by statute that trusts of interests in land may be created only for certain specified purposes. In these States, if land is conveyed inter vivos or by will in trust for a purpose not specified by the statute, the title to the subject matter of the trust does not vest in the trustee, but usually remains in the settlor or his successors; and the trustee takes powers which he holds in trust, unless the purposes of the trust are illegal. If by the terms of the intended trust the beneficiary is entitled to possession and to the receipt of the rents and profits, the title passes to the beneficiary. See § 68, Comment *e.* A consideration of these statutes is not within the scope of the Restatement of this Subject.

TOPIC 13.  ILLEGALITY

§ 60.    General Rule as to Illegality

An intended trust or a provision in the terms of a trust is invalid if illegal.

Comment:

a. *Kinds of illegality.* An intended trust or a particular provision in the terms of the trust may fail for illegality where (1) the performance of the intended trust or of the provision involves the commission of a criminal or tortious act by the trustee; (2) the enforcement of the intended trust or provision would be against public policy, even though its performance does not involve the commission of a criminal or tortious act by the trustee; (3) the purpose of the settlor in creating the trust is to defraud creditors or other third persons; (4) the consideration for the creation of the trust is illegal.

These four situations are treated in §§ 61–64.

b. *Property illegally acquired by settlor.* If a trust is created for purposes which are not illegal, the mere fact that the trust property was acquired by the transferor in an illegal transaction does not invalidate the trust. Thus, if a person acquires property in an illegal transaction and subsequently transfers the property in trust for himself or for a third person, the trust is

See Appendix for Reporter's Notes, Court Citations, and Cross References

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| I | 2 | 14 |

Exhibit A
Page 101

Ch. 2                    CREATION OF A TRUST                    § 3

enforceable. If the settlor was under a duty to restore the property to the person from whom he illegally obtained it, that person can reach the property in the hands of the trustee, if his interest is not cut off under the rules applicable to bona fide purchasers. *See* § 284.

c. *Cross references.* As to the duty of the trustee with respect to illegal provisions in the terms of the trust, see § 166.

As to the illegality of an intended charitable trust, see §§ 377, 399, 401, Comments he and *ln.*

On the question whether and under what circumstances a resulting trust arises when an intended trust fails for illegality, see §§ 422, 444.

## § 61. Performance Criminal or Portions

An intended trust or a provision in the terms of the trust is invalid if the performance of the trust or of the provision involves the commission of a criminal or tortious act by the trustee.

**Comment:**

a. *Initial illegality.* Where by the terms of the trust the trust estate is to be used for a criminal purpose, the intended trust is invalid. Thus, where several persons who are engaged in a particular business make contributions to a fund to be held in trust for the purpose of securing through bribery legislation favorable to their interests, the intended trust is invalid.

An intended trust is invalid if unreasonably in restraint of trade. Such a trust is unenforceable at common law; and under many State statutes, and also, if interstate commerce is affected, under federal law by virtue of the Sherman Act, criminal and civil penalties are imposed upon persons engaging in combinations in restraint of trade in the form of a trust or otherwise. Thus, where the shareholders of two or more competing corporations transfer their shares to trustees, in trust to hold and vote the shares for the benefit of the shareholders of the competing

*See* Appendix for Reporter's Notes, Court Citations, and Cross References.

3

EXHIBIT | PAGE | OF
I | 3 | 14
Exhibit A
Page 102

§ 4    TRUSTS, SECOND    Ch. 2

corporations, and thus to prevent competition between the corporations, the intended trust is invalid if it is in unreasonable restraint of trade. As to the illegality of bargains in restraint of trade, see Restatement of Contracts, §§ 513-519.

See Appendix for Reporter's Notes, Court Citations, and Cross References.

4

| EXHIBIT | PAGE | OF |
|---------|------|----|
| I | 4 | 14 |

Exhibit A
Page 103

§ 5                    TRUSTS, SECOND                    ch. 2

An intended trust to carry on an unlawful business, such as that of selling intoxicating liquor in violation of law, or an intended trust for the unlicensed practice of medicine, is invalid. Whether the intended trust fails altogether depends upon whether the illegal provision can be separated from the other provisions without defeating the purpose of the settlor in creating the trust. See § 65.

A provision in the terms of the trust by which the trustee is directed to do an act which would be a tort against a third person is invalid. Thus, a direction to operate a soap factory on a certain piece of land is unenforceable if the operation of the factory would be a nuisance to the owners of adjoining lots. See § 166.

b.  *Subsequent illegality.* If the owner of property transfers it in trust and it is provided that the trustee shall do an act which at the time of the creation of the trust is legal, but which owing to a change of law or owing to a change of circumstances becomes illegal, the provision becomes unenforceable. Thus, a direction to the trustee to carry on the business of a whiskey distillery, which is a lawful business at the time of the creation of the trust, becomes unenforceable if subsequently the manufacture and sale of intoxicating liquor is prohibited by law. So also, where a trust is created for the payment of money to a designated person, who thereafter becomes an alien enemy to whom it is illegal to make such payment, the trust so far as such payment is concerned becomes unenforceable. See § 166.

c.  Cross *reference.* As to the failure of an intended charitable trust where the purpose is illegal, see § 377.

## § 62. Enforcement against Public Policy

**A trust or a provision in the terms of a trust is invalid if the enforcement of the trust or provision would be against public policy, even though its performance does not involve the commission of a criminal or tortious act by the trustee.**

See Reporter's Note.

**Comment:**

*a. Applications of the rule.* Although the trustee is not directed by the terms of the trust to do any act which is in

| EXHIBIT | PAGE | OF |
|---------|------|----|
| I | 5 | 14 |

Exhibit A
Page 104

§ 6                     TRUSTS, SECOND                     Ch. 2

itself criminal or tortious, the trust or a provision in the terms of the trust is invalid if the enforcement of the trust or provision is against public policy. Such a trust or provision is against public policy, if (1) its enforcement tends to induce the commission of illegal acts (see Comment b); (2) its enforcement tends to induce the commission of immoral acts *(see Comment c);* (3) its enforcement tends to induce the commission of acts, not in themselves illegal or immoral, by creating an improper motive for their commission, where it is against public policy to encourage the doing of such acts from such a motive (see Comments d-j); (4) it involves a disposition of the trust property which it is against public policy to enforce (see Comments k-w); (5) its enforcement would prevent a proper administration of the trust (see Comment x).

In these situations, unlike the situations arising under § 61, the trust or a provision in the terms of the trust is illegal although the settlor himself might have made payments to the beneficiaries under similar circumstances without having created a trust.

b. *Inducement of criminal or tortious acts.* A trust may be invalid on the ground that it tends to induce a breach of the criminal law, although the performance of the trust does not involve the commission of a criminal or tortious act by the trustee. Thus, if a group of persons is engaged in the commission of criminal acts, a trust to pay the fines of any of them who may be convicted of committing such acts is invalid. The payment of the fines is not illegal; but the purpose of imposing fines is to deter persons from committing criminal acts, and the enforcement of a trust to pay the fines would destroy the deterrent effect of imposing fines, and would tend to induce the beneficiaries of the trust to commit such acts.

So also, a provision in the terms of a trust for the payment of money to a person if he should secure a divorce from his spouse by perjury or other improper means is invalid, since it rewards a person for committing a criminal act. For the same reason a provision for the payment of money to a person if he should violate his duty to support his children, or should violate a public duty, such as the duty to serve in the armed forces of the nation if he is conscripted, is invalid. Such provisions are invalid, however, on grounds of public policy, even though the conduct which is rewarded is not criminal. See Comments d-j.

---

EXHIBIT | PAGE | OF
I | 6 | 14
Exhibit A
Page 105

§ 7                    TRUSTS, SECOND                    Ch. 2

c.  *Encouraging immorality.* A trust or a provision in the terms of the trust may be invalid on the ground that its enforcement would tend to encourage immorality. Thus, a provision in the terms of the trust that a person should have an interest in the trust property if he should have an illegitimate child, or that his interest should cease if he should not have an illegitimate child, may be invalid. So also, a trust for the benefit of illegitimate children conceived after the creation of the trust may be invalid. Whether such provisions are invalid depends upon the conceptions of public policy which are prevalent in the community.

d.  *Inducing conduct not in itself illegal or immoral.* A provision in the terms of the trust is against public policy and unenforceable if its enforcement would tend to induce the commission of acts, not in themselves illegal or immoral, by supplying an improper motive for their commission, where it is against public policy to encourage the doing of such acts from such a motive. Thus, a provision in the terms of the trust may be invalid on the ground that it affords a financial reward to a person: for securing a divorce or separation from his spouse, or for neglecting his parental duties, or for refraining from marriage, or for changing his religious faith, or for refraining from performing acts beneficial to the nation or the State. See Comments. *e-j.* Such a provision may be invalid not only where the act to be rewarded involves a violation of law, such as the securing of a divorce through fraud or collusion (see Comment b), but also where the act is in itself lawful. The reason is that it is against public policy to induce persons for a reward to do such acts.

Whether such provisions are invalid depends upon the conceptions of public policy which are prevalent in the community. Owing to the changing character of ideas of morality, especially in regard to the relations of the sexes and religious matters, and owing to the diversity of ideas in different communities, it is inadvisable, if not impossible, to make categorical statements *on* these matters. The statements made in Comments *e-j* are made merely for the purpose of indicating some of the grounds upon which a trust or a provision in the terms of the trust may be held illegal.

e.  *Encouraging divorce or separation.* A trust or provision in the terms of the trust may be held invalid on the ground that its enforcement would tend to the disruption of the family, by creating an improper motive for terminating the family relation.

See Appendix for Reporter's Notes, Court Citations, and Cross References

7

| EXHIBIT | PAGE | OF |
|---|---|---|
| I | 7 | 14 |

Exhibit A
Page 106

## § 8                    TRUSTS, SECOND                    Ch. 2

A provision in the terms of the trust for the payment of *a sum* of money to a beneficiary if he should procure *a* divorce or separation from his existing spouse, may be invalid. So *also, a* provision in the terms of the trust divesting the interest of a beneficiary if he should not procure a divorce or separation from his spouse, may be invalid. So also, where a husband and wife are living apart, a provision that the income of a trust fund payable to one of them should cease if they should live together, may be invalid.

On the other hand, a provision for the support of a woman as long as she has no husband or is separated from her husband is not invalid merely because it has some tendency to induce her to secure a divorce or separation from her husband.

As to the validity of provisions encouraging separation or divorce, see Restatement of Property, § 427.

*f. Encouraging neglect of parental duties.* A provision in the terms of the trust may be held invalid on the ground that its enforcement would tend to encourage parents not to perform their duties toward their children. Thus, a provision in the terms of the trust divesting the interest of a beneficiary if he should permit his children to live with him, or a provision divesting the interest of a child if it should live with its parents, may be invalid. This is true, even though no violation of the duty of the parent to support the child is involved.

As to the validity of provisions affecting the relation of parent and child, see Restatement of Property, § 433.

*g. Disrupting other family relations.* A trust or a provision in the terms of the trust may be held invalid on the ground that its enforcement would tend to disrupt family relations other than the relation between husband and wife and the relation between parent and child. Thus, if an interest given to a person is to be forfeited if he has any social relations with his brothers and sisters, the condition may be illegal.

*h. Restraining marriage.* A provision in the terms of the trust may be held invalid on the ground that its enforcement would tend to restrain the marriage of the beneficiary. Thus, a provision in the terms of the trust divesting the interest of *a* beneficiary if he or she should ever marry anyone may be invalid. Such *a* provision with respect to the remarriage of a widow, however, is valid. So also, such a provision is not invalid

---

EXHIBIT | PAGE | OF
I  Exhibit A  | 8 | 14
Page 107

§ 62                    TRUSTS, SECOND                    Ch. 2

if it does not impose an undue restraint on marriage. Thus, a provision divesting the interest of the beneficiary if he or she should marry a particular person, or should marry before reaching majority, or should marry without the consent of the trustee, or should marry a person of a particular religious faith or one of a different faith from that of the beneficiary, is not ordinarily invalid. So also, where the settlor manifests an intention not to restrain marriage of the beneficiary but to furnish maintenance to the beneficiary while single, the provision is valid.

As to the validity of provisions in restraint of marriage, see Restatement of Property, §§ 424-426.

    i.    *Restraining religious freedom.* A provision in the terms of the trust may be held invalid on the ground that its enforcement would tend to restrain the religious freedom of the beneficiary by offering the beneficiary an improper inducement to change his religious faith. Thus, a provision that the beneficiary should receive a certain sum only if he should change his religious faith, or that his interest should cease if he should not change his religious faith, may be invalid.

As to the validity of provisions concerning religion, see Restatement of Property, § 434.

    j.    *Restraining performance of public duties.* A provision in the terms of the trust may be held invalid on the ground that its enforcement would tend to induce a beneficiary to fail to perform his public duties. Thus, a condition divesting the interest of a beneficiary if he should enter the military or naval service of the country, or if he should perform jury duty, may be invalid. This is true, even though no violation of duty on the part of the beneficiary is involved. Thus, a condition divesting the interest of a beneficiary if he should voluntarily enter the military or naval service, although not divesting his interest if he should be conscripted, may be invalid.

    k.    *Disposition of property against public policy.* A provision in the terms of the trust is invalid if it involves a disposition of the trust property in a manner which is against public policy. Thus, it is against public policy to enforce an interest which by the terms of the trust is to vest at too remote a time, or to tie up the property for too long a period through accumulation of the income, or to restrain the alienation of the interest of the beneficiary in certain cases. See Comments *l-r*. So also, it is against public policy to enforce or to permit the carrying out of

See Appendix for Reporter's Notes, Court Citations, and Cross References

·9

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| I | 9 | 14 |
| | Exhibit A | |

Page 108

§ 62                    TRUSTS, SECOND                Ch. 2

a direction of a testator to apply property for purposes which are detrimental to the community or are merely capricious. See Comments *v.* to.

*J. Remoteness.* A trust is invalid unless there is a beneficiary who is definitely ascertainable within the period of the rule against perpetuities. See § 112. At common law this period is the period of lives of specified persons in being at the time of the creation of the trust and twenty-one years. See Restatement of Property, § 374. If a trust is created for several beneficiaries, and the interests of one or more of them will not necessarily vest within the period of perpetuities, the trust fails so far as those interests are concerned. Whether the trust fails altogether depends upon whether the provision which fails can be separated from the other provisions without defeating the purpose of the settlor in creating the trust. See § 65.

By statute in many States it is provided that employees' trusts shall not be subject to the rule against perpetuities or to a rule against restraints on alienation. See § 112, Comment i.

It is to be noted that the rules here stated are applicable in States which follow the common-law rule against perpetuities. In a number of States, notably in New York, there are statutes dealing with the problem in quite different terms. Thus in the New York Personal Property Law, § 11, it was provided that "The absolute ownership of personal property shall not be suspended by any limitation or condition, for a longer period than during the continuance of not more than two lives in being." In the New York Real Property Law, § 42, it was provided that "Every future estate shall be void in its creation, which shall suspend the absolute power of alienation by *any* limitation or condition whatever, for a longer period than during the continuance of not more than two lives in being at the creation of the interest." It will be noted that the permissible period is that of two lives in being at the creation of the trust, instead of any number of lives and a period of twenty-one years, as at common law. But in 1958 these sections were amended as to dispositions thereafter made by substituting for two lives, any number of lives unless so designated or so numerous as to make proof of their end unreasonably difficult. It will be noted also that these statutes do not refer, as under the common-law rule, to remoteness of vesting, but deal with the suspension of absolute ownership in the case of personal property, and the suspension of the absolute power of alienation

EXHIBIT | PAGE | OF
I | 10 | 14
Exhibit A
Page 109

§ 62    TRUSTS, SECOND    Ch. 2

in the case of real estate. The effect of this legislation is outside the scope of the Restatement of this Subject, but is dealt with in Restatement of Property, Appendix on the Statutory Rules against Perpetuities.

*m. Remoteness, revocable trusts.* Where a trust is created inter vivos and the settlor reserves a power of revocation, the permissible period for the vesting of future interests under the trust or after its termination begins at the death of the settlor, when his power to revoke ceases, rather than at the time of the creation of the trust. The reason is that the settlor who has a power of revocation is substantially the owner of the property as long as he lives. So also, the permissible period does not begin until the death of a person who has a general power of appointment presently exercisable. See Restatement of Property, § 373; § 374, Comment *b.*

Where a person creates a trust of a policy of insurance on his life, and retains the power to terminate the trust during his lifetime and thus to exclude the trustee from receiving the proceeds of the policy on his death, the permissible period under the rule against perpetuities begins at his death. See Restatement of Property, § 374, Comment *c.*

If a power of revocation is terminated by release prior to the death of the settlor, the period dates from the date of the release of the power.

*n. Duration of trusts.* A trust is not invalid, either in whole or in part, merely because the duration of the trust may exceed the period of the rule against perpetuities, provided that the interests of all the beneficiaries must vest within the period. Thus if a testator devises and bequeaths property in trust to pay the income to his son for life, and on the son's death to pay the income to the son's children for their lives, and upon the death of each child to pay the principal of his share to a designated person who is living at the death of the testator, all of the provisions are valid, since all the beneficiaries are ascertainable within the period of perpetuities and they acquire vested interests within that period, although the trust will continue until the death of the children, who may not be born until after the death of the testator. See Restatement of Property, § 378.

As to the duration of "honorary" trusts, where th,.. e is no beneficiary to enforce the trust, see § 124, Comment *f;* Restatement of Property, § 379. As to the duration of trusts for unin-

See Appendix for Reporter's Notes, Court Citations, and

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| I | 11 | 14 |

Exhibit A
Page 110

Ch. 2

CREATION OF A TRUST                    § 12

corporated non-charitable associations, see § 119, Comment c;
Restatement of Property, § 380. As to the duration of charitable
trusts, see §§ 365, 401; Restatement of Property, § 398.

o. *Remoteness, restraint on termination.* A provision, ex-
press or implied, in the terms of the trust that the trust shall not
be terminated even though the sole beneficiary, if there is only
one, desires to terminate it, or all of the beneficiaries, if there are
more than one, desire to terminate it, is effective where the trust
is limited in duration to lives in being and twenty-one years. See §§
337-340. Where, however, the trust is to continue beyond that
period, such a provision is ineffective so far as it is applicable
beyond the period, and is wholly ineffective unless it is severable.
Although such a provision is invalid, the trust does not fail.
There is a public policy against permitting an indestructible trust of
long duration, but the policy is effectuated not by invalidating the
trust but by permitting the beneficiaries to terminate it.

Where a trust is created for several beneficiaries, it cannot
be terminated without the consent of all the beneficiaries, unless it
is otherwise provided by the terms of the trust. See § 340. This
is true even though the trust may continue beyond the period of
the rule against perpetuities. Not only is such a trust not invalid,
but it cannot be terminated merely because one of the
beneficiaries, or a majority of the beneficiaries, desire to termi-
nate it, unless it is otherwise provided by the terms of the trust.
This is true, for example, in the case of a business trust, a trust
in which the interests of the beneficiaries are represented by
transferable certificates.

p. *Remoteness, restraints on alienation, spendthrift trusts.*
Where a trust is limited in duration to lives in being and twenty-
one years, a provision restraining voluntary or involuntary alien-
ation of the right of a beneficiary to receive income is valid. See §
152. Where the duration of the trust is not so limited, but is
valid because all interests vest within the period, a restraint on
the alienation of the right of a beneficiary to receive the income
is valid. Thus, if a trust is created by will, under which the in-
come is payable to the testator's eldest son for life and on his
death to the son's eldest son for life, and on the death of the latter
the principal is to be paid to a designated person or his estate, a
provision restraining alienation by the son's son is valid, even
though he was not born at the time of the testator's death.

See Appendix for Reporter's Notes, Court Citations, and Cross References 1-un-7

169

12

EXHIBIT | PAGE | OF
I        | 12   | 14
Exhibit A
Page 111

§ 13                     TRUSTS, SECOND                     Ch. 2

bequeathed with a direction to throw it into the sea, the direc-
tion is against public policy. See § 124, Comment g.

   x. *Provisions as to the administration of the trust.* A pro-
vision in the terms of the trust relating to the administration of
the trust is unenforceable as against public policy if to enforce it
would prevent a proper administration of the trust. Thus, a
provision which would prevent the court from removing a trustee
where such removal is necessary for the proper administration of
the trust is invalid. See § 107, Comment g. So also, a provi-
sion relieving the trustee altogether from accountability (see §
172), or providing that he shall not be liable even if he acts dis-
honestly (see § 187, Comment x, § 222(2)), is invalid.

## § 63. Fraudulent Purpose

(1)  Except as stated in Subsection (2), a trust is invalid if
the purpose of the settlor in creating the trust is to
defraud his creditors or other persons.

(2)  **If the beneficiary of the trust is a third person who
at the time of the creation of the trust had no notice of
the fraudulent purpose of the settlor; he can enforce the
trust, except so far as he is precluded from so doing
because of the claims of the defrauded persons.**

See Reporter's Note.

Comment on Subsection (1):

   a.   *Scope of the rule.* A trust is invalid under this Section
not because of the character of the provisions of the trust, but
because of the circumstances under which it is created and the
motives of the settlor in creating it.

   b.   *Fraud on creditors.* If the owner of property transfers it
to another who agrees to hold it in trust for him and subse-
quently to reconvey it to him, and the purpose of the settlor in
creating the trust was to prevent his creditors, present or future,
from reaching the property, the intended trust is invalid. The
result is the same where the transfer was made for the purpose of
preventing a particular creditor from reaching the property.

   So also, where a person purchases property and for the pur-
pose of defrauding his creditors takes title in the name of another
upon a secret trust for him, the intended trust is invalid.

| EXHIBIT | PAGE | OF |
|---|---|---|
| I | 13 | 14 |

Exhibit A
Page 112

-Ch. 2          CREATION OF A TRUST          §. 14

If the transfer was made for the purpose of preventing a particular person from enforcing a claim against the property, and the claim could not have been enforced against the property, although the transferor believed that it could be so enforced, the transferor can compel the transferee to perform the trust. This is true whether the particular claim was unfounded or although enforceable it could not have been enforced against the particular property. Thus, if a person, believing that he is liable in tort to a third person for an act of his employee, transfers his property to another who agrees to hold it in trust for him and the purpose of the transferor in making the transfer was to prevent the third person from attaching the property, the transferor can compel the transferee to reconvey the property if in fact he was not liable to the third person, although he believed that he was liable. So also, if the owner of a piece of land transfers it to another who agrees to hold it in trust for the transferor, and the purpose of the transferor in making the transfer was to prevent a judgment creditor from levying execution upon the land, the transferor can compel the transferee to reconvey the land if it was a homestead of the transferor's upon which the creditor could not have levied execution.

As to the circumstances under which a person who transfers property in fraud of creditors upon trust for himself can compel the transferee to reconvey the property to him, not on the ground of enforcing the intended trust, but on the ground of enforcing a resulting trust arising from the failure of the intended trust, see § 422.

A statement as to the rights of creditors where the debtor makes a fraudulent conveyance is not within the scope of the Restatement of this Subject.

*c. Other fraudulent transactions.* The rule stated in Subsection (1) is applicable not only where the transfer is made for the purpose of fraudulently concealing the interest of the transferor, but also where it is made for the purpose of clothing the transferee with apparent ownership, provided that this is done for a fraudulent purpose. Thus, if one person pays money to another upon an agreement that the money will be held in trust for the payor and subsequently returned to him, and this is done for the purpose of so enhancing the credit of the payee that he will be enabled to deceive a third person and induce him to lend.

See Appendix for Reporter's Notes, Court Citations, and Cross References

14

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| I | 14 | 14 |

Exhibit A
Page 113

EXHIBIT – J
(Collection of Unlawful Debt)

# BUSINESS AND COMMERCIAL LITIGATION IN FEDERAL COURTS

## Volume 5

### ROBERT L. HAIG
*Editor-in-Chief*

Chapters 66 to 79

/B\ American Bar Association

Section of Litigation

ST. PAUL, MINN.
West Group
1998



EXHIBIT | PAGE | OF
J | Exhibit
Page 1

### (4) Mental State

Courts have held that because racketeering activity under RICO involves predicate acts that are criminal violations, plaintiffs must plead and establish that the defendants committed the predicate acts willfully or with actual knowledge of the illegal activities.[23] Thus, it has been held that RICO requires that defendants "acted with the specific intent to participate in the overall RICO criminal enterprise" before liability will be imposed.[24] Thus, courts generally have held that a mere showing of reckless or negligent conduct is insufficient to establish liability under RICO.[25] Though courts have granted summary judgment on the question of intent,[26] summary judgment may be difficult to obtain because intent can be inferred from circumstantial (and usually hotly disputed) evidence showing that the defendant facilitated the fraud or gained money or advantage at the expense of the plaintiff.[27]

### (5) Collection of Unlawful Debt

Section 1962 allows a plaintiff to allege a "collection of an unlawful debt" instead of a pattern of racketeering activity. Section 1961(6) defines "unlawful debt" to include debts arising from the operation of an illegal gambling business, or debts that are (a) unenforceable because of state or federal laws against usury, (b) incurred in connection with the business of lending money at an usurious rate, and where (c) the usurious rate was at least twice the enforceable rate.[28] The use of this

23. Friedlob v. Trustees of Alpine Mut. Fund Trust, 905 F.Supp. 843, 858–59 (D.Colo.1995); Jepson v. Makita Corp., 34 F.3d 1321, 1328 (7th Cir.1994) (affirming dismissal of complaint for failure to plead sufficient facts to give rise to an inference that the defendants engaged in a mail and wire fraud scheme with fraudulent intent).

24. Zolfaghari v. Sheikholeslami, 943 F.2d 451, 454 aff'd in part, rev'd in part sub nom. Tajbaksh v. Sheikholeslami, 947 F.2d 942 (4th Cir.1991); see also Richards v. Combined Ins. Co. of America, 55 F.3d 247 (7th Cir.1995) (affirming summary judgment where defendants' failure to provide refund certificates might have been negligence, but not intentional fraud).

25. See, e.g., First City Nat'l Bank & Trust Co. v. FDIC, 730 F.Supp. 501, 509 (E.D.N.Y.1990); Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg, 660 F.Supp. 1362, 1370 & n. 6 (D.Conn.1987). But see Babst v. Morgan Keegan & Co., 687 F.Supp. 255, 258 (E.D.La.1988) (holding reckless conduct sufficient to establish predicate criminal act was sufficient to establish RICO liability).

26. Schultz v. Rhode Island Hosp. Trust Nat'l Bank, 94 F.3d 721, 730–31 (1st Cir.

1996) (agreeing with district court that record did not contain "a scintilla of evidence" to support a finding that a particular defendant shared the principal wrongdoer's specific intent to defraud the plaintiffs); Richards v. Combined Ins. Co. of America, 55 F.3d 247 (7th Cir.1995) (affirming summary judgment where defendants' failure to provide refund certificates might have been negligence, but not intentional fraud).

27. See, e.g., Crowe v. Henry, 115 F.3d 294 (5th Cir.1997) (reversing summary judgment based on evidence that the defendant reorganized ownership of certain properties to make it easier to defraud plaintiff, and where the plaintiff had lost money from the defendant's reorganization of the properties); Webster v. Omnitrition Int'l, Inc., 79 F.3d 776, 786 (9th Cir.1996) (finding that creation and operation of pyramid scheme gave rise to inference of intent to defraud, and noting that "[s]pecific intent to defraud may be proven circumstantially, and is ill-suited for adjudication of summary judgment").

28. Sundance Land Corp. v. Community First Fed. Sav. & Loan Ass'n, 840 F.2d 653, 666–67 (9th Cir.1988); Durante Bros. & Sons v. Flushing Nat'l Bank, 755 F.2d 239, 247–48 (2d Cir.1985).

EXHIBIT _____ PAGE _____ OF _____
J    Page 217    ?

§ 69.2                          RICO                          Ch. 69

provision in place of a pattern of racketeering is thus limited by the fact that collection of an unlawful debt generally applies to gambling debts and "loan-sharking" type operations. For example, where a taxicab driver sued his insurer for pressuring him to pay a debt arising from overdue insurance premiums, the First Circuit noted that "[a]lthough this case involves the collection of an alleged debt, it does not involve the 'collection of an unlawful debt' ... [because the debt is not an] illegal debt or debt unenforceable because of usury laws."[29]

Unlike violations of Section 1962 that involve "racketeering activity," the collection of an unlawful debt need not involve a pattern of activity. It is sufficient for there to be one collection of debt so long as the debt collection is sufficiently connected to an enterprise involved in either gambling or the business of lending money at an usurious rate.[30] Moreover, no criminal activity needs to be proven to establish RICO liability for the collection of an unlawful debt.[31]

### (b) Pattern of Racketeering

#### (1) Background

Section 1961(5) of RICO defines a "pattern of racketeering" as "at least two acts of racketeering activity ... the last of which occurred within ten years after the commission of a prior act of racketeering activity."[32] Prior to the Supreme Court's opinion in *Sedima, S.P.R.L. v. Imrex Co.*,[33] courts assumed that the commission of any two predicate offenses within a 10-year period constituted a "pattern of racketeering activity."[34]

In *Sedima*, the Supreme Court chastised the judiciary for its failure to "develop a meaningful concept of pattern" that would curb the widespread application and arguable misuse of RICO's civil provisions.[35] In a now-famous footnote, the Supreme Court cautioned that, while two isolated acts of racketeering are necessary, they "may not be sufficient" to fulfill the statutory requirement of a pattern.[36] The Court strongly implied that, were it to address this issue, it would require some connection between the predicate acts. The Court quoted extensively from the Senate Report accompanying the proposed RICO bill in Congress:

> The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is

---

29. Sagliuccolo v. Eagle Ins. Co., 112 F.3d 226, 229 n. 1 (6th Cir.1997).

30. *See* United States v. Eufrasio, 935 F.2d 553, 576 (3d Cir.1991); Wright v. Sheppard, 919 F.2d 665, 673 (11th Cir. 1990); Robidoux v. Conti, 741 F.Supp. 1019, 1021–22 (D.R.I.1990).

31. Durante Bros. & Sons, 755 F.2d at 247.

32. 18 U.S.C.A. § 1961(5) (West 1984).

33. 473 U.S. 479, 105 S.Ct. 3292, 87 L.Ed.2d 346 (1985).

34. *See* 18 U.S.C.A. § 1961(5) (West 1984).

35. *Sedima, S.P.R.L.*, 473 U.S. at 500, 105 S.Ct. at 3292.

36. *Id.* at 496 n. 14, 105 S.Ct. at 3285 n. 14.


EXHIBIT A OF

EXHIBIT K

EXHIBIT – K
(CONSTITUTION OF CALIFORNIA ARTICLE XV)

192            CONSTITUTION OF CALIFORNIA            Art. XV

ARTICLE XV.   *[Repealed June 8, 1976. See Article XV, below.]*

## ARTICLE XV *

USURY

*[Rate of interest]*

SECTION 1.   The rate of interest upon the loan or forbearance of any money, goods, or things in action, or on accounts after demand, shall be 7 percent per annum but it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract in writing for a rate of interest:

(1)  For any loan or forbearance of any money, goods, or things in action, if the money, goods, or things in action are for use primarily for personal, family, or household purposes, at a rate not exceeding 10 percent per annum; provided, however, that any loan or forbearance of any money, goods or things in action the proceeds of which are used primarily for the purchase, construction or improvement of real property shall not be deemed to be a use primarily for personal, family or household purposes; or

(2)  For any loan or forbearance of any money, goods, or things in action for any use other than specified in paragraph (1), at a rate not exceeding the higher of (a) 10 percent per annum or (b) 5 percent per annum plus the rate prevailing on the 25th day of the month preceding the earlier of (i) the date of execution of the contract to make the loan or forbearance, or (ii) the date of making the loan or forbearance established by the Federal Reserve Bank of San Francisco on advances to member banks under Sections 13 and 13a of the Federal Reserve Act as now in effect or hereafter from time to time amended (or if there is no such single determinable rate of advances, the closest counterpart of such rate as shall be designated by the Superintendent of Banks of the State of California unless some other person or agency is delegated such authority by the Legislature).

*[Charges]*

No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action.

*[Exemptions]*

However, none of the above restrictions shall apply to any obligations of, loans made by, or forbearances of, any building and loan association as defined in and which is operated under that certain act known as the "Building and Loan Association Act," approved May 5, 1931, as

---

* New Article XV adopted June 8, 1976.



Exhibit A
Page 121

Exhibit A
Page 122

**EXHIBIT – L**
(Modern Money Mechanics)

# Modern Money Mechanics

**A Workbook on Bank Reserves and Deposit Expansion**

Federal Reserve Bank of Chicago

EXHIBIT EXHIBIT A OF
Page 124
L 1 3

# Modern Money Mechanics

*The purpose of this booklet is to describe the basic process of money creation in a "fractional reserve" banking system. The approach taken illustrates the changes in bank balance sheets that occur when deposits in banks change as a result of monetary action by the Federal Reserve System — the central bank of the United States. The relationships shown are based on simplifying assumptions. For the sake of simplicity, the relationships are shown as if they were mechanical, but they are not, as is described later in the booklet. Thus, they should not be interpreted to imply a close and predictable relationship between a specific central bank transaction and the quantity of money.*

*The introductory pages contain a brief general description of the characteristics of money and how the U.S. money system works. The illustrations in the following two sections describe two processes: first, how bank deposits expand or contract in response to changes in the amount of reserves supplied by the central bank; and second, how those reserves are affected by both Federal Reserve actions and other factors. A final section deals with some of the elements that modify, at least in the short run, the simple mechanical relationship between bank reserves and deposit money.*

Money is such a routine part of everyday living that its existence and acceptance ordinarily are taken for granted. A user may sense that money must come into being either automatically as a result of economic activity or as an outgrowth of some government operation. But just *how* this happens all too often remains a mystery.

## What Is Money?

If money is viewed simply as a tool used to facilitate transactions, only those media that are readily accepted in exchange for goods, services, and other assets need to be considered. Many things — from stones to baseball cards — have served this monetary function through the ages. Today, in the United States, money used in transactions is mainly of three kinds — currency (paper money and coins in the pockets and purses of the public); demand deposits (non-interest-bearing checking accounts in banks); and other checkable deposits, such as negotiable order of withdrawal (NOW) accounts, at all depository institutions, including commercial and savings banks, savings and loan associations, and credit unions. Travelers checks also are included in the definition of transactions money. Since $1 in currency and $1 in checkable deposits are freely convertible into each other and both can be used directly for expenditures, they are money in equal degree. However, only the cash and balances held by the nonbank public are counted in the money supply. Deposits of the U.S. Treasury, depository institutions, foreign banks and official institutions, as well as vault cash in depository institutions are excluded.

This transactions concept of money is the one designated as M1 in the Federal Reserve's money stock statistics. Broader concepts of money (M2 and M3) include M1 as well as certain other financial assets (such as savings and time deposits at depository institutions and shares in money market mutual funds) which are relatively liquid but believed to represent principally investments to their holders rather than media of exchange. While funds can be shifted fairly easily between transaction balances and these other liquid assets, the money-creation process takes place principally through transaction accounts. In the remainder of this booklet, "money" means M1.

The distribution between the currency and deposit components of money depends largely on the preferences of the public. When a depositor cashes a check or makes a cash withdrawal through an automatic teller machine, he or she reduces the amount of deposits and increases the amount of currency held by the public. Conversely, when people have more currency than is needed, some is returned to banks in exchange for deposits.

While currency is used for a great variety of small transactions, most of the dollar amount of money payments in our economy are made by check or by electronic

EXHIBIT | PAGE | OF
Exhibit A
Page 125 | 3

transfer between deposit accounts. Moreover, currency is a relatively small part of the money stock. About 69 percent, or $623 billion, of the $898 billion total money stock in December 1991, was in the form of transaction deposits, of which $290 billion were demand and $333 billion were other checkable deposits.

## What Makes Money Valuable?

In the United States neither paper currency nor deposits have value as commodities. Intrinsically, a dollar bill is just a piece of paper, deposits merely book entries. Coins do have some intrinsic value as metal, but generally far less than their face value.

What, then, makes these instruments — checks, paper money, and coins — acceptable at face value in payment of all debts and for other monetary uses? Mainly, it is the confidence people have that they will be able to exchange such money for other financial assets and for real goods and services whenever they choose to do so.

Money, like anything else, derives its value from its *scarcity* in relation to its usefulness. Commodities or services are more or less valuable because there are more or less of them relative to the amounts people want. Money's usefulness is its unique ability to command other goods and services and to permit a holder to be constantly ready to do so. How much money is demanded depends on several factors, such as the total volume of transactions in the economy at any given time, the payments habits of the society, the amount of money that individuals and businesses want to keep on hand to take care of unexpected transactions, and the foregone earnings of holding financial assets in the form of money rather than some other asset.

Control of the *quantity* of money is essential if its value is to be kept stable. Money's real value can be measured only in terms of what it will buy. Therefore, its value varies inversely with the general level of prices. Assuming a constant rate of use, if the volume of money grows more rapidly than the rate at which the output of real goods and services increases, prices will rise. This will happen because there will be more money than there will be goods and services to spend it on at prevailing prices. But if, on the other hand, growth in the supply of money does not keep pace with the economy's current production, then prices will fall, the nation's labor force, factories, and other production facilities will not be fully employed, or both.

Just how large the stock of money needs to be in order to handle the transactions of the economy without exerting undue influence on the price level depends on how intensively money is being used. Every transaction deposit balance and every dollar bill is a part of somebody's spendable funds at any given time, ready to move to other owners as transactions take place. Some holders spend money quickly after they get it, making these funds available for other uses. Others, however, hold money for longer periods. Obviously, when some money remains idle, a larger total is needed to accomplish any given volume of transactions.

## Who Creates Money?

Changes in the quantity of money may originate with actions of the Federal Reserve System (the central bank), depository institutions (principally commercial banks), or the public. The major control, however, rests with the central bank.

The actual process of money creation takes place primarily in banks.[1] As noted earlier, checkable liabilities of banks are money. These liabilities are customers' accounts. They increase when customers deposit currency and checks and when the proceeds of loans made by the banks are credited to borrowers' accounts.

In the absence of legal reserve requirements, banks can build up deposits by increasing loans and investments so long as they keep enough currency on hand to redeem whatever amounts the holders of deposits want to convert into currency. This unique attribute of the banking business was discovered many centuries ago.

It started with goldsmiths. As early bankers, they initially provided safekeeping services, making a profit from vault storage fees for gold and coins deposited with them. People would redeem their "deposit receipts" whenever they needed gold or coins to purchase something, and physically take the gold or coins to the seller who, in turn, would deposit them for safekeeping, often with the same banker. Everyone soon found that it was a lot easier simply to use the deposit receipts directly as a means of payment. These receipts, which became known as notes, were acceptable as money since whoever held them could go to the banker and exchange them for metallic money.

Then, bankers discovered that they could make loans merely by giving their promises to pay, or bank notes, to borrowers. In this way, banks began to create money. More notes could be issued than the gold and coin on hand because only a portion of the notes outstanding would be presented for payment at any one time. Enough metallic money had to be kept on hand, of course, to redeem whatever volume of notes was presented for payment.

Transaction deposits are the modern counterpart of bank notes. It was a small step from printing notes to making book entries crediting deposits of borrowers, which the borrowers in turn could "spend" by writing checks, thereby "printing" their own money.

---

[1] In order to describe the money-creation process as simply as possible, the term "bank" used in this booklet should be understood to encompass all depository institutions. Since the Depository Institutions Deregulation and Monetary Control Act of 1980, all depository institutions have been permitted to offer interest-bearing transaction accounts to certain customers. Transaction accounts (interest-bearing as well as demand deposits on which payment of interest is still legally prohibited) at all depository institutions are subject to the reserve requirements set by the Federal Reserve. Thus all such institutions, not just commercial banks, have the potential for creating money.

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| L       | 3    | 3   |

Exhibit A

Page 126

Introduction | 3

EXHIBIT – M
(SECURITIES REGULATION)

Exhibit A
Page 128

# SECURITIES REGULATION

SIXTH EDITION

*by*

LARRY D. SODERQUIST
Professor of Law
Vanderbilt University

THERESA A. GABALDON
Carville Dickinson Benson Research Professor of Law
George Washington University School of Law

FOUNDATION PRESS
2006

THOMSON
⸻⸻✳⸻⸻
WEST



| EXHIBIT | PAGE | OF |
|---------|------|-----|
| M Exhibit A Page 129 | | 2 |

# CHAPTER 18

# STATE REGULATION OF SECURITIES

## SECTION A.  TRADITIONAL STATE SECURITIES REGULATION

### SITUATION 18A

Assume you are back at the times of Microtec's public offering and the Microtec–Compuform merger and are considering the impact of state securities laws on the proposed transactions.

In considering this situation, refer to Securities Act Sections 16 and 18 and Securities Exchange Act Section 28(f), in addition to the materials in this section.

## I.  PREEMPTION

Before reading the materials describing state regulation of securities offerings, it will be useful for you to realize that they are an accurate portrayal of that regulation, but that the sphere of state securities regulation itself was diminished in 1996. Before that time, Section 18 of the Securities Act provided that the Act did not preempt state securities regulation. In the National Securities Markets Improvement Act of 1996, Congress asserted partial preemption, thus reducing the jurisdiction of the states over securities regulation.

As amended, Section 18 designates a number of securities "covered securities" and provides that covered securities are exempt from state regulation with minor exceptions. For general purposes, the most important covered securities are (or someday will be), in rough terms, securities of publicly held companies, securities that are offered or sold to "qualified purchasers" as defined by the Commission, and securities offered or sold under a rule issued under Securities Act Section 4(2).[1] The trouble with the exemption for offers and sales to qualified purchasers, which could be very

---

1.  The National Securities Markets Improvement Act also added Section 15(h)(1) to the Exchange Act. This Section preempts most state broker-dealer regulation differing from the federal scheme. The National Securities Markets Improvement Act made a number of other changes, including changes in the allocation of authority over investment advisors.

EXHIBIT | PAGE | OF
M Exhibit A | 12
Page 130

helpful, is that the Commission has never passed a rule defining the term. In 2001 the Commission proposed a rule that would have made the meaning of the term "qualified purchasers" the same as "accredited investors" under Regulation D, but it never passed the rule. The Commission instead became heavily involved in the rulemaking required by Congress under the Sarbanes–Oxley Act of 2002.

The states retain the power to impose certain notice requirements and charge fees, even in the case of the offerings described in Section 18. <u>In addition, the states retain their ability to impose and enforce anti-fraud regulations.</u> A good example of the sometimes immense power of officials under states securities laws occurred in 2002–2004. The attorney general of New York brought enforcement actions against ten securities firms headquartered in that state, charging conflicts of interest relating to their research analysts. Under the New York securities statute, the attorney general would have been able, if he proved the charges, to prevent the securities firms from doing business in New York. The firms settled for $1.4 billion, plus structural reforms within the firms and enhanced disclosures to investors. Following his success in that matter, the New York attorney general became involved in a number of other securities scandals. Picking up on the actions in New York, a number of other states became involved in investigations and enforcement actions relating to securities fraud, in situations they previously had left mainly to the Commission.

Federal dissatisfaction with the then-increasing amount and vigor of private litigation in state courts arising out of securities transactions resulted, in 1998, in the addition of Section 16 to the Securities Act and Section 28(f) to the Exchange Act. These sections cover most class actions involving securities fraud or problems with disclosure, and require such actions to be brought in federal court under federal law.

The following case is the Supreme Court's latest word on preemption.

## Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit

Supreme Court of the United States, 2006.
___ U.S. ___, 126 S.Ct. 1503.

■ JUSTICE STEVENS delivered the opinion of the Court.

Title 1 of the Securities Litigation Uniform Standards Act of 1998 (SLUSA) provides that "no covered class action" based on state law and alleging "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security" "may be maintained in any State or Federal court by any private party." § 101(b) " * *. In this case the Second Circuit held that SLUSA only pre-empts state-law class-action claims brought by plaintiffs who have a private remedy under federal law. 395 F.3d 25 (2005). A few months later, the Seventh Circuit ruled to the contrary, holding that the statute also pre-empts state-law class-action claims for which federal law provides no private remedy. Kircher v. Putnam Funds Trust, 403 F.3d 478 (2005). The background, the text, and the

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| M    Exhibit A | 3 | 12 |

Page 131

# SECURITIES EXCHANGE ACT OF 1934

(References in brackets [ ] are to title 15, United States Code)

AN ACT To provide for the regulation of securities exchanges and of over-the-counter markets operating in interstate and foreign commerce and through the mails, to prevent inequitable and unfair practices on such exchanges and markets, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

## TITLE I—REGULATION OF SECURITIES EXCHANGES

### SHORT TITLE

SECTION 1. [78a] This Act may be cited as the "Securities Exchange Act of 1934".

### NECESSITY FOR REGULATION AS PROVIDED IN THIS TITLE [1]

SEC. 2. [78b] For the reasons hereinafter enumerated, transactions in securities as commonly conducted upon securities ex-

---

[1] Section 7 of the Insider Trading and Securities Fraud Enforcement Act (15 U.S.C. 78b note; P.L. 100-704) contained the following additional provisions:

SEC. 7. SECURITIES LAWS STUDY.

(a) FINDINGS.—The Congress finds that—
    (1) recent disclosures of securities fraud and insider trading have caused public concern about the adequacy of Federal securities laws, rules, and regulations;
    (2) Federal securities laws, rules, and regulations have not undergone a comprehensive and exhaustive review since the advent of the modern international, institutionalized securities market;
    (3) since that review, the volume of securities transactions and the nature of the securities industry have changed dramatically; and
    (4) there is an important national interest in maintaining fair and orderly securities trading, assuring the fairness of securities transactions and markets and protecting investors.
(b) STUDY AND INVESTIGATION REQUIRED.—
    (1) GENERAL REQUIREMENT.—The Securities and Exchange Commission shall, subject to the availability of funds appropriated pursuant to subsection (d), make a study and investigation of the adequacy of the Federal securities laws and rules and regulations thereunder for the protection of the public interest and the interests of investors.
    (2) REQUIRED SUBJECTS FOR STUDY AND INVESTIGATION.—Such study and investigation shall include an analysis of—
        (A) the extent of improper trading while in possession of insider information, such as trading with advance knowledge of tender offers or forthcoming announcements of material financial information;
        (B) the adequacy of surveillance methods and technologies of brokers, dealers, and self-regulatory organizations;
        (C) the adequacy of cooperation between the Federal, State, and foreign enforcement authorities concerning securities laws enforcement; and
        (D) impediments to the fairness and orderliness of the securities markets and to improvement in the breadth and depth of the capital available to the securities markets, and additional methods to promote those objectives.
    (3) CONDUCT OF STUDY AND INVESTIGATION.—In conducting the study and investigation required by this section, the Commission—
        (A) may exercise any existing authority to gather information, including all power and authority the Commission would have if such investigation were being conducted pursuant to section 21 of the Securities Exchange Act of 1934;

2

EXHIBIT | PAGE | OF
Exhibit A
M | Page 13 | 12

uity security in contravention of such rules or regulations as the Commission may adopt, consistent with the public interest, the protection of investors, and the maintenance of fair and orderly markets—

(1) to prescribe means reasonably designed to prevent manipulation of price levels of the equity securities market or a substantial segment thereof; and

(2) to prohibit or constrain, during periods of extraordinary market volatility, any trading practice in connection with the purchase or sale of equity securities that the Commission determines (A) has previously contributed significantly to extraordinary levels of volatility that have threatened the maintenance of fair and orderly markets; and (B) is reasonably certain to engender such levels of volatility if not prohibited or constrained.

In adopting rules under paragraph (2), the Commission shall, consistent with the purposes of this subsection, minimize the impact on the normal operations of the market and a natural person's freedom to buy or sell any equity security.

(i) The authority of the Commission under this section with respect to security-based swap agreements (as defined in section 206B of the Gramm-Leach-Bliley Act) shall be subject to the restrictions and limitations of section 3A(b) of this title.

REGULATION OF THE USE OF MANIPULATIVE AND DECEPTIVE DEVICES

SEC. 10. [78j] It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(a)(1) To effect a short sale, or to use or employ any stop-loss order in connection with the purchase or sale, of any security registered on a national securities exchange, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

(2)¹ Paragraph (1) of this subsection shall not apply to security futures products.

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. Rules promulgated under subsection (b) that prohibit fraud, manipulation, or insider trading (but not rules imposing or specifying reporting or recordkeeping requirements, procedures, or standards as prophylactic measures against fraud, manipulation, or insider trading), and judicial precedents decided under subsection (b) and rules promulgated thereunder that prohibit fraud, manipulation, or insider trading, shall apply to security-based swap agreements (as

¹ Margin so in law.

| EXHIBIT | PAGE | OF |
|---|---|---|
| M Exhibit 4 Page 133 | 1a | |

defined in section 206B of the Gramm-Leach-Bliley Act) to the
same extent as they apply to securities. Judicial precedents decided
under section 17(a) of the Securities Act of 1933 and sections 9, 15,
16, 20, and 21A of this title, and judicial precedents decided under
applicable rules promulgated under such sections, shall apply to
security-based swap agreements (as defined in section 206B of the
Gramm-Leach-Bliley Act) to the same extent as they apply to secu-
rities.

SEC. 10A. [78j–1] AUDIT REQUIREMENTS.

(a) IN GENERAL.—Each audit required pursuant to this title of
the financial statements of an issuer by a registered public ac-
counting firm shall include, in accordance with generally accepted
auditing standards, as may be modified or supplemented from time
to time by the Commission—

(1) procedures designed to provide reasonable assurance of
detecting illegal acts that would have a direct and material ef-
fect on the determination of financial statement amounts;

(2) procedures designed to identify related party trans-
actions that are material to the financial statements or other-
wise require disclosure therein; and

(3) an evaluation of whether there is substantial doubt
about the ability of the issuer to continue as a going concern
during the ensuing fiscal year.

(b) REQUIRED RESPONSE TO AUDIT DISCOVERIES.—

(1) INVESTIGATION AND REPORT TO MANAGEMENT.—If, in
the course of conducting an audit pursuant to this title to
which subsection (a) applies, the registered public accounting
firm detects or otherwise becomes aware of information indi-
cating that an illegal act (whether or not perceived to have a
material effect on the financial statements of the issuer) has
or may have occurred, the firm shall, in accordance with gen-
erally accepted auditing standards, as may be modified or sup-
plemented from time to time by the Commission—

(A)(i) determine whether it is likely that an illegal act
has occurred; and

(ii) if so, determine and consider the possible effect of
the illegal act on the financial statements of the issuer, in-
cluding any contingent monetary effects, such as fines,
penalties, and damages; and

(B) as soon as practicable, inform the appropriate level
of the management of the issuer and assure that the audit
committee of the issuer, or the board of directors of the
issuer in the absence of such a committee, is adequately
informed with respect to illegal acts that have been de-
tected or have otherwise come to the attention of such firm
in the course of the audit, unless the illegal act is clearly
inconsequential.

(2) RESPONSE TO FAILURE TO TAKE REMEDIAL ACTION.—If,
after determining that the audit committee of the board of
directors of the issuer, or the board of directors of the issuer
in the absence of an audit committee, is adequately informed
with respect to illegal acts that have been detected or have oth-
erwise come to the attention of the firm in the course of the

| EXHIBIT | PAGE | OF |
|---|---|---|
| M Exhibit A | 6 | 12 |

Page 134

prescribing of rules and regulations under this title, or in securing information to serve as a basis for recommending further legislation concerning the matters to which this title relates.

(2) On request from a foreign securities authority, the Commission may provide assistance in accordance with this paragraph if the requesting authority states that the requesting authority is conducting an investigation which it deems necessary to determine whether any person has violated, is violating, or is about to violate any laws or rules relating to securities matters that the requesting authority administers or enforces. The Commission may, in its discretion, conduct such investigation as the Commission deems necessary to collect information and evidence pertinent to the request for assistance. Such assistance may be provided without regard to whether the facts stated in the request would also constitute a violation of the laws of the United States. In deciding whether to provide such assistance, the Commission shall consider whether (A) the requesting authority has agreed to provide reciprocal assistance in securities matters to the Commission; and (B) compliance with the request would prejudice the public interest of the United States.

(b) For the purpose of any such investigation, or any other proceeding under this title, any member of the Commission or any officer designated by it is empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records which the Commission deems relevant or material to the inquiry. Such attendance of witnesses and the production of any such records may be required from any place in the United States or any State at any designated place of hearing.

(c) In case of contumacy by, or refusal to obey a subpoena issued to, any person, the Commission may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business, in requiring the attendance and testimony of witnesses and the production of books, papers, correspondence, memoranda, and other records. And such court may issue an order requiring such person to appear before the Commission or member or officer designated by the Commission, there to produce records, if so ordered, or to give testimony touching the matter under investigation or in question; and any failure to obey such order of the court may be punished by such court as a contempt thereof. All process in any such case may be served in the judicial district whereof such person is an inhabitant or wherever he may be found. Any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry or to produce books, papers, correspondence, memoranda, and other records, if in his power so to do, in obedience to the subpoena of the Commission, shall be guilty of a misdemeanor and, upon conviction, shall be subject to a fine of not more than $1,000 or to imprisonment for a term of not more than one year, or both.

(d)(1) Whenever it shall appear to the Commission that any person is engaged or is about to engage in acts or practices constituting a violation of any provision of this title, the rules or regula-

EXHIBIT | PAGE | OF

M    Exhibit A
Page 135

tions thereunder, the rules of a national securities exchange or registered securities association of which such person is a member or a person associated with a member, the rules of a registered clearing agency in which such person is a participant, the rules of the Public Company Accounting Oversight Board, of which such person is a registered public accounting firm or a person associated with such a firm, or the rules of the Muncipal Securities Rulemaking Board, it may in its discretion bring an action in the proper district court of the United States, the United States District Court for the District of Columbia, or the United States courts of any territory or other place subject to the jurisdiction of the United States, to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond. The Commission may transmit such evidence as may be available concerning such acts or practices as may constitute a violation of any provision of this title or the rules or regulations thereunder to the Attorney General, who may, in his discretion, institute the necessary criminal proceedings under this title.

(2) AUTHORITY OF A COURT TO PROHIBIT PERSONS FROM SERVING AS OFFICERS AND DIRECTORS.—In any proceeding under paragraph (1) of this subsection, the court may prohibit, conditionally or unconditionally, and permanently or for such period of time as it shall determine, any person who violated section 10(b) of this title or the rules or regulations thereunder from acting as an officer or director of any issuer that has a class of securities registered pursuant to section 12 of this title or that is required to file reports pursuant to section 15(d) of this title if the person's conduct demonstrates unfitness to serve as an officer or director of any such issuer.

(3) MONEY PENALTIES IN CIVIL ACTIONS.—

(A) AUTHORITY OF COMMISSION.—Whenever it shall appear to the Commission that any person has violated any provision of this title, the rules or regulations thereunder, or a cease-and-desist order entered by the Commission pursuant to section 21C of this title, other than by committing a violation subject to a penalty pursuant to section 21A, the Commission may bring an action in a United States district court to seek, and the court shall have jurisdiction to impose, upon a proper showing, a civil penalty to be paid by the person who committed such violation.

(B) AMOUNT OF PENALTY.—

(i) FIRST TIER.—The amount of the penalty shall be determined by the court in light of the facts and circumstances. For each violation, the amount of the penalty shall not exceed the greater of (I) $5,000 for a natural person or $50,000 for any other person, or (II) the gross amount of pecuniary gain to such defendant as a result of the violation.

(ii) SECOND TIER.—Notwithstanding clause (i), the amount of penalty for each such violation shall not exceed the greater of (I) $50,000 for a natural person or $250,000 for any other person, or (II) the gross amount of pecuniary gain to such defendant as a result of the violation, if the violation described in subparagraph (A) involved fraud, de-



| EXHIBIT | PAGE | OF |
|---------|------|-----|
| Exhibit A | | |
| Page 236 | | |

ceit, manipulation, or deliberate or reckless disregard of a regulatory requirement.

(iii) THIRD TIER.—Notwithstanding clauses (i) and (ii), the amount of penalty for each such violation shall not exceed the greater of (I) $100,000 for a natural person or $500,000 for any other person, or (II) the gross amount of pecuniary gain to such defendant as a result of the violation, if—

(aa) the violation described in subparagraph (A) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and

(bb) such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.

(C) PROCEDURES FOR COLLECTION.—

(i) PAYMENT OF PENALTY TO TREASURY.—A penalty imposed under this section shall be payable into the Treasury of the United States, except as otherwise provided in section 308 of the Sarbanes-Oxley Act of 2002.

(ii) COLLECTION OF PENALTIES.—If a person upon whom such a penalty is imposed shall fail to pay such penalty within the time prescribed in the court's order, the Commission may refer the matter to the Attorney General who shall recover such penalty by action in the appropriate United States district court.

(iii) REMEDY NOT EXCLUSIVE.—The actions authorized by this paragraph may be brought in addition to any other action that the Commission or the Attorney General is entitled to bring.

(iv) JURISDICTION AND VENUE.—For purposes of section 27 of this title, actions under this paragraph shall be actions to enforce a liability or a duty created by this title.

(D) SPECIAL PROVISIONS RELATING TO A VIOLATION OF A CEASE-AND-DESIST ORDER.—In an action to enforce a cease-and-desist order entered by the Commission pursuant to section 21C, each separate violation of such order shall be a separate offense, except that in the case of a violation through a continuing failure to comply with the order, each day of the failure to comply shall be deemed a separate offense.

(4)[1] PROHIBITION OF ATTORNEYS' FEES PAID FROM COMMISSION DISGORGEMENT FUNDS.—Except as otherwise ordered by the court upon motion by the Commission, or, in the case of an administrative action, as otherwise ordered by the Commission, funds disgorged as the result of an action brought by the Commission in Federal court, or as a result of any Commission administrative action, shall not be distributed as payment for attorneys' fees or expenses incurred by private parties seeking distribution of the disgorged funds.

(5) EQUITABLE RELIEF.—In any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant,

[1] Indentation so in original (Public Law 104-67; 109 Stat 755).

EXHIBIT | PAGE | OF
M    Exhibit A
Page 137    9    12

any equitable relief that may be appropriate or necessary for the benefit of investors.

(6) AUTHORITY OF A COURT TO PROHIBIT PERSONS FROM PARTICIPATING IN AN OFFERING OF PENNY STOCK.—

(A) IN GENERAL.—In any proceeding under paragraph (1) against any person participating in, or, at the time of the alleged misconduct who was participating in, an offering of penny stock, the court may prohibit that person from participating in an offering of penny stock, conditionally or unconditionally, and permanently or for such period of time as the court shall determine.

(B) DEFINITION.—For purposes of this paragraph, the term "person participating in an offering of penny stock" includes any person engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of, any penny stock. The Commission may, by rule or regulation, define such term to include other activities, and may, by rule, regulation, or order, exempt any person or class of persons, in whole or in part, conditionally or unconditionally, from inclusion in such term.

(e) Upon application of the Commission the district courts of the United States and the United States courts of any territory or other place subject to the jurisdiction of the United States shall have jurisdiction to issue writs of mandamus, injunctions, and orders commanding (1) any person to comply with the provisions of this title, the rules, regulations, and orders thereunder, the rules of a national securities exchange or registered securities association of which such person is a member or person associated with a member, the rules of a registered clearing agency in which such person is a participant, the rules of the Public Company Accounting Oversight Board, of which such person is a registered public accounting firm or a person associated with such a firm, the rules of the Municipal Securities Rulemaking Board, or any undertaking contained in a registration statement as provided in subsection (d) of section 15 of this title, (2) any national securities exchange or registered securities association to enforce compliance by its members and persons associated with its members with the provisions of this title, the rules, regulations, and orders thereunder, and the rules of such exchange or association, or (3) any registered clearing agency to enforce compliance by its participants with the provisions of the rules of such clearing agency.

(f) Notwithstanding any other provision of this title, the Commission shall not bring any action pursuant to subsection (d) or (e) of this section against any person for violation of, or to command compliance with, the rules of a self-regulatory organization or the Public Company Accounting Oversight Board unless it appears to the Commission that (1) such self-regulatory organization or the Public Company Accounting Oversight Board is unable or unwilling to take appropriate action against such person in the public interest and for the protection of investors, or (2) such action is otherwise necessary or appropriate in the public interest or for the protection of investors.

(g) Notwithstanding the provisions of section 1407(a) of title 28, United States Code, or any other provision of law, no action for


EXHIBIT | PAGE | OF
Exhibit A
Page 158    10   12

(b) It shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this title or any rule or regulation thereunder through or by means of any other person.

(c) It shall be unlawful for any director or officer of, or any owner of any securities issued by, any issuer required to file any document, report, or information under this title or any rule or regulation thereunder without just cause to hinder, delay, or obstruct the making or filing of any such document, report, or information.

(d) Wherever communicating, or purchasing or selling a security while in possession of, material nonpublic information would violate, or result in liability to any purchaser or seller of the security under any provisions of this title, or any rule or regulation thereunder, such conduct in connection with a purchase or sale of a put, call, straddle, option, privilege[1] or security-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act) with respect to such security or with respect to a group or index of securities including such security, shall also violate and result in comparable liability to any purchaser or seller of that security under such provision, rule, or regulation.

(e) PROSECUTION OF PERSONS WHO AID AND ABET VIOLATIONS.—For purposes of any action brought by the Commission under paragraph (1) or (3) of section 21(d), any person that knowingly provides substantial assistance to another person in violation of a provision of this title, or of any rule or regulation issued under this title, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided.

(f) The authority of the Commission under this section with respect to security-based swap agreements (as defined in section 206B of the Gramm-Leach-Bliley Act) shall be subject to the restrictions and limitations of section 3A(b) of this title.

LIABILITY TO CONTEMPORANEOUS TRADERS FOR INSIDER TRADING

SEC. 20A. [78t–1] (a) PRIVATE RIGHTS OF ACTION BASED ON CONTEMPORANEOUS TRADING.—Any person who violates any provision of this title or the rules or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information shall be liable in an action in any court of competent jurisdiction to any person who, contemporaneously with the purchase or sale of securities that is the subject of such violation, has purchased (where such violation is based on a sale of securities) or sold (where such violation is based on a purchase of securities) securities of the same class.

(b) LIMITATIONS ON LIABILITY.—

(1) CONTEMPORANEOUS TRADING ACTIONS LIMITED TO PROFIT GAINED OR LOSS AVOIDED.—The total amount of damages imposed under subsection (a) shall not exceed the profit

---

[1] Sections 205(a)(9) and 303(i) of the Commodity Futures Modernization Act of 2000 (114 Stat. 2763A-426, 2763A-326), as enacted in to law by section 1(a)(5) of Public Law 106-554, both amended section 20(d) of the Securities Exchange Act of 1934. Section 203(a)(9) amended section 20(d) by striking ", or privilege" and inserting ", privilege, or security future product". Section 303(i) amended section 20(d) to read in the form in which it appears in this compilation. Apparent intention of the combined amendments would be to insert references to both securities futures products and security-based swap agreements after the reference to "privilege".

EXHIBIT | PAGE | OF

M    Exhibit A    12
Page 159

gained or loss avoided in the transaction or transactions that are the subject of the violation.

(2) OFFSETTING DISGORGEMENTS AGAINST LIABILITY.—The total amount of damages imposed against any person under subsection (a) shall be diminished by the amounts, if any, that such person may be required to disgorge, pursuant to a court order obtained at the instance of the Commission, in a proceeding brought under section 21(d) of this title relating to the same transaction or transactions.

(3) CONTROLLING PERSON LIABILITY.—No person shall be liable under this section solely by reason of employing another person who is liable under this section, but the liability of a controlling person under this section shall be subject to section 20(a) of this title.

(4) STATUTE OF LIMITATIONS.—No action may be brought under this section more than 5 years after the date of the last transaction that is the subject of the violation.

(c) JOINT AND SEVERAL LIABILITY FOR COMMUNICATING.—Any person who violates any provision of this title or the rules or regulations thereunder by communicating material, nonpublic information shall be jointly and severally liable under subsection (a) with, and to the same extent as, any person or persons liable under subsection (a) to whom the communication was directed.

(d) AUTHORITY NOT TO RESTRICT OTHER EXPRESS OR IMPLIED RIGHTS OF ACTION.—Nothing in this section shall be construed to limit or condition the right of any person to bring an action to enforce a requirement of this title or the availability of any cause of action implied from a provision of this title.

(e) PROVISIONS NOT TO AFFECT PUBLIC PROSECUTIONS.—This section shall not be construed to bar or limit in any manner any action by the Commission or the Attorney General under any other provision of this title, nor shall it bar or limit in any manner any action to recover penalties, or to seek any other order regarding penalties.

INVESTIGATIONS; INJUNCTIONS AND PROSECUTION OF OFFENSES

SEC. 21. [78u] (a)(1) The Commission may, in its discretion, make such investigations as it deems necessary to determine whether any person has violated, is violating, or is about to violate any provision of this title, the rules or regulations thereunder, the rules of a national securities exchange or registered securities association of which such person is a member or a person associated with a member, the rules of a registered clearing agency in which such person is a participant, the rules of the Public Company Accounting Oversight Board, of which such person is a registered public accounting firm or a person associated with such a firm, or the rules of the Municipal Securities Rulemaking Board, and may require or permit any person to file with it a statement in writing, under oath or otherwise as the Commission shall determine, as to all the facts and circumstances concerning the matter to be investigated. The Commission is authorized in its discretion, to publish information concerning any such violations, and to investigate any facts, conditions, practices, or matters which it may deem necessary or proper to aid in the enforcement of such provisions, in the

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| M Exhibit 2 Page 140 | 12 | |

**EXHIBIT – N**
(Judge Christopher A. Boyko of Federal District Court)

**The New York Times**
nytimes.com

November 15, 2007

# Foreclosures Hit a Snag for Lenders

By GRETCHEN MORGENSON

A federal judge in Ohio has ruled against a longstanding foreclosure practice, potentially creating an obstacle for lenders trying to reclaim properties from troubled borrowers and raising questions about the legal standing of investors in mortgage securities pools.

Judge Christopher A. Boyko of Federal District Court in Cleveland dismissed 14 foreclosure cases brought on behalf of mortgage investors, ruling that they had failed to prove that they owned the properties they were trying to seize.

The pooling of home loans into securities has been practiced for decades and helped propel real estate prices in recent years as investors sought the higher yields that such mortgage trusts could provide. Some $6.5 trillion of securitized mortgage debt was outstanding at the end of 2006.

But as foreclosures have surged, the complex structure and disparate ownership of mortgage securities have made it harder for borrowers to work out troubled loans, in part because they cannot identify who holds the mortgage notes, consumer advocates say.

Now, the Ohio ruling indicates that the intricacies of the mortgage pools are starting to create problems for lenders as well. Lawyers for troubled homeowners are expected to seize upon the district judge's opinion as a way to impede foreclosures across the country or force investors to settle with homeowners. And it may encourage judges in other courts to demand more documentation of ownership from lenders trying to foreclose.

The ruling was issued Oct. 31 by Judge Boyko, and relates to 14 foreclosure cases brought by Deutsche Bank National Trust Company. The bank is trustee for securitization pools, issued as recently as June 2006, claiming to hold mortgages underlying the foreclosed properties.

On Oct. 10, Judge Boyko, 53, ordered the lenders' representative to file copies of loan assignments showing that the lender was indeed the owner of the note and mortgage on each property when the foreclosure was filed. But lawyers for Deutsche Bank supplied documents showing only an intent to convey the rights in the mortgages rather than proof of ownership as of the foreclosure date.

Saying that Deutsche Bank's arguments of legal standing fell woefully short, the judge wrote: "The institutions seem to adopt the attitude that since they have been doing this for so long, unchallenged, this practice equates with legal compliance. Finally put to the test, their weak legal arguments compel the court to stop them at the gate."

A spokesman for Deutsche Bank declined to comment on the ruling. But the inability of Deutsche Bank, as

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| N Exhibit A Page 143 | | 3 |

trustee for the pools, to produce proof of ownership at the time of the foreclosures will fuel borrowers' concerns that they are being forced out of their homes by entities that may not even hold the underlying loans.

"This is the miracle of not having securities mapped to the underlying loans," said Josh Rosner, a specialist in mortgage securities at Graham-Fisher, an independent research firm in New York. "There is no industry repository for mortgage loans. I have heard of instances where the same loan is in two or three pools."

The process of putting together a mortgage pool begins when a home loan is originated by a bank or mortgage lender. That loan is typically sold to a Wall Street firm that pools it with thousands of others. Once a pool is packaged, it is sold to investors in different slices, based on risk. A trustee bank oversees the pool's operations, ensuring that payments made by borrowers go to the appropriate investors.

Lawyers who represent troubled borrowers complain that trustees overseeing home loan pools often do not produce proof, usually in the form of a mortgage note, that their investors own a foreclosed property. And a recent study of 1,733 foreclosures by Katherine M. Porter, an associate professor of law at the University of Iowa, found that 40 percent of the creditors foreclosing on borrowers did not show proof of ownership. Such proof gives a creditor standing to foreclose against a borrower and is required by law.

"The big issue in all these cases, whether we are dealing with a bankruptcy court, a state court or a federal court, is who really owns the mortgage note, and that is allegedly what they securitized," said O. Max Gardner III, a lawyer who represents borrowers in foreclosure in Shelby, N.C. "A collateral question is, has that mortgage note really been transferred and assigned to the securitization trust? If not, then they really don't have standing. It's Law School 101."

When a loan goes into a securitization, the mortgage note is not sent to the trust. Instead it shows up as a data transfer with the physical note being kept at a separate document repository company. Such practices keep the process fast and cheap.

Because most foreclosures proceed without challenges from borrowers, few judges have forced trustees like Deutsche Bank and Bank of New York to prove ownership by producing a mortgage note in each case.

Borrower advocates cheered Judge Boyko's ruling.

The plaintiff's argument that "'Judge, you just don't understand how things work,'" the judge wrote, "reveals a condescending mindset and quasi-monopolistic system where financial institutions have traditionally controlled, and still control, the foreclosure process." The cases could be filed again in state court, however.

April Charney, a consumer lawyer at Jacksonville Area Legal Aid in Florida, who has been practicing foreclosure law since the late 1980s, said she rarely sees proof of ownership in cases involving securitization trusts. Her group has 30 to 50 such cases and not one of the lenders' representatives has produced proof of ownership predating the foreclosure action.

"We see a trend toward judges having enough of this trampling of the rules and procedure and care and reverence with which lawyers and litigants and participants in the judicial process should comply," Ms.

EXHIBIT | PAGE | OF
N  Exhibit A
Page 144   3

Foreclosures Hit a Snag for Lenders - New York Times

Charney said. "Hopefully this will convince everybody that the time to work out these home loans is now."

Copyright 2007 The New York Times Company

Privacy Policy　|　Search　|　Corrections　|　RSS　|　First Look　|　Help　|　Contact Us　|　Work for Us　|　Site Map

| EXHIBIT | PAGE | OF |
|---|---|---|
| N | Exhibit A Page 143 | 3 |

EXHIBIT – O
(Judge Thomas M. Rose of Federal District Court)

Exhibit A
Page 147

**The New York Times**
nytimes.com

November 17, 2007

# Judge Demands Documentation in Foreclosures

By GRETCHEN MORGENSON

After the recent dismissal of 14 foreclosure cases by a federal judge in Cleveland, another federal judge in Ohio has given lenders 30 days to prove that they own the properties they intend to seize from troubled homeowners in 27 other cases.

The second judge, Thomas M. Rose of Federal District Court, in Dayton, ruled Thursday that while the lawyer filing 26 of the cases had claimed his clients owned the properties at the time the foreclosures began, he had not submitted the necessary proof to the court.

"Failure in the future by this attorney to comply with the filing requirements," Judge Rose said, "may only be considered to be willful."

Taken with Judge Christopher A. Boyko's dismissal of 14 cases in Cleveland last month, the latest ruling indicates that some courts are growing tougher on lenders foreclosing on delinquent borrowers without providing proof of ownership.

It has long been a common practice for lenders to bring foreclosure proceedings without attaching proof of ownership of the underlying note. Tracking down such documentation may be more challenging because of securitization, the pooling of mortgages into trusts that are subsequently sold to investors.

Citibank is trustee in one case overseen by Judge Rose; it represents a securitization trust sold in 2005 by First Franklin, a loan originator now owned by Merrill Lynch. At issue in the case is a mortgage on a property in Miamisburg, Ohio, for $191,000. The borrower defaulted in August 2006.

Another case involves HSBC, which is foreclosing on a $144,000 mortgage on a property in Dayton. The mortgage was underwritten in 2004 and has been in default since October 2006.

A Citigroup spokeswoman said the company did not comment on pending litigation. An HSBC spokeswoman said the bank had not studied the ruling and could not comment.

An estimated two million families may lose their homes to foreclosure in the coming years, specialists say. A recent study of 1,733 foreclosures by Katherine M. Porter, an associate professor of law at the University of Iowa, found that 40 percent of the creditors foreclosing on borrowers did not show proof of ownership.

Such proof gives a creditor standing to foreclose against a borrower and is required by law.

Judge Rose cited Ms. Porter's study in his ruling.

Copyright 2007 The New York Times Company

Privacy Policy | Search | Corrections | RSS | First Look | Help | Contact Us | Work for Us | Site Map

EXHIBIT   PAGE   OF
Exhibit A
◯ Page 148    1

1  Alejandro and Damaris Capdevielle
2  3234 Stockman Street
   National City, California 91950
3  (619) 274-2376

4  ALEJANDRO CAPDEVIELLE, and
5  DAMARIS CAPDEVIELLE
   Pro Per CCC 1308

6

7

8                    SUPERIOR COURT OF CALIFORNIA
9                         SAN DIEGO COUNTY
                          HALL OF JUSTICE
10

11

12  Alejandro Capdevielle, an individual,      )  Case No. 37-2008-00079883-CU-OR-CTL
    ALEJANDRO CAPDEVIELLE, an alleged          )
13  entity,                                     )  NOTICE OF VOLUNTARY DISMISSAL
14  Damaris Capdevielle, an individual,         )  OF ROBERT D. NOWLEN and TERRI L.
    DAMARIS CAPDEVIELLE, an alleged             )  NOWLEN, alleged entities.
15  entity,                                     )
                                                )  CIVIL CODE OF PROCEDURE §581 (c)
16                  Plaintiff,                   )  DISMISSAL.
                                                )
17          vs.                                  )  CCC 1308 ALL RIGHTS RESERVED
                                                )
18  GOLDEN WEST SAVINGS ASSOCIATION )
19  SERVICE CO., a California corporation, and  )
                                                )
20  WORLD SAVINGS, INC., a California           )
21  corporation, and                            )
                                                )
22  ROBERT D. NOWLEN and TERRI L.               )
    NOWLEN, alleged entities, and               )
23                                              )
    ALL INDIVIDUALS OR ENTITIES                 )
24  CLAIMING ANY LEGAL OR EQUITABLE )
25  RIGHT, TITLE, ESTATE, LIEN OR               )
    INTEREST IN THE PROPERTY                    )
26  DESCRIBED IN THE COMPLAINT                  )
    ADVERSE TO PLAINTIFF'S INTEREST,            )
27  and all others claiming an interest in the real )
28  property known or unknown, DOES and Does )
    1 – 50 inclusive,                           )

_____

NOTICE OF VOLUNTARY DISMISSAL OF CT CORPORATION SYSTEM AS A DEFENDANT.

1.

Exhibit B
Page 149

1

2        Defendants.                    )
                                        )
                                        )

3

4        COMES NOW PLAINTIFFS ALEJANDRO and DAMARIS CAPDEVIELLE noticing the

5    Court and other defendants of voluntary dismissal of Defendant(s) ROBERT D. NOWLEN and

6    TERRI L. NOWLEN per Civil Code of Procedure §581 (c) A plaintiff may dismiss his or her

7    complaint, or any cause of action asserted in it, in its entirety, or as to any defendant or

8    defendants, with or without prejudice prior to the actual commencement of trial.

9        Cause for filing this notice of Dismissal for this named defendant is due to the nature

10   and extent of involvement of ROBERT D. NOWLEN and TERRI L. NOWLEN being that their

11

12   Promissory Note was paid off on or about May 17th, 2006, which exhausted any interest relating

13   to Defandant(s) being an actual true party in interest in the matter.

14

15       Respectfully submitted,              ALEJANDRO CAPDEVIELLE CCC 1308

16       Dated: April 3rd, 2008.         By: _____

17                                            Alejandro Capdevielle, all rights reserved

18

19                                            DAMARIS CAPDEVIELLE CCC 1308

20       Dated: April 3rd, 2008.         By: _____

21                                            Damaris Capdevielle, all rights reserved

22

23

24

25

26

27

28

_____

NOTICE OF VOLUNTARY DISMISSAL OF CT CORPORATION SYSTEM AS A DEFENDANT.

                                    2.

## PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA  )
                     )
COUNTY OF SAN DIEGO  )

RE: CAPDEVIELLE v GOLDEN WEST SAVINGS
SDSC 37-2008-00079883-CU-OR-CTL

I am a citizen of the United States and am employed in the County of San Diego, State of California; I am over 18 years of age and not a party to the within action. My business address is 2250 Fourth Avenue, San Diego, California 92101

On April 10, 2008, I served the within Documents:

**NOTICE OF VOLUNTARY DISMISSAL OF ROBERT D. NOWLEN and TERRI L. NOWLEN, alleged entities**

On the party in said action, by depositing a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, via first class mail at the mail collection site at my place of employment, addressed to the following:

GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., c/o CSC 2711 CENTERVILLE ROAD, WILMINGTON, DE 19808 Agent for Service of Process CSC 2730 GATEWAY OAKS DRIVE, SUITE 100, SACRAMENTO, CA 95833

WORLD SAVINGS, INC., 1901 HARRISON STREET, OAKLAND, CA 94612 Agent for Service of Process CSC 2730 GATEWAY OAKS DRIVE, SUITE 100, SACRAMENTO, CA 95833

ROBERT D. NOWLEN and TERRI L. NOWLEN, alleged entities 13651 Summer Glen Vis, El Cajon, CA 92021

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on April 10, 2008, at San Diego, California.

_____
Jerelyn M. Nagler

**Exhibit B**
**Page 151**

HASLER

**$0.41**
APR 10 2008
US POSTAGE
First-Class Mail
MAILED FROM 92101
011A0413002906

*GOLDEN WEST SAVINGS ASSOCIATION*
*SERVICE CO.*
*c/o CSC*
*2730 GATEWAY OAKS DRIVE, SUITE 100*
*SACRAMENTO, CA 95833*

*KNOX SERVICES, INC.*
*2250 FOURTH AVENUE*
*SAN DIEGO, CA 92101*

**Exhibit B**
**Page 152**

**EXHIBIT C**

SUM-100

## SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CIVIL
CE....
2008 MAR 13  P 3: 46

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., a California corporation,
WORLD SAVINGS, INC., a California corporation, ROBERT D. NOWLEN and
TERRI L. NOWLEN, alleged entities, and ALL INDIVIDUALS OR ENTITIES
CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN OR
INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE
TO PLAINTIFS INTEREST, and all others claiming an interest in the real property
known or unknown; DOES and Does 1 - 50 inclusive.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Alejandro Capdevielle, an individual, ALEJANDRO CAPDEVIELLE, an alleged entity
and Damaris Capdevielle, an individual, DAMARIS CAPDEVIELLE, an alleged entity.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.  A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.  Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca.  Si no presenta puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of San Diego
330 West Broadway
San Diego, California 92101        Hall of Justice

CASE NUMBER:
*(Número del Caso):*

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Alejandro and Damaris Capdevielle    (619) 274-2376
3432 Stockman Street, National City, California 91950

DATE:  MAR 1 3 2008          Clerk, by _____, Deputy
*(Fecha)*                    *(Secretario)*                      *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

NOTICE TO THE PERSON SERVED: You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Golden West Savings Association Service Co.
   under:  ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 4/11/08

Page 1 of 1

Form Approved for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc.    www.USCourtForms.com

**Exhibit C**
**Page 153**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS:     330 West Broadway
MAILING ADDRESS:    330 West Broadway
CITY AND ZIP CODE:  San Diego, CA 92101
BRANCH NAME:        Central
TELEPHONE NUMBER:   (619) 685-6150

PLAINTIFF(S) / PETITIONER(S):    Alejandro Capdevielle et.al.

DEFENDANT(S) / RESPONDENT(S):  Golden West Savings Association Service, Co., a California corporation et.al.

CAPDEVIELLE VS. GOLDEN WEST SAVINGS ASSOCIATION SERVICE, CO., A CALIFORNIA CORPORATION

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER:<br>37-2008-00079883-CU-OR-CTL |
|---|---|

Judge: Steven R. Denton                                     Department: C-73

COMPLAINT/PETITION FILED: 03/13/2008

### CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

COMPLAINTS: Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

DEFAULT: If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

Exhibit C
Page 154

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Alejandro and Damaris Capdevielle
3432 Stockrun St.
National City, California 91950

TELEPHONE NO.: (619) 274-2376    FAX NO.: (949) 281-2157
ATTORNEY FOR (Name): Self Rep: ALEJANDRO and DAMARIS CAPDEVIELLE

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, California 92101
BRANCH NAME: Hall of Justice

CASE NAME: ALEJANDRO and DAMARIS CAPDEVIELLE v.
GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., ET AL.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[✓] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[✓] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[✓] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [ ] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action (specify): 10
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date:
ALEJANDRO and DAMARIS CAPDEVIELLE    attorney-in-fact
(TYPE OR PRINT NAME)    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

**Exhibit C**
**Page 155**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE NUMBER: 37-2008-00079883-CU-OR-CTL      CASE TITLE: Capdevielle vs. Golden West Savings Association Service, C

### NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9.

### ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial.

### ADR OPTIONS

1) **CIVIL MEDIATION PROGRAM:** The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participant in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non- binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines:** Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery:** Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation:** Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

2) **JUDICIAL ARBITRATION:** Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines:** Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court

Exhibit C   1
Page 156

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 330 West Broadway | |
| MAILING ADDRESS: 330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827 | |
| BRANCH NAME: Central | |

| PLAINTIFF(S): Alejandro Capdevielle et.al. |
|---|
| DEFENDANT(S): Golden West Savings Association Service, Co., a California corporation et.al. |
| SHORT TITLE: CAPDEVIELLE VS. GOLDEN WEST SAVINGS ASSOCIATION SERVICE, CO., A CALIFORNIA CORPORATION |

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 3.221) | CASE NUMBER: 37-2008-00079883-CU-OR-CTL |
|---|---|

Judge: Steven R. Denton                                          Department: C-73

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management time-lines.

☐ Court-Referred Mediation Program                    ☐ Court-Ordered Nonbinding Arbitration

☐ Private Neutral Evaluation                          ☐ Court-Ordered Binding Arbitration (Stipulated)

☐ Private Mini-Trial                                  ☐ Private Reference to General Referee

☐ Private Summary Jury Trial                          ☐ Private Reference to Judge

☐ Private Settlement Conference with Private Neutral  ☐ Private Binding Arbitration

☐ Other (specify): _____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate: (mediation & arbitration only) _____

Date: _____                          Date: _____

_____                        _____
Name of Plaintiff                                    Name of Defendant

_____                        _____
Signature                                            Signature

_____                        _____
Name of Plaintiff's Attorney                         Name of Defendant's Attorney

_____                        _____
Signature                                            Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

IT IS SO ORDERED.

Dated: 03/13/2008

_____
JUDGE OF THE SUPERIOR COURT

Page: 1

SDSC CIV-359 (Rev 01-07)         STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION

Exhibit C    3
Page 157

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE NUMBER: 37-2008-00079883-CU-OR-CTL    CASE TITLE: Capdevielle vs. Golden West Savings Association Service, C

## NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9.

### ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial

### ADR OPTIONS

1) CIVIL MEDIATION PROGRAM: The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participant in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non- binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

Assignment to Mediation, Cost and Timelines: Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. Discovery: Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. Attendance at Mediation: Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

2) JUDICIAL ARBITRATION: Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

Assignment to Arbitration, Cost and Timelines: Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court

Exhibit C  1
Page 158

3) **SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference judge.

4) **OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Alternative Dispute Resolution Process" which is included in this ADR package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (619) 238-2400.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

**Exhibit C  2**
**Page 159**

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 330 West Broadway | |
| MAILING ADDRESS: 330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827 | |
| BRANCH NAME: Central | |

**PLAINTIFF(S):** Alejandro Capdevielle et.al.

**DEFENDANT(S):** Golden West Savings Association Service, Co., a California corporation et.al.

**SHORT TITLE:** CAPDEVIELLE VS. GOLDEN WEST SAVINGS ASSOCIATION SERVICE, CO., A CALIFORNIA CORPORATION

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 3.221) | CASE NUMBER: 37-2008-00079883-CU-OR-CTL |
|---|---|

Judge: Steven R. Denton                                    Department: C-73

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management time-lines.

- [ ] Court-Referred Mediation Program
- [ ] Private Neutral Evaluation
- [ ] Private Mini-Trial
- [ ] Private Summary Jury Trial
- [ ] Private Settlement Conference with Private Neutral

- [ ] Court-Ordered Nonbinding Arbitration
- [ ] Court-Ordered Binding Arbitration (Stipulated)
- [ ] Private Reference to General Referee
- [ ] Private Reference to Judge
- [ ] Private Binding Arbitration

- [ ] Other (specify): _____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate: (mediation & arbitration only) _____

Date: _____                          Date: _____

_____                          _____
Name of Plaintiff                                                    Name of Defendant

_____                          _____
Signature                                                              Signature

_____                          _____
Name of Plaintiff's Attorney                                     Name of Defendant's Attorney

_____                          _____
Signature                                                              Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

IT IS SO ORDERED.

Dated: 03/13/2008

_____
JUDGE OF THE SUPERIOR COURT

Page: 1

SDSC CIV-359 (Rev 01-07)          STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION

**Exhibit C** 3
**Page 160**

PROOF OF SERVICE

STATE OF CALIFORNIA )

)ss.

COUNTY OF LOS ANGELES )

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 199 S. Los Robles Avenue, Suite 600, Pasadena, CA 91101.

    On April 21, 2008, I served the following document(s) described as **NOTICE OF REMOVAL BY DEFENDANTS WORLD SAVINGS BANK, FSB and GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO. UNDER 28 U.S.C. §1441(b)** on the interested parties in this action by placing ___ the original  **X**  a true and correct copy in an enclosed sealed envelope as follows:

Alejandro and Damaris Capdevielle
3234 Stockman Street
National City, CA 91950
(619) 274-2376

*Plaintiffs In Pro Per*

[X]    (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence by mailing. Under that same practice it would be deposited with U.S. Postal Service on that same day with postage fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[  ]    BY TELECOPIER) By stipulation, I caused such document to be delivered by telecopy transmission to the offices of the addressee.

[  ]    (BY PERSONAL DELIVERY) I delivered such envelope by hand to the addressee.

[  ]    (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[ X ]    (FEDERAL) I declare that I am employed in the offices of a member of this Court at whose direction the service was made.

    Executed on April 21, 2008, at Pasadena, California.

_____Jill Ashley_____              _____
(Print of Type Name)              (Signature of Declarant)

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

ORIGINAL

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

APR 24 2008

**I. (a)  PLAINTIFFS**

Alejandro Capdevielle, an individual; Alejandro Capdevielle, an alleged entity; Damaris Capdevielle, an individual; et al.

**DEFENDANTS**

Golden West Savings Association Service Co., a California corporation; World Savings, Inc., a California corporation

**(b)** County of Residence of First Listed Plaintiff  **San Diego**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**08 CV 0754 LAB JMA**

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)   Christopher A. Carr, Esq.

Anglin, Flewelling, Rasmussen Campbell & Trytten LLP
199 S. Los Robles Ave., #600, Pasadena, CA 91101-2459

**II. BASIS OF JURISDICTION**  (Place an "X" in One Box Only)

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☒ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

**V. ORIGIN**  (Place an "X" in One Box Only)

| | | | | | | Appeal to District |
|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. Section 1692

Brief description of cause:
Fair Debt Collection

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes  ☒ No

**VIII. RELATED CASE(S) IF ANY**

(See instructions): JUDGE _____  DOCKET NUMBER _____

DATE  04/22/2008

SIGNATURE OF ATTORNEY OF RECORD

Christopher A. Carr, Esq.

**FOR OFFICE USE ONLY**

RECEIPT # 150194  AMOUNT $ 350  APPLYING IFP ___  JUDGE ___  MAG. JUDGE ___

MS 4/25

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 150194   — MS**

**April 25. 2008
12:21:53**

**Civ Fil Non—Pris**
USAO #.: 08-CV-0754-LAB CIVIL FILING
Judge..: LARRY A BURNS
Amount.:                    $350.00 CK
Check#.: BC11475

**Total—> $350.00**

FROM: ALEJANDRO CAPDEVIELLE
       VS. GOLDEN WEST SAVINGS ASSC.
       CIVIL FILING
       BC 11477-$100 BC11475 - $250